**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)**

| | | |
|---|---|---|
| VS TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | CIVIL CASE NO: <u>2:11cv43 (HCM)(FBS)</u> |
| vs. | ) | |
| | ) | |
| TWITTER, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**<u>PLAINTIFF VS TECHNOLOGIES, LLC'S OPPOSITION TO DEFENDANT
TWITTER'S MOTION TO TRANSFER PURUSANT TO §1404(a)</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

I.      Introduction .................................................................................................................1

II.     Factual Background ....................................................................................................2

III.    Applicable Law ...........................................................................................................4

      a.     Federal Rule of Civil Procedure 11(b) ...........................................................4

      b.     Federal Rule of Civil Procedure 12(b)(3) ......................................................5

      c.     28 U.S.C. §1404(a) .........................................................................................5

IV.    Argument .....................................................................................................................6

      a.     The Forum Selection Clause is Not Applicable to Patent Infringement
            Claims .............................................................................................................6

            i.      Twitter Did Not Believe the Instant Action Was Covered ................6

            ii.     Terms of Service Cover a Specific User's Access and Use of
                 Website .............................................................................................7

            iii.    Twitter's Case Law on this Point is Distinguishable .......................9

      b.     VS Technologies Had to Comply with its Rule 11 Obligations ...............13

      c.     The Forum Selection Clause Does Not Apply to VS Technologies ..........15

      d.     The §1404(1) Factors Do Not Favor Transfer ..........................................17

            i.      Plaintiff's Choice of Forum Factor Favors Non-Transfer ..............19

            ii.     The Convenience of the Parties is Factor Favors Non-Transfer ....20

            iii.    The Convenience of Witnesses Factor is Neutral ..........................21

             iv.    The Interests of Justice Factor Favors Non-Transfer......................22

      e.     If Any Transfer is Warranted it is Intra-Divisionally to Alexandria .......23

V.      Conclusion ...................................................................................................................24

SIGNATURE PAGE ..................................................................................................................

CERTIFICATE OF SERVICE ....................................................................................................

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Agilent Techs., Inc. v. Micromuse, Inc.,*
    316 F. Supp. 2d 322 (E.D. Va. 2004) ..........................................................................5, 18

*Allianz Ins. Co. of Canada v. Cho Yang Shipping Co., Ltd.,*
    131 F. Supp. 2d 787 (E.D. Va. 2000) ......................................................................16, 17

*Brassica Prot. Products LLC v. Caudill Seed & Warehouse CO., Inc.,*
    No. 07 Civ. 7844 (SAS), 2007 U.S. Dist. LEXIS 93418 (S.D.N.Y. Dec. 19, 2007)...10, 11

*Compare Ticketmaster L.L.C. v. RMG Techs. Inc.,*
    507 F.Supp.2d 1096 (C.D. Cal. 2007) ...........................................................................15

*DE Technologies, Inc v. Dell Inc.,*
    No.: 7:04cv00628, 2006 U.S. Dist. LEXIS 7553 (W.D. Va. Feb. 28, 2006)................4, 14

*Freedman v. America Online, Inc.,*
    325 F. Supp. 2d 638 (E.D. Va. 2004) ...........................................................................15

*Gibson Guitar Corp. v. Wal-Mart Stores, Inc.*, et. al.,
    Case No. 3:08cv0279, 2008 U.S. Dist. LEXIS 60811 (M.D. Tenn. 2008).......................12

*Greer v. 1-800-Flowers.com, Inc.,*
    No. H-07-2543, 2007 U.S. Dist. LEXIS 73961 (S.D. Tex. Oct. 3 2007) .........................15

*GTE Wireless, Inc. v. Qualcomm, Inc.,*
    71 F. Supp. 2d 517 (E.D. Va. 1999) .............................................................................22

*Hanover Ins. Co. v. Paint City Contractors, Inc.,*
    299 F. Supp.2d 554 (E.D. Va. 2004) ............................................................................19

*Heinz Kettler GmbH & Co. v. Razor USA, LLC,*
    Case No. 1:10cv708, 2010 U.S. Dist. LEXIS 119954 (E.D. Va. Nov. 5, 2010) ..........5, 18

*Hipage Co., Inc. v. Access2Go, Inc.,*
    589 F. Supp. 2d 602 (E.D. Va. 2008) ...........................................................................13

*Hugel v. Corp. of Lloyd's,*
    999 F.2d 206 (7th Cir. 1993) .....................................................................................17

*JTH Tax, Inc. v. Whitaker,*
    Civil No. 2:07cv170, 2007 U.S. Dist. LEXIS 52672 (E.D. Va. July 16, 2007) ...............21

*Marano Enters. Of Kansas v. Z-Teca Rests.*, L.P.,
   254 F.3d 753 (8th Cir. 2001) ....................................................................17

*Methode Electronics, Inc. v. Delphi Auto. Sys. LLC*,
   639 F. Supp. 2d 903 (N.D. Ill. 2009) ..............................................9, 10, 11, 18

*Monsanto Co. v. Trivette*,
   Case No. 4:07CV343 CDP, 2007 U.S. Dist. LEXIS 33798 (E.D. Mo. May 27, 2007) ....12

*Motiva, LLC v. Nintendo Co.*,
   No. 6:08-cv-429, 2009 U.S. Dist. LEXIS 55406, (E.D. Tex. June 30, 2009) ..................21

*Network-1 Sec. Solutions v. D-Link Corp.*,
   433 F. Supp. 2d 795 (E.D. Tex. 2006) ....................................................21, 22

*Novartis Vaccines and Diagnostics, Inc. v. Hoffman La-Roche Inc.*,
   597 F. Supp. 2d 706 (E.D. Tex. 2009) ..........................................................23

*Pax, Inc. v. Veolia Water N. Am. Operating Servs., Inc.*,
   347 F. Supp. 2d 281 (W.D. Va. 2004) ..............................................................6

*Pee Dee Health Care, P.A. v. Sanford*,
   509 F.3d 204 (4th Cir. 2007) ....................................................................13

*Quintero v. Jim Walter Homes, Inc.*,
   709 S.W.2d 225 (Tex. App. Corpus Christi [13th Dist.] 1985)........................................13

*S. Bravo Systems v. Containment Technologies Comp.*,
   96 F.3d 1372 (Fed. Cir. 1996)................................................................4, 13

*TrueBeginnings, LLC v. Spark Network Services, Inc.*,
   631 F. Supp. 2d 849 (N.D. Tex. 2009) ..........................................................11

*Uniwest Const., Inc.* v. *Amtech Elevator Servs., Inc.*,
   699 S.E. 2d 223 (Va. 2010)........................................................................8

*Va. Elec. and Power Co. v. Norfolk S. Ry. Co.*,
   683 S.E.2d 517 (Va. 2009)........................................................................8

*View Eng'g Inc. v. Robotic Vision Sys., Inc.*,
   208 F.3d 981 (Fed. Cir. 2000)................................................................4, 13

*Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal*,
   859 F.2d 1302 ....................................................................................15

## <u>Statutes and Rules</u>

Fed. R. Civ. P. 11(b) ...................................................................................................4

Fed. R. Civ. P. 11(b)(3) .............................................................................................5

Fed. R. Civ. P. 12(b)(3) ..........................................................................1, 3, 5, 7, 17

Fed. R. Civ. P. 12(h) ....................................................................................1, 5, 7

28 U.S.C. §1400(b) ...........................................................................................14, 20

28 U.S.C. §1404(a) .......................................................................1, 2, 5, 7, 17, 18

## I.      Introduction

Defendant Twitter Inc.'s ("Twitter's") Motion to Transfer Pursuant to §1404(a) (the "Twitter Motion") should be denied.  Twitter urges its Terms of Service agreement with Dinesh Agarwal, the inventor of United States Patent No. 6,408,309 B1 (the "'309 Patent") be given an overreaching scope.  Agarwal allegedly agreed to the Terms of Service when signing up as a Twitter member, to determine if Twitter infringed the '309 patent.  By its express terms, the forum selection clause in the Terms of Service agreement covers causes of action "arising in connection with" the "Services" provided to a specific user and Twitter expressly defines "Services" to *not* include Twitter's acts which Plaintiff contends amount to patent infringement. Because the instant litigation is not a cause of action arising in connection with Agarwal's specific use of the Twitter's Services, application of the forum selection clause to Plaintiff's present claim is inappropriate.

Twitter tacitly admits that the forum selection clause is not relevant to this litigation.  If it was, Twitter would have filed a motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).  However, no such motion was filed, and Twitter's Answer fails to comment on the alleged impropriety of Plaintiff's chosen venue.  In other words, if Twitter thought the choice of forum clause controlled, it would have challenged venue.  But it did not, and yet now wants to argue here it somehow weighs on the issue before the Court despite the fact that failure to make a challenge that venue is improper waives the defense pursuant to Fed. R. Civ. P. 12(h).

Notwithstanding the scope of "Services," the applicability of the forum selection clause, and Twitter's failure to complain that venue was improper before answering, Federal Rule of Civil Procedure 11 ("Rule 11") obligates any plaintiff's attorney to perform an investigation of publicly available information to form a good faith basis for patent infringement before filing

1

suit.  Agarwal, himself a patent attorney and well aware of this obligation, was beginning the performance of this required investigation when he signed up for Twitter's website.  Complying with these ethical obligations should not, as a matter of public policy, provide Twitter the opportunity to monopolize its chosen venue for any lawsuit filed against it, even those that have nothing to do with the Twitter "Services" provided to Agarwal.  If allowed, any company could avoid ever being sued in any proper forum other than its chosen one for all suits.

Whether the forum selection clause or Rule 11 obligations are taken into account, the balance of the §1404(a) factors favors non-transfer of this action.  Twitter's Motion should therefore be denied.

## II.    Factual Background

The application leading to the '309 Patent was filed by Agarwal, the inventor, prosecuting attorney, and Manager of Plaintiff VS Technologies, LLC ("VS Technologies") in February of 2000. The '309 Patent was issued on June 18, 2002.  See Exh. A, Declaration of Dinesh Agarwal ("Agarwal Dec."), Exh. A1.  The '309 Patent is entitled "Method and System for Creating an Interactive Virtual Community of Famous People" and teaches the creation of a virtual community in which members of that community can update, modify, or revise their individual profiles and also interact with non-members or other members of the virtual community. See Exh. A, Agarwal Dec., Exh. A1.  While such technology is seemingly ubiquitous now with the recent explosion of the internet and social media websites like the accused Twitter website, the '309 Patent is the first patent covering such technology.  Twitter was founded in 2006, six years after the filing of the application leading to the '309 Patent.

In January of 2010, Agarwal – not Plaintiff – became a Twitter member and allegedly agreed to the Terms of Service provided by Twitter with its Motion.  Exh. A, Agarwal Dec. at

¶5.  Agarwal's sole reason for signing up is important.  Because the Federal and Fourth Circuits have determined that Rule 11 requires a patent litigation plaintiff and attorney to conduct a pre-suit investigation of publicly available information to form a good-faith basis for infringement before filing a lawsuit, Agarwal – a patent attorney with full knowledge of these obligations – *had* to sign up for Twitter to examine how the system worked and compare the claims of the '309 Patent.  Exh. A, Agarwal Dec. at ¶¶5, 6.  Failure to sign up would constitute running afoul of his and Plaintiff's ethical obligations.  In September of 2010, VS Technologies was formed, and shortly thereafter Agarwal assigned it the '309 Patent.  Exh. A, Agarwal Dec. at ¶¶2, 8.

Agarwal has no recollection of agreeing to the Terms of Service (Exh. A, Agarwal Dec. at ¶7), and Twitter's Motion provides no evidence that Agarwal ever agreed.  Assuming that he did, it is not a foregone conclusion that the instant suit is subject to the forum selection clause contained therein.  To the contrary, Twitter did not complain about Plaintiff's chosen venue and seek dismissal based on improper venue pursuant to Fed. R. Civ. P. 12(b)(3) as it would have if the forum selection clause was applicable.  The forum selection clause explicitly applies to actions "arising in connection with the Services" and the Terms of Service explicitly define "Services" to encompass a specific user's access to and use of the website.  It makes no mention of patent infringement anywhere in the agreement and Plaintiff is not bringing a claim based on Agarwal's use of the Services provided him by Twitter.  Twitter is now asking this Court to transfer this lawsuit to the United States District Court for the Northern District of California so that it can defend itself against Plaintiff's allegations in its own backyard, which would prejudice Plaintiff and delay this case by over two years.  Transfer is inappropriate given these circumstances.

3

### III.    Applicable Law

#### a.   Federal Rule of Civil Procedure 11(b)

Rule 11(b) states in pertinent part:

> "[b]y presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery …"

Fed. R. Civ. P. 11(b) (2010). The Federal Circuit has interpreted Rule 11 in a patent infringement context to require an infringement analysis of publicly available documents be done prior to filing suit for patent infringement.  *See e.g. S. Bravo Systems v. Containment Technologies Comp*., 96 F.3d 1372, 1375 (Fed. Cir. 1996) ("Determining infringement, however, requires that the patent claims be interpreted and that the claims be found to read on the accused devices" and chiding Plaintiff's attorneys because "there is no evidence that either of [plaintiff's attorneys] ever compared the accused devices with the patent claims."); *see also View Eng'g Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) ("… Rule 11, we think, must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.").  Federal Courts in Virginia have similarly viewed Rule 11 in a patent infringement context.  *See e.g. DE*

*Technologies, Inc v. Dell Inc.*, No.: 7:04cv00628, 2006 U.S. Dist. LEXIS 7553, *15 (W.D. Va. Feb. 28, 2006) (where the "primary issue before [the] court [was] whether [plaintiff] and its attorneys violated Rule 11(b)(3) by failing to conduct an adequate pre-filing investigation before filing its infringement suit…").   Agarwal, as an attorney himself and well aware of these obligations, signed up for Twitter to begin the required pre-suit investigation.

### b.   Federal Rule of Civil Procedure 12(b)(3)

The Federal Rules of Civil Procedure require that "every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.   But a party may assert the following defenses by motion: … (3) improper venue."   Fed. R. Civ. P. 12(b) (3) (2010).   The Federal Rules go on to state that "a party waives any defense listed in [Rule 12(b)(3)] by failing to make it by motion…." Fed. R. Civ. P. 12(h) (2010).

### c.   28 U.S.C. §1404(a)

Federal statute provides for the transfer of a lawsuit: "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a).   Standards applicable to the determination of the parties' convenience are determined by regional circuit law.   In the Fourth Circuit, in considering a transfer, a district court must inquire first, whether the claims might have been brought in the transferee forum, and second, whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum. *See Agilent Techs., Inc. v. Micromuse, Inc.* 316 F. Supp. 2d 322, 324-25 (E.D. Va. 2004).   To properly analyze the second prong, a court performs a balance test that weighs "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Heinz Kettler GmbH & Co. v. Razor USA, LLC*, Case No. 1:10cv708, 2010 U.S. Dist. LEXIS

119954, *16 (E.D. Va. Nov. 5, 2010).  While a forum selection clause can be a factor in the convenience analysis, it must be binding to be applicable and even still is not determinative. S*ee Pax, Inc. v. Veolia Water N. Am. Operating Servs., Inc.*, 347 F. Supp. 2d 281, 283 (W.D. Va. 2004).  This is especially true when the agreement to which the forum selection clause is a part has no bearing on any of the facts of the instant cause of action.  The presence of a forum selection clause is simply a part of the court's analysis when examining the convenience of a forum as it relates to a motion to transfer.

## IV.    Argument

### a.    The Forum Selection Clause is Not Applicable to Patent Infringement Claims

Twitter's Motion argues that the forum selection clause contained within the Terms of Service should be given broad application to cover claims for patent infringement, but such a reading is unwarranted.  Twitter presumptively determines Plaintiff's claim should be covered, because the forum selection clause states "all claims … arising in connection with the Services" are covered.  Twitter Motion at pp. 5-6.  However, Twitter fails to provide a proper discussion of what "Services" actually encompass.   A full examination of the Terms of Service and its definitions shows why Twitter carefully omitted it from its Motion.

#### i.    Twitter Did Not Believe the Instant Action Was Covered

Twitter itself did not believe the instant action was encompassed within the Terms of Service and its forum selection clause.  Twitter's Motion distinguishes between mandatory and permissible forum selection clauses, arguing that the clause in the Terms of Service is a mandatory one.  See Twitter Motion at p. 4.  This is inconsistent with Twitter's course of action in this litigation to date, where it failed to complain that the forum selection clause controlled by neither mentioning this in its answer or filing a motion to dismiss for improper venue pursuant to

<u>Fed. R. Civ. P. 12(b)(3)</u>.  This silence speaks volumes.  Twitter now takes a contrary stance in arguing to this Court that the forum selection clause is mandatory and requires this case to be transferred, but such an argument is essentially waived by Fed. R. Civ. P. 12(h), which requires a defense to venue be brought in a motion prior to defendant's answer.  The existence of the forum selection clause should have no bearing on the §1404(a) analysis to be done by this Court.

### ii.    Terms of Service Cover a Specific User's Access and Use of the Website

The Terms of Service state explicitly: "These Terms of Service ('Terms') govern <u>your access to and use of</u> the services and Twitter's websites (the 'Services')." See Twitter's Motion, Elman Dec., Exh. B (emphasis added).  "Services" is defined expressly by Twitter with the word "your" so as to encompass that specific, agreeing user's access to and use of services provided by Twitter.  Despite Twitter's argument that this is broad language, it is instead specifically narrowed so that the Terms of Service agreement governs only a specific user's access to and use of the services provided by Twitter.  Any activity by the user or Twitter that occurs outside of a specific user's access and use are not contained within the definition of "Services" and the Terms of Service do not apply.

The forum selection clause in the Terms of Service reads:

> "[t]hese Terms and any action related thereto will be governed by the laws of the State of California without regard to or application of its conflict of law provisions or your state or country of residence.  All claims, legal proceedings or litigation <u>arising in connection with the Services</u> will be brought in San Francisco County, California and you consent to the jurisdiction of and venue in such courts and waive any objection as to inconvenient forum…."

Twitter Motion, Elman Dec., Exh. B (emphasis added).  By its own terms then, the Terms of Service cover *a user's access to and use of* the website and the forum selection clause contained therein encompasses <u>only</u> claims *arising in connection with* those "Services" i.e. only claims arising in connection with access and use by a specific user.

The pertinent question is whether Plaintiff's current claim against Twitter for infringement of the '309 Patent arises in connection with Agarwal's specific access to and use of the Twitter website and services.  It is clear that Twitter's infringement does not arise from, nor does it relate to, Agarwal's access to or use of the Twitter website.  Virginia law on contract interpretation is in accord.[1]  Instead, Plaintiff's claim for patent infringement deals with Twitter's own conduct in its unauthorized use of Plaintiff's patented invention.  The claim for patent infringement has nothing to do with Agarwal's own limited access to and use of the website for Rule 11 purposes.  In short, Twitter would infringe and Plaintiff's allegations would be identical had Agarwal *not* personally signed up for the Twitter services.

The forum selection clause itself provides additional support that patent infringement lawsuits were not contemplated as within its scope.  The clause starts with a governing law provision, stating: "[t]hese Terms and any action related thereto will be governed by the laws of the State of California without regard to or application of its conflict of law provisions or your state or country of residence." Twitter Motion, Elman Dec., Exh. B.  This is noteworthy because this provision comes right before the sentence pointed to by Twitter as requiring a transfer of venue, and this provision *cannot* be applicable to patents.  Patents are exclusively governed by federal law pursuant to Article One, Section Eight of the United States Constitution.  Claims for

---

[1] See *Va. Elec. and Power Co. v. Norfolk S. Ry. Co.*: "… we are guided by the well-settled principle that [t]he interpretation of a contract presents a question of law subject to de novo review.  Moreover, it is equally settled that the primary focus in considering disputed contractual language is for the court to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in the contract." 683 S.E.2d 517, 525 (Va. 2009) (Internal citations and quotations omitted); *See also Uniwest Const., Inc.* v. *Amtech Elevator Servs., Inc.*: Contracts are interpreted with consideration of "the words of the contract within the four corners of the instrument itself" and explaining that "the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly…. In addition, the contract is construed as a whole. [Its] provisions are to be harmonized when possible, [and] effect is to be given to every stipulation when it can reasonably be done." 699 S.E. 2d 223, 229 (Va. 2010).

patent infringement are governed by federal law, not California law.  Thus, this section cannot be applicable to patent infringement lawsuits.

A fair reading of the Terms of Service and the forum selection clause is that claims arising out of a specific user's actual use of the website or other services provided by Twitter are within the scope of the forum selection clause, but claims arising apart from a specific user's access or use are not.  For example, if Twitter sued one of its agreeing users for breach of the Terms of Service or for unlawful use of the Twitter website, that suit would fall within the scope of the forum selection clause.  But a suit unrelated to a user's specific use, for example if a user was injured while at Twitter's offices, would not fall within the scope even if that user had agreed to the Terms of Service.  Patent infringement lawsuits are akin to the latter because infringement is unrelated to a specific user's actual access to and use of the website, but instead directly to how the Twitter website generally works.  Nowhere in the agreement are patents, patent rights, or patent infringement mentioned, and Twitter should not be allowed to force consent to jurisdiction for patent infringement where it failed to obtain it earlier.

### iii.   Twitter's Case Law on this Point is Distinguishable

Case law cited by Twitter in support of its proposition that patent infringement suits are covered by the forum selection clause is easily distinguishable.  In *Methode Electronics, Inc. v. Delphi Auto. Sys. LLC*, 639 F. Supp. 2d 903 (N.D. Ill. 2009), a forum selection clause was determined to cover a claim for patent infringement in part because the parties had a "long-standing relationship that grew out of, and is therefore connected with, the design and manufacture of [the infringing product subject to the contract containing the forum selection clause]." *Id*. at 909.  Contrary to those circumstances, Twitter and Agarwal have no relationship, long-standing or otherwise, Twitter's infringement is completely unrelated to the Terms of

Service agreement, and the agreement is not the basis for which any product is made that practices the invention. Unlike here, the agreement in *Methode* was directly related to the claim of patent infringement. The *Methode* court even cautioned that a broad forum selection clause like the one Twitter urges this Court it has, "doesn't justify a literal interpretation that carries far beyond any purpose that can reasonably be imputed to the drafter." *Id*. at 908 (internal quotations omitted). *Methode* explained: "a clause designating a forum for all disputes 'arising out of' a contract applies to 'all disputes the resolution of *which arguably depend on the construction of [the] agreement*.'" Id. (emphasis added) (internal citation omitted). Plaintiff's patent infringement claim will be resolved by an interpretation of the claims of the '309 Patent and the application of those claims to the accused system, irrespective of the construction of the *any* terms or provisions in the Terms of Service. *Methode* therefore supports denial of Twitter's Motion.

*Brassica Prot. Products LLC v. Caudill Seed & Warehouse CO., Inc.*, No. 07 Civ. 7844 (SAS), 2007 U.S. Dist. LEXIS 93418 (S.D.N.Y. Dec. 19, 2007) is also distinguishable. In *Brassica*, the forum selection clause was more broad than that at issue here, stating "the parties irrevocably submit to the exclusive jurisdiction or the courts of the State of New York and the United States District Court located in the Borough of Manhattan in New York City …" encompassing both state and federal courts. *Id*. at *1. Additionally, the defendant's infringing product was the subject of a license agreement between the parties containing the forum selection clause. *Id*. at *2-3. The suit included claims other than patent infringement and because there was a license to practice the invention, the agreement containing the forum selection clause was central to the dispute:

> "[Defendant's] argument regarding the invalidity of the patent is raised as a defense to [Plaintiff's] charge that [Defendant] has violated the Agreement. It is

> true that the fundamental dispute between the parties relates to [Defendant's]
> production of products that are covered by the Patents. However, [Defendant]
> negotiated a license to produce those products, and now seeks to avoid its
> obligations under that license by claiming the Patents are invalid. While most of
> [Plaintiff's] claims against [Defendant] are premised on patent infringement,
> [Plaintiff] also asserts that [Defendant] has breached the Agreement and is suing
> for damages."

*Id*. at \*5.  Here there is only the single claim of patent infringement which has arisen irrespective

of any Terms of Use which in no way constitute a license to Twitter to practice the invention.

Neither *Methode* nor *Brassica* enforce a forum selection clause for a cause of action that arose

completely independently of the formation of the contract like Twitter is asking this Court to do.

This case is instead comparable to *TrueBeginnings, LLC v. Spark Network Services, Inc.,*

631 F. Supp. 2d 849 (N.D. Tex. 2009).   In *TrueBeginnings*, the court explained that "the

threshold issue in this case is whether the pre-suit investigation of [the accused] website

conducted by [Plaintiff] falls within the scope of the Terms of Use.  [Plaintiff] contends that the

Terms of Use apply only to the … services offered by [Defendant] through its website.

Defendant maintains that the Terms of Use govern any access or use of the website." *Id.* at 853.

The *TrueBeginnings* court determined, in "looking to the contract as a whole in light of the

surrounding circumstances" that "in light of the nature of the services offered by [Defendant], it

is reasonable to conclude that the terms of use apply only to the … services available through the

… website." *Id*. at 854-5.  The *TrueBeginnings* court continued "… there can be little doubt that

the terms and conditions apply only to the … services offered by [Defendant] through its

website.  Because [Plaintiff] used the website for the sole purpose of investigating whether

[Defendant] infringed the ['309 patent, its conduct is outside the scope of the Terms of Use." *Id*.

at 856.  This Court is faced with the same threshold issue and should reach the same conclusion.

*Gibson Guitar Corp. v. Wal-Mart Stores, Inc.*, et. al., Case No. 3:08cv0279, 2008 U.S. Dist. LEXIS 60811 (M.D. Tenn. 2008) is also instructive.  In *Gibson*, the first set of defendants argued that the forum-selection clause in the license agreement between the plaintiff and another defendant required plaintiff to bring its claims against all defendants in California.  The court quickly dismissed the argument, "not seriously consider[ing] the forum-selection argument other than to point out that this patent-infringement action is not governed by the license agreement between [the other defendants] and [plaintiff], and the [first set of defendants] have no standing to enforce a forum-selection clause in an agreement to which they are not parties." *Id.* at *15.  This is analogous to the present situation in which one party to the agreement, Agarwal, is not a party to the lawsuit.

Finally, in *Monsanto Co. v. Trivette*, Case No. 4:07CV343 CDP, 2007 U.S. Dist. LEXIS 33798 (E.D. Mo. May 27, 2007), while the Court did determine that the patent infringement claim falls within scope of the forum selection clause, it did so only because there was a co-pending claim for breach of contract and plaintiff "conced[ed] that if a valid breach of contract claim exists, then this Court has jurisdiction" and that without the purchasing of product covered by the contract with the forum selection clause, no patent rights would have been violated.  *Id.* at *13-14.  In *Monsanto* there was a "single dispute at issue here, which [plaintiff was] pursuing through alternative legal theories. The same operative facts, grounded in the licensing agreement, are essential to all of [plaintiff's] claims." *Id.* at 14.  Here Plaintiff alleges a single cause of action for patent infringement unrelated to the Terms of Service.  The Terms of Service do not contemplate coverage for patent infringement lawsuits such that any forum selection clause therein has no bearing whatsoever on Twitter's Motion to Transfer.

**b.    VS Technologies Had to Comply with its Rule 11 Obligations**

Even if patent infringement suits were covered by the forum selection clause (which they are not) application of the forum selection clause to the present situation would be unreasonable because such application would contravene long-standing public policy.  *See Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 612 (E.D. Va. 2008) (forum-selection clauses are unenforceable if "... challenger can clearly show that enforcement would be unreasonable under the circumstances.").  Enforcement of a forum selection clause is unreasonable if enforcement would contravene a strong public policy of this forum. *See Pee Dee Health Care, P.A. v. Sanford,* 509 F.3d 204, 213-14 (4th Cir. 2007).  Requirement and performance of ethical obligations of parties and attorneys are matters of public policy. *See e.g. Quintero v. Jim Walter Homes, Inc.*, 709 S.W.2d 225, 230 (Tex. App. Corpus Christi [13[th] Dist.] 1985) (where the court voided a contract as violative of the Code of Professional Responsibility in stating: "[in] civil cases … as a matter of public policy, the ethics of attorneys and their clients must exist on a very high plane.") Applying the forum selection clause to a cause of action where the terms had to be agreed to in order to fulfill an ethical obligation would therefore be unreasonable.

One such ethical obligation which leads to this result is the obligation imposed on a party and its attorney by Rule 11's requirement that a patentee and its counsel engage in a pre-filing investigation prior to asserting claims for patent infringement.  Indeed, the Federal Circuit has declared that counsel would violate Rule 11 if he or she did not do such a comparison.  *See e.g. S. Bravo Sys.*, 96 F.3d at 1375 (requiring "evidence that plaintiff's attorney compare the accused devices with the patent claims" prior to filing suit); *View Engineering Inc.,* 208 F.3d at 986 ("… Rule 11, we think, must require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is

13

a reasonable basis for a finding of infringement of at least one claim of each patent so asserted."); and Western District of Virginia case *DE Technologies, Inc v. Dell Inc.*, 2006 U.S. Dist. LEXIS 7553 at *15 (discussing the requirement of plaintiff and its counsel to conduct a pre-filing investigation before filing patent infringement lawsuit).

As a patent attorney himself, Agarwal was well aware of the pre-suit investigation requirement.   Exh. A, Agarwal Dec. at ¶5.   Given these requirements, it would have been improper for Agarwal, Plaintiff, and its attorneys to not fully investigate the Twitter website and its services prior to filing the instant suit.   Enforcing the forum selection clause in situations like this one would allow Twitter to monopolize venue for any and all lawsuits filed against it, including those in which Plaintiff's agreement to the Terms of Service is mandatory in order to perform its ethical obligations.   Such a result flies in the face of public policy, and accordingly should not be allowed.   Twitter is contending that its Terms of Service can insulate it from a patent infringement lawsuit in any venue other than its own backyard, which is in direct conflict with applicable federal law allowing for venue in an infringement action in any "judicial district where … the defendant has committed acts of infringement." 28 U.S.C. §1400(b).   Twitter is essentially asking this Court to determine that a prospective plaintiff cannot perform its required pre-suit investigation and risk having its suit therefore thrown out unless it agrees to venue in California.   That is unacceptably against public policy, and Twitter itself points out that contracts against public policy should not be enforced. *See* Twitter Motion at pp. 7, 9.

Ironically, had Agarwal and his attorneys not performed a pre-suit investigation into how the Twitter system works, Twitter would have charged Plaintiff with claiming infringement without any reasonable basis for doing so.   Plaintiff should not have to give up its right to choose where to litigate its claim simply because of unrelated ethical obligations.   When the Terms of

Service and its express definition of "Services" is examined through the lens of public policy with Rule 11 in mind, it is clear that patent infringement litigations are not contemplated by this clause and cannot be included within its scope.  Twitter could have drafted the Terms of Service to expressly cover *any access* or viewing of its website for *any purpose* but it failed to do so. Many forum selection clauses are drafted this way and enforced by courts. *See e.g. Compare Ticketmaster L.L.C. v. RMG Techs. Inc.*, 507 F.Supp.2d 1096, 1107 (C.D. Cal. 2007) (Terms of Use governed any access to or viewing of the website); *Greer v. 1-800-Flowers.com, Inc.*, No. H-07-2543, 2007 U.S. Dist. LEXIS 73961, *2 (S.D. Tex. Oct. 3 2007) (Terms of Use agreed to and applied after "accessing any part of the website.); and *Freedman v. America Online, Inc.*, 325 F. Supp. 2d 638, 640-41 (E.D. Va. 2004) (forum selection clause gave Virginia courts "jurisdiction over any claim or dispute with AOL.").

Additionally, the applicability of the forum selection clause is lessened when one party, like Agarwal here, had no bargaining power in entering into the agreement.  *See Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal*, 859 F.2d 1302, 1310 (determining that the forum selection clause was inapplicable in the absence of a freely negotiated agreement between the parties of relatively equal bargaining power.).

Simply stated, the Terms of Service do not prohibit Plaintiff's required obligation to determine whether Twitter is engaging in unlawful activity, and should not require Plaintiff to give up its right to choose where it files suit for infringement in exchange for the required fulfillment of such obligations.

### c.    The Forum Selection Clause Does Not Apply to VS Technologies

Even if a claim by Agarwal for patent infringement falls within the scope of the forum selection clause *and* Twitter is allowed to deprive Agarwal individually of his choice of forum

despite his reason for signing up for Twitter, these limitations on Agarwal should not be imputed to Plaintiff.  Twitter argues that Plaintiff inherited its contractual relationship, relying on *Allianz Ins. Co. of Canada v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787 (E.D. Va. 2000) for the proposition that non-parties to a contract are bound by a forum selection clause if the non-party is so closely related to the dispute that being bound is foreseeable. *Id.* at 791-92.  But *Allianz* also cautions "when parties contract to litigate any dispute arising under their contract in a specified forum, [the presumption is] that they are speaking only of disputes with each other in the absence of language about disputes with third parties." *Id.* at 791 (internal citation omitted).  Mention of third parties is absent from the Terms of Service, which contain no clause indicating that any rights or obligations granted by the agreement are assignable, that they inure to the benefit of assignees or successors, or bind any unnamed third parties.

Plaintiff was not formed as an entity until September of 2010 and did not exist at the time Agarwal allegedly consented to the Terms of Service in January of 2010.  Exh. A, Agarwal Dec. at ¶3.  Clearly Plaintiff was not, nor could it have been, a party to the agreement.  Any consent given by Agarwal at that time could not have been on behalf of nor done by Agarwal in his role of manager of Plaintiff because Plaintiff did not exist as an entity.  Applying the standard set forth in *Allianz*, it was not foreseeable that any consent given by Agarwal would also bind Plaintiff because of Plaintiff's non-existence and also because the cause of action of patent infringement is not the type of claim even contemplated by the forum selection clause.

Further, the *Allianz* court found the forum selection clause in a bill of lading applicable to plaintiff despite plaintiff not being a party to that contract because the contract itself was integral to the lawsuit.  The *Allianz* court determined that plaintiff "accepted [the] terms, including the forum selection clause" of the contract because it filed a suit which sought enforcement of that

very contract. *Id.* at 792.  Here, VS Technologies has not accepted any of the terms of the Terms of Service, including its forum selection clause, because the instant litigation does not bear whatsoever on the Terms of Service.  Plaintiff is not seeking enforcement of the Terms of Service.  Instead, its claim of patent infringement will be resolved completely irrespective of the Terms of Service.

Twitter also relies on *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) and *Marano Enters. Of Kansas v. Z-Teca Rests.*, L.P., 254 F.3d 753, 757-58 (8th Cir. 2001) for support that VS Technologies and Agarwal are "closely related" so the forum selection clause applies to Plaintiff, but *Hugel* and *Marano* are distinguishable.   Unlike in *Hugel* where the actions of Hugel himself were the subject of the lawsuit which implicated his company, here neither Agarwal's nor VS Technologies actions are at issue.  Instead Twitter's conduct as an infringer will take center stage.  *Marano* is similar to *Allianz*, in that the court determined that Marano, the individual, was closely related to plaintiff such that the forum selection clause he signed could be enforced against plaintiff, but because as a plaintiff suing for a breach of that same agreement, the Marano entity effectively also accepted the terms of the agreement.  *Id.* at 757-58.  Additionally, in *Hugel* and *Marano*, the forum selection clause at issue covered the type of litigation brought by the respective plaintiffs, but here patent litigations are not contemplated by the Terms of Service.

    **d.**    **The §1404(a) Factors Do Not Favor Transfer**

Twitter's application of the §1404(a) factors is largely based on the faulty premise that Plaintiff consented to jurisdiction in California and Twitter interjects this improper assumption into each factor to bolster its argument.  Twitter makes these arguments *despite* not having filed a motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) which it would have

had it truly believed the forum selection clause to be controlling.  While the existence of a forum selection clause can be relevant to the Court, the Court's transfer analysis should remain "flexible and multifaceted, and a forum-selection clause--like any other relevant factor--should receive neither dispositive consideration … nor no consideration."  *Methode Electronics, Inc.,* 639 F. Supp. 2d at 908.  Twitter's excessive harping on the clause urges this Court to give it extra weight than a proper analysis would allow.  Even if Plaintiff did consent – which it did not – and such consent is included in the transfer analysis, the factors still favor denial of the Twitter Motion.  When the analysis is done with proper exclusion of the clause because it is inapplicable to patent infringement litigations, the factors weigh even heavier against transfer.

There are two inquires a court makes when considering §1404(a) transfer request: (1) whether the claims might have been brought in proposed transferee forum; and (2) whether the interest of justice and convenience of the parties and witnesses justifies transfer to that forum. *See Agilent Techs., Inc.,* 316 F. Supp. 2d at 324-25.  There is no dispute that Plaintiff could have brought suit in the proposed transferee forum, but transfer does not serve the convenience of the parties.  As Twitter even points out "no matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away." Twitter Motion at p. 8 (*citing Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1258 (4th Cir. 1991)).  Twitter is simply seeking to shift that burden from itself to Plaintiff.

The second prong of the transfer test requires an analysis of the convenience of the parties.  This analysis weighs the following factors: (1) plaintiff's choice of forum; (2) convenience of the parties; (3) witness convenience and access, and (4) interests of justice. *See Heinz Kettler GmbH & Co.,* 2010 U.S. Dist. LEXIS 119954 at *16.

### i.   Plaintiff's Choice of Forum Factor Favors Non-Transfer

The "plaintiff's choice of forum factor" weighs in favor of denying transfer.  Under this factor, a plaintiff's choice of venue is entitled to "substantial weight" in determining whether transfer is appropriate.  *Hanover Ins. Co. v. Paint City Contractors, Inc.*, 299 F. Supp.2d 554, 556 (E.D. Va. 2004). Twitter's Motion properly lists this factor, but then immediately tries to minimize its weight because it so clearly favors denial of Twitter's Motion.  Here Twitter again interjects its forum selection clause argument, but that should have no bearing on this factor whatsoever because Plaintiff's claim for patent infringement is not encompassed within the clauses' scope.  Twitter stresses that it is based in the proposed transferee forum and claims the suit's center of gravity is in California, but Twitter virtually ignores Plaintiff's strong presence in the current venue, including that Plaintiff is domiciled here; has its office here; and the inventor, prosecuting attorney, and any files or evidence in Plaintiff's possession, custody, or control are here.  Exh. A., Agarwal Dec. at ¶¶3, 4.  Even if the center of gravity can be said to be in California, this is not determinative of the factor entitled *plaintiff's choice of forum*.

Twitter attempts to minimize this forum's relation to the infringing activity, focusing solely on Twitter's main brick and mortar location.  But this forum is related to Twitter's infringement because Twitter infringes in any forum in which its services and website are being used, including this one.  Twitter claims if it infringes, it does so only in California, but this case is in its infancy and Plaintiff has not served its infringement contentions, no discovery responses have been served by either party, nor have any documents been produced.  At such a stage it is likely that Twitter does not understand that under Plaintiff's infringement theory, as Plaintiff stated in its Original Complaint, Twitter does infringe in the Eastern District of Virginia.  Twitter states "the mere fact that Virginia residents may use Twitter's accused systems and services

avails VS Technologies nothing, as it is not suing those residents in this action."  Twitter Motion at p. 12.  Plaintiff obviously admits to not *suing* any Virginia residents, but this Court is well aware that 28 U.S.C. 1400(b) allows for venue anywhere infringement is occurs, which necessarily includes Virginia.

Plaintiff's choice of forum is entitled to additional deference when that chosen forum is, as in this case, where a plaintiff, the inventor, and the prosecuting attorney are all located.  *Heinz Kettler GmbH & Co.*, 2010 U.S. Dist. LEXIS 119954 at *17 ("[Plaintiff's choice of forum] is typically entitled to substantial weight, especially where the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.").

Twitter can try and murk the waters for this factor as much as it likes by inserting irrelevant arguments, but there is little doubt that the "plaintiff's choice of forum" factor weighs in favor of keeping the case in the Eastern District of Virginia – Plaintiff's chosen forum.

### ii.   The Convenience of the Parties Factor Favors Non-Transfer

The "convenience of the parties" factor favors non-transfer of this action.  In analyzing the convenience of the parties and witnesses, courts "consider factors such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory processes." *Id*. at *18 (internal citations omitted).  Twitter naturally points to its own increased convenience if the suit were closer to its home, but the same arguments regarding Plaintiff's convenience support keeping the lawsuit closer to its own home in Virginia.  Just as Twitter has offices, employees, and documents in California, Plaintiff has the same in Virginia. See Exh. A., Agarwal Dec. at ¶¶3, 4.  And while Twitter is likely to have more documents than Plaintiff and courts have said the location of documents is still part of the transfer inquiry, it is undeniable that electronic discovery lessens the inconvenience of document location for all

parties.  *Motiva, LLC v. Nintendo Co.*, No. 6:08-cv-429, 2009 U.S. Dist. LEXIS 55406, *7 (E.D. Tex. June 30, 2009).  At this early stage of the litigation it is unclear which issues will move to the forefront and be most relevant or what evidence will be requested or produced as the litigation progresses.  It is equally unclear if California is home to an overwhelming amount of witnesses as Twitter would have this Court believe.  There is no real dispute that Twitter views the proposed transferee forum as more convenient to access of proof and witnesses and Plaintiff views the current venue as more convenient.  The difference is that Twitter has offices, employees, documents, and a presence all over the country, but Plaintiff exists <u>only</u> in the Eastern District of Virginia under any examination.  Even though this factor supports denial of Twitter's Motion, Plaintiff realizes that this Court has pointed out that this factor should be given little weight because "the import of this factor is significantly reduced when a plaintiff files suit in its own forum, and will rarely justify transfer in such cases, because transfer would likely serve only to shift the balance of inconvenience from defendant to plaintiff." *JTH Tax, Inc. v. Whitaker*, Civil No. 2:07cv170, 2007 U.S. Dist. LEXIS 52672, *11 (E.D. Va. July 16, 2007) (internal citation omitted).

### iii.    The Convenience of Witnesses Factor is Neutral

The "convenience of witnesses" factor is neutral.  The unique nature of patent suits is such that witnesses and evidence are prone to be significantly dispersed even when the parties are not scattered across the nation.  *Network-1 Sec. Solutions v. D-Link Corp.,* 433 F. Supp. 2d 795, 802-03 (E.D. Tex. 2006) is instructive:

> Witnesses in patent cases are typically more dispersed.  There are the inventors who created the patented invention and the attorneys who prosecuted the patent application, who may or may not have ties to the plaintiff.  The inventors and designers of the defendant's accused products are also important.  Of immense importance, and usually unknown at the beginning of the case, are witnesses with personal knowledge of relevant prior

> art.  Such witnesses are usually not affiliated with either party and have the
> possible power of proving the plaintiff's patent invalid.  There are witnesses
> relating to sale and distribution of the accused products, which are relevant to
> damages.  Typically, witnesses in patent cases are scattered throughout the
> country, if not the world.  Thus, the importance of witnesses' cost and
> distance of travel is diluted since, regardless of where the trial is held, it is
> nearly certain that many witnesses, including third-party witnesses, will need
> to travel a significant distance.
>
> Documents, prototypes, and witnesses are typically located throughout the
> country and the world in patent cases.  Thus, no forum can be convenient for
> everyone."

As the *Network-1* court points out, this factor is diluted in a patent infringement context,

especially at the infancy stages of a case.  As the litigation progresses there will be party and

non-party witnesses such as experts related to infringement, validity, enforceability, damages,

revenues, prior art, documents and other witnesses and documentation likely located throughout

the country, at least to the extent of rendering this factor neutral.

### iv.    The Interests of Justice Factor Favors Non-Transfer

The "interests of justice" factor strongly favors denial of transfer.  Twitter's argument

again improperly assumes the existing forum selection clause covers this lawsuit.  Twitter claims

that California has a strong interest in trying this at home because of Twitter's presence there,

but Virginia also has an interest in trying this case in the home of the inventor and Plaintiff who

are part of the Virginia community and specifically the Eastern District.  Exh. A., Agarwal Dec.

at ¶3, 4.  Additionally, Twitter "followers" are all over the world and not centered anywhere,

including California.

The applicable federal law related to infringement is the same in either venue and both

courts have experience in handling patent litigations.  However the interests of justice factor also

examines other circumstances such as the docket conditions of the two courts at issue.  *See GTE*

*Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999).  The recent and

historical gaping disparagement in time to trial in the two venues cannot be overlooked or minimized. For all cases, including patent litigations, the median time from filing to trial in the Eastern District of Virginia is currently 11.1 months, where in the Northern District of California it is over twice as long at 24.2 months. Exh. B., Declaration of Todd Blumenfeld ("Blumenfeld Dec."), Exh. B1. This disparity is even greater for patent litigations where the average time from filing to trial in the Eastern District of Virginia is .93 years (11.16 months) and in the Northern District of California is over three times as long at 2.95 years (35.4 months). Exh. B., Blumenfeld Dec., Exh. B2 at p. 21. Accordingly, if this case were transferred per Twitter's request, Plaintiff's claim would not be before a jury until 2014, despite Twitter's infringing activity beginning as early as 2006. Accordingly, this factor strongly weighs against transfer.

Because of the geographic disparity between Plaintiff and Twitter, transfer to California would simply "reallocate inconvenience, rather than lessen it." *Novartis Vaccines and Diagnostics, Inc. v. Hoffman La-Roche Inc.*, 597 F. Supp. 2d 706, 713 (E.D. Tex. 2009). Such a reallocation would serve no purpose. Because three of the convenience factors favor denial of the transfer motion, one is neutral, and a reallocation of the inconvenience would simply burden Plaintiff with more of the load where Plaintiff is clearly financially less able to handle such a burden than is Twitter, Twitter's Motion should be denied.

### e.    If Any Transfer is Warranted it is Intra-Divisionally to Alexandria

Plaintiff originally filed this lawsuit in the Alexandria division of the Eastern District of Virginia. Plaintiff chose to file there because that is where it is domiciled and where Agarwal, Plaintiff's Manager, the inventor of the '309 Patent and its prosecuting attorney lives and practices law. Exh. A., Agarwal Dec. at ¶¶3, 4. While the Norfolk Division of the Eastern District of Virginia is *infinitely* more convenient to Plaintiff than a suit located in the Northern

District of California, Alexandria is the most convenient division for Plaintiff.  If any transfer of this litigation is warranted, it is an intra-divisional transfer to Alexandria Division of the Eastern District of Virginia where Plaintiff is domiciled and originally filed this lawsuit, not to the Northern District of California.

**V.      Conclusion**

Based on the reasoning set forth herein, Plaintiff respectfully requests that this Court deny Twitter's motion to transfer venue to the Northern District of California.

Respectfully submitted,

Dated:  April 19, 2011                          /s/ Amy S. Owen_____
                                                Amy S. Owen (VSB # 27692)
                                                aowen@cochranowen.com
                                                Benje A. Selan (VSB #65923)
                                                bselan@cochranowen.com
                                                Cochran & Owen LLC
                                                8000 Towers Crescent Drive, Suite 160
                                                Vienna, VA  22182
                                                Ph: (703) 847-4480
                                                Fx: (703) 847-4499

                                                Jonathan T. Suder
                                                Todd I. Blumenfeld
                                                 FRIEDMAN, SUDER & COOKE, P.C.
                                                Tindall Square Warehouse No. 1
                                                604 East 4th Street, Suite 200
                                                Fort Worth, Texas 76102
                                                Phone: (817) 334-0400
                                                Fax: (817) 334-0401
                                                jts@fsclaw.com
                                                blumenfeld@fsclaw.com

Edward W. Goldstein
Corby R. Vowell
GOLDSTEIN & VOWELL L.L.P
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515
(713) 877-1737 (fax)
egoldstein@gviplaw.com
cvowell@gviplaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **VS Technologies Opposition to Defendant Twitter's Motion to Transfer Pursuant to § 1404(a)** was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following on this 19th day of April, 2011, unless otherwise noted:

VIA ELECTRONIC MAIL

Robert A. Angle
Dabney J. Carr, IV
TROUTMAN SANDERS LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia  23219
Telephone:  804-697-1200
Facsimile:  804-697-1339
Email:  robert.angle@troutmansanders.com
Email:  dabney.carr@troutmansanders.com

Robert A. Van Nest
David J. Silbert
Tia A. Sherringham
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188
Email:  RVanNest@KVN.com
Email:  DSilbert@KVN.com
Email:  TSherringham@kvn.com

Attorneys for Defendant Twitter, Inc.

/s/ Amy S. Owen
Amy S. Owen (VSB # 27692)
aowen@cochranowen.com
Benje A. Selan (VSB #65923)
bselan@cochranowen.com
Cochran & Owen LLC
8000 Towers Crescent Drive, Suite 160
Vienna, VA  22182
Ph: (703) 847-4480
Fx: (703) 847-4499

**ATTORNEYS FOR PLAINTIFF**