IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



VS TECHNOLOGIES, LLC,

**Plaintiff,**

v.                                              CIVIL CASE NO. 2:11CV43

TWITTER, INC.

**Defendant.**

## ORDER

This is a patent infringement case. On January 18, 2011, Plaintiff VS Technologies, LLC

("VS Technologies" or "Plaintiff") filed its complaint for patent infringement against Defendant

Twitter, Inc. ("Twitter"). Doc. 1. VS Technologies alleges that Twitter infringes U.S. Patent

No. 6,408,309[1] (the "'309 patent"). Id.

On April 4, 2008, Twitter moved to transfer this case to the Northern District of

California. Doc. 27. Twitter asserts (1) that Dinesh Agarwal ("Agarwal"), the '309 patent

inventor, expressly agreed to a forum selection clause designating the Northern District of

California as the sole venue for claims arising in connection with Twitter's online services and/or

(2) that transferring this case to the Northern District of California via operation of 28 U.S.C.

§ 1404(a) is appropriate. Doc. 28. VS Technologies filed a response to Twitter's motion to

transfer venue on April 19, 2011. Doc. 29. The next day, Twitter filed a reply. Doc. 30. A

hearing on Twitter's motion was convened on June 8, 2011. For the reasons stated at that

hearing and contained herein, the Court **DENIES** Twitter's motion to transfer venue, Doc. 28.

---

[1] Method and System for Creating an Interactive Virtual Community of Famous Peolpe, U.S. Patent No. 6,408,309 (filed Feb. 23, 2000) (issued June 18, 2002).

1

## DISCUSSION

### I. THE FORUM SELECTION CLAUSE

Twitter contends that Agarwal "agreed with Twitter that '[a]ll claims, legal proceedings

or litigation arising in connection with [Twitter's] Services will be brought **solely** in San

Francisco County, California,'" and "consent[ed] to the jurisdiction of and venue in such courts

and waive[d] any objection as to inconvenient forum." Doc. 28 at 1 (emphases and alterations in

original). This contention is premised on the fact that Agarwal opened an account through

Twitter's website in January 2010, and, in doing so, allegedly agreed to Twitter's website's

Terms of Service. Id. at 2. Under a heading entitled "Controlling Law and Jurisdiction,"

Twitter's website's Terms of Service provide in relevant part:

> These Terms and any action related thereto will be governed by the laws of the
> State of California without regard to or application of its conflict of law
> provisions or your state or county of residence. All claims, legal proceedings or
> litigation arising in connection with the Services will be brought solely in San
> Francisco County, California, and you consent to the jurisdiction of and venue in
> such courts and waive any objection as to inconvenient forum.

Doc. 28-3.

In arguing that the existence of the above forum selection clause mandates that the Court

transfer this case to the Northern District of California, Twitter asserts (1) that the forum

selection clause is mandatory and exclusive; (2) that the forum selection clause applies to VS

Technologies' claims; and (3) that VS Technologies has not carried its burden to prove that the

forum selection clause is unenforceable. Doc. 28 at 3–9. In response, VS Technologies argues

(1) that the forum selection clause is inapplicable to VS Technologies' patent infringement

claims; (2) that "[e]ven if patent infringement suits were covered by the forum selection clause

(which they are not) application of the forum selection clause to the present situation would be

2

unreasonable because such application would contravene long-standing public policy" because Agarwal created a Twitter account to comply with his obligation under Federal Rule of Civil Procedure 11 to engage in a pre-filing investigation prior to the assertion of patent infringement claims; and (3) "[e]ven if a claim by Agarwal for patent infringement falls within the scope of the forum selection clause *and* Twitter is allowed to deprive Agarwal individually of his choice of forum despite his reason for signing up for Twitter, these limitations on Agarwal should not be imputed to Plaintiff." Doc. 29 at 6–17 (emphasis in original). Twitter's arguments and VS Technologies' applicable counterarguments are discussed seriatim.

## A. NATURE OF THE FORUM SELECTION CLAUSE

Twitter contends that its website's Terms of Service's forum selection clause is mandatory because it unambiguously requires that "[a]ll claims" in connection with Twitter's website's services "will be brought solely" in San Francisco County, and no other venue. Doc. 28 at 4. Twitter further contends that where a forum selection clause utilizes such mandatory language, it is presumptively valid and should be enforced. Id. VS Technologies offers no counterargument. Instead, VS Technologies focuses on the more relevant question: whether the forum selection clause applies to VS Technologies' patent infringement claims. Twitter's forum selection clause does appear to be mandatory, and it appears to provide that claims must be brought exclusively in San Francisco County; however, the forum selection clause's applicability, not its mandatory and/or exclusive character, is the fulcrum of the parties' instant dispute over venue.

## B. APPLICABILITY OF THE FORUM SELECTION CLAUSE TO VS TECHNOLOGIES' PATENT INFRINGEMENT CLAIMS

Twitter's argument regarding the forum selection clause's applicability to VS Technologies' claims may be bifurcated into two distinct issues:  (1) whether the forum selection

clause may be applied to VS Technologies even though it was Agarwal—not VS Technologies—who allegedly agreed to Twitter's website's Terms of Service and (2) whether the forum selection clause is applicable to patent infringement claims.

### (1) WHETHER THE FORUM SELECTION CLAUSE APPLIES TO VS TECHNOLOGIES

Twitter argues that VS Technologies is bound by the forum selection clause, even though it was not a party to the contract Agarwal allegedly entered, because VS Technologies is "so 'closely related' to the dispute that being bound is 'foreseeable.'" Doc. 28 at 4.  In support of this argument, Twitter cites Allianz Ins. Co. of Canada v. Cho Yang Shipping Co., Ltd., 131 F. Supp. 2d 787, 791–92 (E.D. Va. 2000).  Twitter asserts that Allianz stands for the proposition that a non-party to a contract may be bound by a forum selection clause in that contract if the non-party is "closely related" to the contracting party, and Twitter points out that Agarwal is VS Technologies' sole registered agent, member, and manager.  Id. at 4.

VS Technologies maintains that it cannot be bound by Twitter's forum selection clause. VS Technologies informs the Court that it was formed in September of 2010 and did not exist at the time Agarwal allegedly consented to Twitter's website's Terms of Service.  Doc. 29 at 16. Thus, VS Technologies argues, it was not foreseeable under Allianz that any consent given by Agarwal would bind VS Technologies.  Id.  VS Technologies further argues that Twitter's interpretation of Allianz omits important dicta and that Allianz is distinguishable from the instant case.  Id.

VS Technologies advises that Twitter omits any mention of the following note of caution from the Allianz court: "when parties contract to litigate any dispute arising under their contract in a specified forum, [the presumption is] that they are speaking only of disputes with each other in the absence of language about disputes with third parties." Id. at 16 (citing Allianz, 131 F.

4

Supp. 2d at 791). Based on this dicta, VS Technologies contends that Twitter's forum selection clause is inapplicable to VS Technologies because "[m]ention of third parties is absent from [Twitter's] Terms of Service, which contain no clause indicating that any rights or obligations granted by the agreement are assignable, that they inure to the benefit of assignees or successors, or bind any unnamed third parties." Id. VS Technologies also argues that the Allianz court found that a forum selection clause in a bill of lading was applicable to a plaintiff who was not a party to that bill of lading because the bill of lading itself was integral to the lawsuit: "The *Allianz* court determined that plaintiff 'accepted [the] terms, including the forum selection clause' of the contract because it filed suit which sought enforcement of that very contract." Id. at 16–17 (citing Allianz, 131 F. Supp. 2d at 792). But here, according to VS Technologies, VS Technologies' patent infringement suit "does not bear whatsoever on [Twitter's] Terms of Service. Plaintiff is not seeking enforcement of the Terms of Service. Instead, its claim of patent infringement will be resolved completely irrespective of the Terms of Service." Id. at 17.

In Allianz, Plaintiff Allianz Insurance Company of Canada ("Allianz Insurance") filed suit against a number of defendant common carriers and/or bailees, alleging that those defendants, inter alia, breached a bill of lading contract that they entered into with Allianz Insurance's subrogor's agents. Allianz, 131 F. Supp. 2d at 789–92. The District Court in Allianz noted that other courts had previously "enforced forum selection clauses in bills of lading against the owner, shipper, or insurer of cargo *even though those parties did not sign or negotiate the bill of lading*," and the Allianz District Court chose to do the same. Id. at 791–92.[2] As VS

---

[2] In more detail, the Allianz District Court reasoned:

> The forum selection clause at issue in this case specified that its application was limited to "the contract evidenced by or contained in the bill of lading." In this case, the forum selection clause applies to Allianz, even though it was not explicitly listed as a party in the bill of lading, and did not participate directly in the shipment or in negotiating its terms. The contract evidenced by and contained in the bill of lading explicitly concerns AGM's cargo. Allianz then inherited its contractual connection to the dispute from AGM as its subrogee. Although they were not

Technologies contends, <u>Allianz</u> is inapposite. With its patent infringement claims, VS Technologies has not filed suit under Twitter's Terms of Service.

In support of its position, Twitter also cites <u>Hugel v. Corporation of Lloyd's</u>, 999 F.2d 206 (7th Cir. 1993) and <u>Marano Enters. Of Kansas v. Z-Teca Rests., L.P.</u>, 254 F.3d 754 (8th Cir. 2001). Like <u>Allianz</u>, however, these two cases are distinguishable from the instant dispute.

In <u>Hugel</u>, the Seventh Circuit decided that two corporations, which were 99% owned and 100% owned by Plaintiff Dieter M. Hugel ("Hugel"), were subject to a forum selection clause that mandated that their President and Chairman, Hugel, litigate in England any claims against Defendant Corporation of Lloyd's ("Lloyd's") arising out of Hugel's membership of, and/or underwriting of insurance business at, Lloyd's, notwithstanding the fact that those two corporations were not parties to Hugel's contract with Lloyd's. <u>Hugel</u>, 999 F.2d at 209–10. The Seventh Circuit reasoned that Hugel himself put his two corporations into issue in the course of Lloyd's investigation of Hugel's possibly criminal conduct. <u>Id.</u> at 210 ("Although GCM and OMI were not members of Lloyd's, in the course of a dispute between Hugel and Lloyd's, Hugel alone involved his two controlled corporations and supplied information allegedly belonging to those corporations."). Therefore, the Seventh Circuit affirmed the district court's finding that "the corporations owned and controlled by Hugel are so closely related to the dispute that they are equally bound by the forum selection clause and must sue in the same court in which Hugel agreed to sue." <u>Id.</u> In the instant dispute, Agarwal did not analogously involve VS Technologies in a dispute with Twitter when he created a Twitter account.

---

specified as such, both . . . the shipper, as well as . . . the consignee, made the arrangements for transporting AGM's goods, thereby serving as AGM's "agents" under this bill of lading. Furthermore, it was foreseeable that claims brought under the bill of lading would be governed by its forum selection clause. Allianz filed suit on the bill of lading, and thereby accepted its terms, including the forum selection clause contained therein. Thus, Allianz's contention that it is not subject to the forum selection clause contained in the bill of lading is without merit.

<u>Allianz</u>, 131 F. Supp. 2d at 791–92 (internal citations omitted).

In <u>Marano</u>, the Eight Circuit rejected the argument of a corporate entity, Marano

Enterprises of Kansas ("Marano Enterprises"), wherein that entity contended that it should not be

subjected to a forum selection clause present in franchise and development agreements into

which it had entered because one of its shareholders, Leon Marano, was not a party to those

agreements. <u>Marano</u>, 254 F.3d at 757. The Eight Circuit reasoned, "Leon Marano joined with

Marano Enterprises and Bruce Marano in bringing suit against Z-Teca under the agreements,

arguably acquiescing in the forum-selection clauses within those agreements. As a voluntary

plaintiff, he will not now be heard to object to jurisdiction limited to the venue(s) to which his

co-plaintiffs agreed." <u>Id.</u> at 757–58. VS Technologies is not urging this Court to disregard a

forum selection clause that it entered into because Agarwal never acquiesced to such a clause.

Rather, VS Technologies argues that it should not be bound by a forum selection clause to which

it never agreed. Thus, <u>Marano</u>, like <u>Allianz</u> and <u>Hugel</u>, is readily distinguishable.

For the above reasons, Twitter's argument that *VS Technologies* should be bound to

Twitter's website's Terms of Services because *Agarwal* created a Twitter account is untenable.

### (2) WHETHER THE FORUM SELECTION CLAUSE APPLIES TO PATENT CLAIMS

In urging the Court to transfer this case to the Northern District of California,

Twitter asserts that "courts have repeatedly held that forum-selection agreements like the one at

issue here apply to patent-infringement claims." Doc. 28 at 6–7. Twitter cites and discusses

<u>Methode Elecs., Inc. v. Delphi Auto Sys. LLC</u>, 639 F. Supp. 2d 903 (N.D. Ill. 2009) and <u>Brassica</u>

<u>Prot. Prods. LLC v. Caudill Seed & Warehouse Co., Inc.</u>, No. 07 Civ. 7844, 2007 WL 4468655

(S.D.N.Y. Dec. 19, 2007). <u>Id.</u> at 6.

In discussing <u>Methode</u>, Twitter accurately asserts that the <u>Methode</u> court held that a

forum selection clause covering "any legal or equitable action or proceeding arising out of, or in

connection with, this Contract"—the contract governing the parties' supply arrangement—encompassed the plaintiff supplier's patent infringement claims. Methode, 639 F. Supp. 2d at 908–09. However, unsurprisingly, Twitter fails to mention that the forum selection clause at issue in Methode expressly contemplated jurisdiction in both state *and federal* courts in Michigan. See id. at 908 (reproducing the forum selection clause, which provided, "[E]ach party hereby agrees that the forum and venue for any legal or equitable action or proceeding arising out of, or in connection with, this Contract will lie in the appropriate federal or state courts in the State of Michigan and specifically waives any and all objections to such jurisdiction and venue").

In discussing Brassica, Twitter again omits language indicating that the forum selection clause at issue expressly contemplated federal jurisdiction. In its motion, Twitter provides, "Likewise, in *Brassica* [], the parties agreed to 'irrevocably submit to the exclusive jurisdiction' of New York courts and 'waive all objections' to proceeding there, without limitation as to the types of actions that might be brought." Doc. 28 at 6–7 (quoting Brassica, 2007 WL 4468655 at *2) (full citation of Brassica omitted). Twitter selectively quotes from the following sentence in Brassica: "It [the forum selection clause] states that the parties 'irrevocably submit to the exclusive jurisdiction' of this *district* and waive all objections to proceeding here, without limitation as to the types of actions that might be brought." Brassica, 2007 WL 4468655 at *2 (emphasis added). And there is no doubt that the forum selection clause at issue in Brassica explicitly contemplated federal jurisdiction. The forum selection clause read, "The parties (I) irrevocably submit to the exclusive jurisdiction or the courts of the State of New York and the United States District Court located in the Borough of Manhattan in New York City." Brassica, 2007 WL 4468655 at *1. Twitter's omissions are telling.

8

Twitter's forum selection clause does not explicitly provide for federal jurisdiction.  At the June 8, 2011 hearing, Twitter's counsel argued that Twitter's forum selection clause does invoke federal court jurisdiction because (1) it provides that claims "will be brought solely in San Francisco County, California," in which a federal district court is located, and (2) it states that the party agreeing to Twitter's Terms of Service consents to the jurisdiction of and venue in "such courts" of San Francisco County, and "courts" is plural.  This argument is clever, but, for the reasons that follow, the Court is not persuaded that Twitter's Terms of Service contemplate coverage of patent litigation claims.

Twitter's "Terms of Service ('**Terms**') govern [a Twitter website user's] access to and use of the services and Twitter's websites (the '**Services**'), and any information, text, graphics, or other materials uploaded, downloaded or appearing on the Services (collectively referred to as '**Content**')."  Doc. 28-3 (emphases in original).  VS Technologies is asserting patent infringement claims.  Such claims simply are not based on VS Technologies' or Agarwal's "access to and use of" services provided by Twitter's website.  Further, Twitter undercuts its own position when it argues that its Terms of Service clearly contemplate coverage of intellectual property disputes, including patent infringement suits, because the Terms of Service contain a "Copyright Policy."  Claims of copyright infringement and patent infringement are governed by distinctly different laws, and Twitter's specific inclusion of a "Copyright Policy" offers little support for Twitter's counsel's argument.  Rather, the inclusion of a specific "Copyright Policy" and the absence of an analogous patent infringement policy bolster the Court's opinion that Twitter's Terms of Service do not cover patent infringement claims.

Finally, with the growth of the social networking industry, the Court hesitates to establish precedent that would potentially foster satellite litigation in every patent case involving a social

networking market participant. Should this Court decide that a social networking market participant can limit the forum in which it can be sued for patent infringement via Terms of Service governing "access to and use of" that social networking market participant's website and services, foreseeably, other District Courts in similar cases will be called upon to decide, <u>inter alia</u>, whether other plaintiffs' employees ever agreed to online Terms of Service, whether those employees could bind their plaintiff employers to those Terms of Service, whether those Terms of Service contained a forum selection clause, whether any such forum selection clause was enforceable, and, as the Court is asked to decide here, whether that forum selection clause contemplated coverage of patent infringement claims. The Court refuses to set this precedent.

For the above reasons, the Court **FINDS** that Twitter's forum selection clause neither applies to VS Technologies nor contemplates coverage of patent infringement claims. Accordingly, the Court **DENIES** Twitter's motion to transfer venue insofar as it is premised on operation of Twitter's forum selection clause. Having so ruled, the Court leaves unaddressed (1) Twitter's argument that VS Technologies failed to carry its burden to prove the forum selection clause unenforceable and (2) VS Technologies' argument that Agarwal created a Twitter account solely to satisfy his Rule 11 obligation to investigate potential patent claims prior to filing suit.

## II. TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision of whether to transfer rests within the district court's discretion. "'[I]n considering whether to transfer venue, a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum.'"

*Pragmatus AV, LLC v. Facebook, Inc.*, No. 1:10cv1288, 2011 WL 320952 at *2 (E.D. Va. Jan. 27, 2011) (quoting *Agilent Tech., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 324–25 (E.D. Va. 2004) (citation omitted)). The party seeking transfer carries the burden of establishing the propriety of the transferee forum. Id.

### A. WHETHER THE CLAIMS MIGHT HAVE BEEN BROUGHT IN NORTHERN DISTRICT OF CALIFORNIA

Title 28 United States Code, Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). "[A] corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 USCS § 1391(c). Twitter is headquartered in the Northern District of California, resides there, and is subject to personal jurisdiction in that forum. Thus, this civil action could have been brought in the Northern District of California.

### B. THE INTEREST OF JUSTICE AND CONVENIENCE TO PARTIES AND WITNESSES

"The second prong of the § 1404(a) analysis is a balancing test that weighs '(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice.'" *Pragmatus AV, LLC*, 2011 WL 320952 at * 2 (quoting *Heinz Kettler GmbH & Co. v. Razor USA, LLC*, No. 1:10cv708, 2010 U.S. Dist. LEXIS 119954, at *16 (E.D. Va. Nov. 5, 2010)). First, Twitter argues that its forum selection clause is a significant factor that should figure centrally in the Court's § 1404(a) analysis. This argument is unconvincing for the same reasons that Twitter's overarching forum selection clause is unconvincing: Twitter's forum selection clause does not apply to this case. Second, Twitter argues that the other § 1404(a) factors favor transfer.

### (1) PLAINTIFF'S CHOICE OF FORUM

Typically, a plaintiff's choice of forum is entitled to substantial weight, "especially where the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action." Id. (quoting Heinz Kettler GmbH & Co., 2010 U.S. Dist. LEXIS 119954 at *17). The level of deference a court shows a plaintiff's forum choice does, however, vary with the significance of the contacts between the chosen venue and the underlying cause of action. Id. (quoting Board of Trustees v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1256 (E.D. Va. 1998)). If a plaintiff proves a legitimate connection to this district, this §1404(a) factor weighs heavily against transfer. Id. (citing In re Microsoft Corp., 630 F.3d 1361 (Fed. Cir. 2011)).

Twitter contends that "VS Technologies' choice of forum in this litigation is entitled to little, if any, weight because (1) the Eastern District of Virginia is not the contractual forum in Twitter's forum-selection clause, and (2) there is no connection between the alleged infringement and the Eastern District of Virginia." Doc. 28 at 11. Twitter's first argument is unpersuasive for reasons discussed supra. Twitter's second argument is unpersuasive because, as VS Technologies argues, Twitter "ignores Plaintiff's strong presence in the current venue." Doc. 29 at 19.

Agarwal has personally resided in Fairfax County, Virginia for over twenty-five (25) years. Id. at ¶ 4. Agarwal is the named inventor on the '309 patent. U.S. Patent No. 6,408,309; Doc. 29-1, Ex. A at ¶ 1 (Declaration of Dinesh Agarwal). He was the sole prosecuting attorney for the '309 patent, and he is the founding member and current manager of VS Technologies, which was formed in Virginia in September of 2010. Doc. 29-1, Ex. A at ¶ 1. Agarwal assigned the '309 patent to VS Technologies when VS Technologies was formed. Id. at ¶ 8.

Because Agarwal and VS Technologies have legitimate and significant connections to the Eastern District of Virginia, the Court **FINDS** that this § 1404(a) factor weighs strongly against transfer.

### (2) CONVENIENCE OF PARTIES

Twitter insists that the Northern District of California is a more convenient forum because all of the evidence relevant to this case is likely to be located at Twitter's San Francisco headquarters and none of that evidence is in Virginia. Doc. 28 at 13. VS Technologies maintains that this factor does not favor transfer. VS Technologies acknowledges that the Northern District of California is clearly more convenient for Twitter because that is where Twitter's offices, employees, and documents are located, but VS Technologies argues that the Eastern District of Virginia is clearly more convenient for it for the same reasons. Doc. 29 at 21.

"Many of the claims and defenses that arise in patent infringement lawsuits, such as inequitable conduct and validity, require the testimony of the inventors, the lawyers who filed the patent applications, and the owners of the intellectual property while the patent applications were pending." Pragmatus AV, LLC v. Facebook, Inc., et al., No. 1:10cv1288, 2011 WL 320952 (E.D. Va. Jan. 27, 2011) With respect to Twitter, such parties are likely located in the Northern District of California. With respect to VS Technologies, such parties are Agarwal, and he is located in the Eastern District of Virginia: Agarwal is the inventor of the '309 patent, he is the lawyer who filed the '309 patent application, and he was the owner of the intellectual property while the application was pending and before the '309 patent was assigned to VS Technologies.

In this case, it is probable that more relevant evidence is and more party witnesses are located in the Northern District of California. However, transfer is inappropriate where it robs a plaintiff of his chosen forum and merely shifts the balance of inconvenience from defendant to

plaintiff. See Board of Trustees v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253,

1258–59 (E.D. Va. 1988) ("Defendants may be inconvenienced by litigating in plaintiff['s] home

forum, but transfer would likely serve only to 'shift the balance of inconvenience' from

defendant to plaintiff." (citing Eastern Scientific Marketing v. Tekna-Seal Corp., 696 F. Supp.

173, 180 (E.D. Va. 1988)). The Court, therefore, attributes little weight to this § 1404(a) factor

and **FINDS** that it weighs neither in favor nor against transfer.

### (3) NON-PARTY WITNESS CONVENIENCE AND ACCESS

Twitter asserts that this 1404(a) factor favors transfer. Although Twitter avers

that "it is difficult to identify its witnesses at this stage given the vagueness of VS Technologies'

allegations," Twitter insists that all of its likely witnesses are in San Francisco, and, therefore,

the Northern District of California is the more convenient forum. Doc. 28 at 13. Twitter names

six likely witnesses from San Francisco: Josh Elman, Abdhur Chowdhury, Andy Lorek, Doug

Bowman, Mark Trammel, and Ashish Goeal. Id. at 14 n.3.

VS Technologies asserts that this § 1404(a) factor is neutral because "[t]he unique nature

of patent suits is such that witnesses and evidence are prone to be significantly dispersed even

when the parties are not scattered across the nation." Doc. 29 at 21. VS Technologies advises

that "as the litigation progresses there will be party and non-party witnesses such as experts

related to infringement, validity, enforceability, damages, revenues, prior art, documents and

other witnesses and documentation likely located throughout the country." Id. at 22.

The witnesses Twitter names in its discussion of this § 1404(a) factor are party witnesses;

they are all employees of Twitter. Thus, convenience to these witnesses is more appropriately

considered under the § 1404(a) convenience of the parties factor, which, as discussed supra,

bears little weight in the Court's instant analysis. VS Technologies has not specifically named

any witness residing or located in Virginia or outside of California other than Agarwal, and its argument with regarding potential non-party witnesses is speculative.

Because neither party advances a persuasive argument with respect to this § 1404(a) factor, the Court **FINDS** that this factor weighs neither in favor nor against transfer.

### (4) INTEREST OF JUSTICE

"'Relevant considerations in evaluating the 'interests of justice' are the pendency of a related action; the court's familiarity with the applicable law; docket conditions; access to premises that might have to be viewed; the possibility of unfair trial; the ability to join other parties; and the possibility of harassment." Pragmatus AV, LLC, 2011 WL 320952 at * 4 (quoting Nationwide Mut. Ins. Co. v. Overlook, LLC, No. 4:10cv69, 2010 U.S. Dist. LEXIS 60300 (E.D. Va. June 17, 2010)).

Twitter asserts that transfer of this case will serve the interests of justice. Doc. 28 at 14–15. Relying first on its forum selection clause, Twitter contends, "Transfer of this case is also in the interest of justice because of the presence of Twitter's forum-selection clause." Id. at 14. Again, the Court is not persuaded by Twitter's forum selection clause arguments. Next, Twitter asserts that California has a strong interest in having this controversy decided at home because Twitter is headquartered in the Northern District of California and 86 percent of Twitter's employees work in Twitter's San Francisco office. Id. at 14–15. These facts are relevant to the previously-discussed § 1404(a) factors, not the final "interest of justice" factor. Finally, Twitter contends that only two of the "interest of justice" factors are potentially relevant here: (1) the Court's familiarity with the applicable law and (2) comparative docket conditions.

Twitter, VS Technologies, and the Court agree that this first interest of justice factor is neutral. As the parties note, both this District and the Northern District of California are fully capable of adjudicating VS Technologies' claims.

With regard to the comparative docket conditions factor, Twitter argues that although cases generally resolve more quickly in the Eastern District of Virginia, the speed of a district's docket is rarely, if ever, a decisive factor in the transfer analysis. VS Technologies argues that the Eastern District of Virginia's docket conditions favor non-transfer. Twitter's position more accurately encapsulates the applicable law. As Twitter notes, the speed of a district's docket is not decisive, and a comparison of docket conditions yields only slight weight for or against transfer in a § 1404(a) analysis. See Cognitronics Imaging Sys. v. Recognition Research Inc., 83 F. Supp. 2d 689, 699 (E.D. Va. 2000) ("Docket conditions, while a consideration, cannot be the primary reason for retaining a case in this district.").

To the extent any weight can be attributed to the comparative docket conditions factor, such slight weight favors non-transfer; however, because this Court does not consider docket conditions alone a sufficient reason for retaining a case in this district, the Court **FINDS** that this § 1404(a) factor bears minimal weight in the Court's instant analysis.

## CONCLUSION

Because it appears (1) that Twitter's forum selection clause is inapplicable to the parties' dispute; and (2) that, in totem, the § 1404(a) factors favor non-transfer, the Court **DENIES** Twitter's motion to transfer venue, Doc. 27.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

16

/s/
_____
Henry Coke Morgan, Jr.
Senior United States District Judge


_____
*HENRY COKE MORGAN, JR.*
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: June __, 2011

17