IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

| | |
|---|---|
| VS TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC.<br><br>Defendant. | Case No. 2:11CV43 HCM/FBS<br><br><br>Date Comp. Filed:    Jan. 18, 2011<br>Trial Date:          Oct. 17, 2011<br>**JURY TRIAL DEMANDED** |

## MEMORANDUM IN SUPPORT OF TWITTER'S
## MOTION FOR SUMMARY JUDGMENT

Robert A. Angle, VSB #37691
Dabney J. Carr, IV, VSB #28679
TROUTMAN SANDERS LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia  23219
Telephone:  804-697-1200
Facsimile:  804-697-1339
Email:  robert.angle@troutmansanders.com
Email:  dabney.carr@troutmansanders.com

Robert A. Van Nest (*admitted pro hac vice*)
David J. Silbert (*admitted pro hac vice*)
Ashok Ramani (*admitted pro hac vice*)
Tia A. Sherringham (*admitted pro hac vice*)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant Twitter, Inc.

**TABLE OF CONTENTS**

<u>Page</u>

I.    INTRODUCTION ...................................................................................1

    A.    Undisputed facts relating to the '309 patent's invalidity under *Bilski* ....................3

    B.    Undisputed facts relating to the '309 patent's invalidity for
        anticipation and obviousness .................................................................5

    C.    Undisputed facts relating to Twitter's non-infringement of the '309
        patent.................................................................................................7

III.    ARGUMENT ......................................................................................9

    A.    The '309 patent is invalid as a matter of law because its subject matter
        is not patentable under 35 U.S.C. § 101 ...............................................10

        1.    The '309 patent fails the machine-or-transformation test
               because the claimed method is not tied to any particular
               machine ............................................................................10

        2.    The '309 patent claims an unpatentable abstract idea ...............15

    B.    The '309 patent is anticipated and obvious as a matter of law ...........17

        1.    Prior-art computerized "Who's Who" services anticipate all of
               the asserted claims ...........................................................17

        2.    Under *KSR* and the cases applying it, the asserted claims were
               obvious as a matter of law ..................................................19

        3.    If the '309 patent claimed anything different from the prior
               art—which it does not—it would be invalid for lack of
               enablement ........................................................................21

    C.    Twitter does not infringe the '309 patent.............................................22

        1.    Twitter does not practice the step of "obtaining biographical
               information about [a] selected member".................................23

        2.    Twitter does not practice the step of "creat[ing] a personal
               profile of [a] selected member" .........................................24

IV.    CONCLUSION...................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Alza Corp. v. Andrx Pharm., LLC*
603 F.3d 935 (Fed. Cir. 2010) .....................................................................................21

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can.*
771 F. Supp. 2d 1054 (E.D. Mo. 2011) ...........................................................2, 12, 16

*Bilski v. Kappos*
130 S. Ct. 3218 (2010).........................................................................1, 10, 11, 15

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*
768 F. Supp. 2d 221 (D.D.C. 2011)...............................................................11

*Cybersource Corp. v. Retail Decisions, Inc.*
No. 04-CV-03268, slip op. (Fed. Cir. Aug. 16, 2011)...................................11, 13, 16

*DealerTrack, Inc. v. Huber*
657 F. Supp. 2d 1152 (C.D. Cal. 2009) .......................................................12, 13, 15

*Diamond v. Diehr*
450 U.S. 175 (1981)..........................................................................................11

*Every Penny Counts, Inc. v. Bank of Am. Corp.*
No. 2:07-cv-042, 2009 U.S. Dist LEXIS 53626 (M.D. Fla. May 27,
2009) ..............................................................................................................10

*Finnigan Corp. v. U.S. Int'l Trade Comm'n*
180 F.3d 1354 (Fed. Cir. 1999) .....................................................................17

*Fort Props., Inc. v. Am. Master Lease, LLC*
609 F. Supp. 2d 1052 (C.D. Cal. 2009) ........................................................10

*Fuzzysharp Techs. Inc. v. 3D Labs Inc.*
No. C07-5948 SBA, 2009 U.S. Dist. LEXIS 115493 (N.D. Cal. Dec. 11,
2009)..........................................................................................................10, 12, 13

*Goldenberg v. Cytogen, Inc.*
373 F.3d 1158 (Fed. Cir. 2004) .........................................................................9

*In re Bilski*
545 F.3d 943 (Fed. Cir. 2008) ................................................................ *passim*

*In re Comiskey*
554 F.3d 967 (Fed. Cir. 2009) .......................................................................10

*KSR Int'l Co. v. Teleflex Inc.*
550 U.S. 398 (2007)...............................................................19, 20, 21, 22, 25

*Leapfrog Enters., Inc. v. Fisher-Price, Inc.*
485 F.3d 1157 (Fed. Cir. 2007) ...............................................................20, 21

*Mantech Envtl. Corp. v. Hudson Envt'l. Servs., Inc.*
152 F.3d 1368 (Fed. Cir. 1998) .....................................................................25

*Muniauction, Inc. v. Thomson Corp.*
532 F.3d 1318 (Fed. Cir. 2008) ..............................................................19, 20, 21, 22

*Playtex Prods. v. P&G*
400 F.3d 901 (Fed. Cir. 2005) .......................................................................22

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*SiRF Tech., Inc. v. Int'l Trade Comm'n*
   601 F.3d 1319 (Fed. Cir. 2010) ...................................................................11

*Southwall Techs., Inc. v. Cardinal IG Co.*
   54 F.3d 1570 (Fed. Cir. 1995) ....................................................................22

*State St. Bank & Trust Co. v. Signature Fin. Group, Inc*
   149 F.3d 1368 (Fed. Cir. 1998) ....................................................................1

*Ultramercial, LLC v. Hulu, LLC*
   No. CV 09-06918, 2010 U.S. Dist. LEXIS 93453 (C.D. Cal. Aug. 13,
   2010) .........................................................................................10, 12, 15, 16


### Federal Statutes

35 U.S.C. § 101 ...................................................................................... *passim*
35 U.S.C. §§ 102 and 103 ......................................................................17, 22
35 U.S.C. § 103(a) .......................................................................................19
35 U.S.C. § 112 ......................................................................................21, 22


### Local Rules

Local Rule 56(b) ...........................................................................................3


### Federal Regulations

75 Fed. Reg. 53643, 53650 (Sept. 1, 2010) ................................................20

Defendant Twitter, Inc. ("Twitter") moves for summary judgment that the patent in suit, U.S. Patent No. 6,408,309, is invalid for two independent reasons:  its subject matter is not patentable under 35 U.S.C. § 101, and prior art that was not disclosed to the U.S. Patent & Trademark Office anticipates it and renders it obvious.  In addition, Twitter moves for summary judgment that Twitter does not infringe the patent.

## I.    INTRODUCTION

In early 2000, when Dinesh Agarwal applied for U.S. Patent No. 6,408,309 ("the '309 patent"), applicants were inundating the U.S. Patent & Trademark Office ("PTO") with patents on methods of doing business over the Internet, thanks to a recent sea change in the law.  For decades, practitioners had believed that business methods were not eligible for patents under 35 U.S.C. § 101 ("§ 101").  But in 1998, the Federal Circuit issued its landmark *State Street* decision, which opened the door to patents on business methods that met a few simple criteria. *See State St. Bank & Trust Co. v. Signature Fin. Group, Inc*, 149 F.3d 1368 (Fed. Cir. 1998).  A patent attorney by trade, Mr. Agarwal was well aware of the new opportunity, and determined to capitalize on it.

In 2008, however—after the PTO had awarded the '309 patent and many more like it under the *State Street* standard—the Federal Circuit repudiated *State Street* in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (en banc).  Then, after granting certiorari in *In re Bilski*, the U.S. Supreme Court also rejected *State Street*, with a plurality of four Justices opining that business methods are *never* patentable, and the majority holding that they may be patented under certain limited circumstances.  *See Bilski v. Kappos*, 130 S. Ct. 3218 (2010).  In particular, the Supreme Court embraced the "machine-or-transformation test" that the Federal Circuit had articulated in *In re Bilski*—which looks to whether the claimed process is tied to a particular machine or apparatus, or transforms a particular article into a different state—as an "important clue" to whether the process is eligible for a patent under § 101.  *Id.* at 3221, 3231.  Since *Bilski*, no court has upheld the validity of any patent that fails this test.

Mr. Agarwal's '309 patent, which is directed to a "Method and System for Creating an Interactive Virtual Community of Famous People," is a quintessential example of a patent

awarded under the old *State Street* standard that is invalid under current law.  The patent does not satisfy the machine-or-transformation test, or even come close to it.  Instead, it broadly claims any process by which famous or accomplished people within a field of endeavor are identified, biographical information about them is obtained, personal profiles are created and published on a machine-readable medium, and the profiled individuals are allowed to interact with their profiles. The claims never mention any particular machine—indeed, they do not mention any tangible thing at all, save a single reference to publishing information "on a machine readable media[.]" And the law is clear that "merely reciting data or instructions on a stored machine readable medium does *not* make a claim statutory under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can.*, 771 F. Supp. 2d 1054, 1065 (E.D. Mo. 2011) (emphasis added).

Moreover, besides claiming subject matter that is unpatentable under § 101, the '309 patent fails the most basic test for patentability that exists:  novelty.  Although the PTO issued the '309 patent more than nine years ago, no one has seriously considered whether it claims anything different from the prior art.  (The PTO itself performed only minimal review.  Mr. Agarwal disclosed *no* prior art, and the PTO examiner allowed the patent in the very first office action, after reviewing only three prior-art patents that are distantly related to the '309 patent's subject matter, if they are even related at all.)  In fact, the patent claims nothing new whatsoever. It describes a sort of computerized "Who's Who" service, published on-line or on CD-ROMs or other media, where profiled individuals can interact with their profiles and may also be allowed to interact with each other or with others.  But such services existed long before 2000, when Mr. Agarwal claims that he invented them.  "Who's Who Online," for example, was available on the Internet since at least 1996, and many, many similar services were available as well.  Mr. Agarwal—who, as an attorney, is not a person of ordinary skill in the art with respect to his own patent, and did little or nothing to determine what others were already doing—simply drafted a patent covering methods that were already well known and obvious.

Finally, even if the '309 patent were valid, Twitter does not infringe it as a matter of law. Twitter operates in a fundamentally different way from what the '309 patent claims.  The patent claims an exclusive community whose members must be selected based upon their fame,

achievement, or some other criteria, where biographical profiles of those selected individuals are then created and published. Twitter does the opposite. Anyone in the world may create a Twitter account, at which time he or she creates a profile, and may include in it a small amount of biographical information (though many users provide none). To try to read its patent on Twitter despite this fundamental difference—between an exclusive system that profiles selected famous people and an open system that anyone can join—plaintiff VS Technologies, LLC ("VS Technologies") has been forced to advocate contorted claim constructions that contradict the '309 patent's disclosures. Under any natural reading of the claim language—and, indeed, even under VS Technologies' erroneous readings—Twitter simply does not do what the patent claims.

For these reasons, and as explained further below, Twitter respectfully requests that the Court grant Twitter's motion for summary judgment and hold that (1) the '309 patent is invalid, and (2) Twitter does not infringe the '309 patent as a matter of law.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56(b), the undisputed material facts are set forth below:

### A.   Undisputed facts relating to the '309 patent's invalidity under *Bilski*

1.   The '309 patent claims a purportedly new method for creating "an interactive virtual community of famous people." *See* Declaration of Tia A. Sherringham in Support of Twitter's Motion for Summary Judgment ("Sherringham Decl.") Ex. 1 ('309 patent). According to the specification, the method filled a need in the prior art for "an interactive online or virtual community of . . . famous or well-known people which would allow other members of the community to learn from the experiences of the famous people, and to be able to interact with them for educational purposes or to satisfy their own curiosity." *Id.* at 2:13-17.

2.   The patent lays out a simple process for practicing the invention. As the specification explains, "the method of the present invention is carried out by first identifying various fields of endeavor[.]" *Id.* at 3:46-47 and Fig 1. Then, "[o]nce a particular field of endeavor has been selected . . . a list of people who are famous, well known, or have achieved a recognizable status in their field of endeavor is compiled[.]" *Id.* at 3:51-55 and Fig. 1. Various factors may be used to identify the people on this list, including "number of years of experience,"

"nature of and number of prizes," "general fame," etc. *Id.* at 3:58-65.

3.      "Once the list is completed, one or more members are selected . . . and then contacted to obtain their biographical information[.]" *Id.* at 4:5-8. Tables 1, 2, and 3 of the patent identify the type of biographical information to obtain from the selected members. *See id.* at 4:17-20. Table 1 is entitled "Personal Information," and includes items such as "Name," "Place of Birth," and "Schools Attended." *Id.* at 4:21-34. Table 2 is entitled "Unique Personal Attributes," and includes a wide range of information including "happiest, saddest, toughest, coolest, worst, best" moments, "[o]utlook for life," "[d]efinition of success," "[s]ocial activities," and more. *Id.* at 4:36-65. Table 3 is entitled "Field of Endeavor Information," and includes items such as "[f]ield," "[p]osition," "[s]tatus," "[a]wards/[p]rizes," etc. *Id.* at 5:1-13. The patent explains that, "[b]y processing the information from the selected member . . . and using an appropriate software, a profile of the member would then be created[.]" *Id.* at 5:14-16 and Fig. 4.

4.      Next, "[t]he profile would be made available in a machine readable media, such as diskette, compact-disk, etc.," or stored in a computer or computer network for access by the profiled individual and others. *Id.* at 5:17-21. "For example, the profile so created may be made accessible via the Internet." *Id.* at 5:22-23. Once the profiles are made available, "[t]he system would further have the capability to allow the members of the virtual community to periodically (or as desired) update, revise or modify their biographical information as they have new experiences[.]" *Id.* at 5:29-33.

5.      Consistent with the specification's description of the invention, Claim 1—the only independent claim that VS Technologies accuses Twitter of infringing—recites the following steps:

> a) selecting a field of endeavor;
>
> b) compiling a list of members in the selected field;
>
> c) selecting a member from the compiled list of members based on a preselected factor;
>
> d) obtaining biographical information about the selected member;

e) processing the biographical information in a preselected format to create a personal profile of the selected member;

f) publishing the profile of the selected member on a **machine readable media**; and

g) allowing the selected member to interact with the profile.

*Id.* at 6:25-41 (emphasis added).

6.     As the bolded text highlights, Claim 1 contains only a single reference to any tangible thing: "a machine readable media." The specification explains that examples of "machine readable media" include a "diskette, compact-disk, etc." *Id.* at 5:18. The additional claims that VS Technologies accuses Twitter of infringing (dependent Claims 5-10) contain no reference to any tangible thing whatsoever. *See id.* at 6:53-7:6.[1] Thus, the recitation of "a machine readable media" in Claim element 1(f) is the sole reference to any tangible thing in all the asserted claims.

**B.     Undisputed facts relating to the '309 patent's invalidity for anticipation and obviousness**

7.     Dinesh Agarwal claims to be an expert at finding prior art. On his website, he advertises that his law firm conducts searches using "professionals who have years of experience" and who "have technical degrees and are well-versed in conducting searches in all disciplines."[2]

8.     Mr. Agarwal deployed none of that expertise, however, when applying for his own patent. Instead, Mr. Agarwal's study of the prior art consisted of entering a single query

---

[1] Claim 5 recites: "The method of claim **1**, wherein: the step (c) comprises selecting a plurality of members from the compiled list of people based on one or more preselected factors"; Claim 6 recites: "The method of claim **5**, wherein: the step (e) comprises creating an individual personal profile of each of the selected members"; Claim 7 recites: "The method of claim **6**, further comprising the step of: h) creating a virtual community of people by publishing the profiles of the selected members"; Claim 8 recites: "The method of claim **7**, further comprising the step of: i) allowing the members of the virtual community to interact with their respective profiles from a remote location"; Claim 9 recites: "The method of claim **7**, further comprising the step of: i) allowing the members of the virtual community to interact with each other from a remote location"; and Claim 10 recites: "The method of claim **7**, further comprising the step of: i) allowing the members of the virtual community to interact with non-members of the virtual community."

[2] *See http://patentidea.com/patent/patent_application.html.*

into an Internet search engine, the text of which he has now forgotten, which yielded no hits. *See* Sherringham Decl. Ex. 5 (Agarwal depo. excerpts) at 91:12-18, 96:3-99:2. With no knowledge of what was already being done, Mr. Agarwal disclosed no prior art whatsoever to the PTO. *See* Sherringham Decl. Ex. 1 at cover page (listing References Cited). As a result, the PTO examiner issued the '309 patent after considering only three prior-art patents that he identified himself, which bear little, if any, relation to the '309 patent's subject matter.[3]

9.  Had Mr. Agarwal researched the prior art in earnest, however—or had he been a person of ordinary skill in the art, so that he was familiar with it—he would have known that many others were already doing what he claimed to have invented. For example, given the obvious relation between the alleged invention of the '309 patent and the familiar "Who's Who" services (i.e., "Who's Who in Business," "Who's Who in Government," etc.), which have been published since at least the nineteenth century, Mr. Agarwal could have investigated whether those services were already computerized by early 2000. Had he done so, he would have discovered that "Who's Who" services had been offered on CD-ROM and on-line for years. *See* Sherringham Decl. Ex. 6 (archived Internet pages describing Marquis Who's Who services on CD-ROM and on-line), Ex. 7 (archived Internet pages describing "Leadership Directories" services on CD-ROM and on-line), and Ex. 8 (archived Internet pages describing "Who's Who Online").

10.  These prior-art computerized "Who's Who" services allowed the people who were profiled to update and modify their profiles, just as claimed in the '309 patent. *See id.* Ex. 6 (noting that Marquis Who's Who sends biographies to profiled individuals "for review, update, and approval"), Ex. 7 (noting that "The Leadership Library on the Internet is now updated weekly. This gives you the most up-to-date information on the 400,000 individuals who constitute the leadership of the United States"), and Ex. 8 (noting that people selected to be

---

[3] The three references that the examiner considered before allowing the '309 patent were (1) U.S. Patent No. 5,675,788 A, entitled "Method and Apparatus for Generating a Composite Document on a Selected Topic from a Plurality of Information Sources"; (2) U.S. Patent No. 5,956,717 A, entitled "Database Origami"; and (3) U.S. Patent No. 6,340,978 B1, entitled "Method and Apparatus for Recording and Presenting Life Stories," which is directed to a user interface for presenting facts about a person's life, which may be placed, for example, on the person's

profiled in Who's Who Online receive "standardized" profiles, but if they wish to, they may add "supplementary sections generated from data entered into online forms"; for example, they may "expand their profiles to include: Directorships, Current Associations and Memberships, Past Associations and Memberships, Published/Creative Works, Joys in Life, [and] Awards and Distinctions").

11.     Likewise, these prior-art computerized Who's Who services were designed to facilitate interaction among the profiled individuals and between profiled individuals and the general public, just as claimed in the '309 patent. *See* Sherringham Decl. Ex. 7 (showing an exemplary Leadership Directories profile of Senator Tom Daschle, which includes his contact information, and showing how, when a user presses the hyperlinked email address, the Leadership Directories software automatically generates an email message addressed to Senator Daschle), and Ex. 8 (describing email and various other telecommunications services that Who's Who Online offered to selected people who were listed in Who's Who registries or "others who have achieved distinction in their area of expertise," which designed to "facilitate global collaboration" among these selected individuals in "a variety of fields, including science, education, the arts, business, ministry, government, etc.").

12.     In short, had Mr. Agarwal investigated the prior art in earnest, or had he been a person of ordinary skill in the art, he would have known that others were already doing everything he claimed to have invented.[4]

**C.     Undisputed facts relating to Twitter's non-infringement of the '309 patent**

13.     Twitter's system operates in a fundamentally different way, and serves a fundamentally different purpose, than what the '309 patent claims.  The '309 patent is directed to an exclusive community that people can join only if they are selected for inclusion, whereas anyone in the world can create a Twitter account.[5]  Accounts may be created in the names of

---

tombstone.  *See* Sherringham Decl. Ex. 1.

[4] The computerized "Who's Who" services described above are but one example of invalidating prior art that was never disclosed to the PTO.  There was a great deal more, which Twitter will present if necessary.

[5] *See* Sherringham Decl., Ex. 10, www.twitter.com, under the heading, "New to Twitter?  Join

people, businesses, government organizations, or types of entities.  For example, the Senate of Virginia has a Twitter account with the user name "VASenate."[6]

14.     When a user creates an account, a profile of the user is created, in which the user may include a small amount of biographical information (though many provide none).[7]  Twitter allows users to post and read messages, known as "Tweets," consisting of 140 characters or less.[8]  A user may subscribe to another user's Tweets by choosing to "follow" that other user.[9]

15.     Launched in 2006, Twitter has experienced rapid growth.  In 2007, users sent approximately 5,000 Tweets per day; in 2008, that figure had grown to 300,000 Tweets per day; by the beginning of 2009, it had grown to 2.5 million Tweets per day; and by the end of 2009, it had grown to 35 million Tweets per day.[10]  These milestones were achieved before the feature of the Twitter service that VS Technologies accuses of infringement was even introduced by Twitter, and therefore have nothing whatsoever to do with the '309 patent.

16.     The feature that VS Technologies accuses of infringement, which is referred to as "Browse Interests" or "Interests," is one of several ways in which Twitter features or suggests particular Twitter accounts that other users may wish to follow.  A user may access this feature by clicking on a tab labeled "Browse Interests."  The user may then click on one or more topics, such as "Art & Design," "Books," "Business," "Sports," "Staff Picks," etc., and see a list of Twitter accounts (individuals or entities) that he or she may wish to follow, as depicted in the image on the next page:

---

today!"

[6] See Id., *http://twitter.com/#!/VASenate*.

[7] See Id., e.g., *http://twitter.com/#!/DAgarwalEsq* (Dinesh Agarwal's Twitter profile).

[8] See Id., *http://support.twitter.com/groups/31-twitter-basics/topics/109-tweets-messages/articles/127856-about-tweets-twitter-updates*.

[9] See Id., *http://support.twitter.com/groups/31-twitter-basics/topics/108-finding-following-people/articles/14019-what-is-following*

[10] See Id., *http://blog.twitter.com/2010/02/measuring-tweets.html*.



17.     The accounts displayed under each of these topics were already active Twitter

users before they were listed.[11]  Twitter never obtains biographical information about any

selected member of a field of endeavor, or creates a profile of any such selected member, as the

'309 patent claims.

### III.     ARGUMENT

Summary judgment is appropriate in patent cases, as in any other case, when no genuine

issue of material fact exists.  *Goldenberg v. Cytogen, Inc.,* 373 F.3d 1158, 1163 (Fed. Cir. 2004).

Here, summary judgment is appropriate for at least three independent reasons:  (1) the '309

patent is invalid under *Bilski* because it claims ineligible subject matter; (2) the '309 patent is

invalid as anticipated and obvious (and if it claims anything different from the prior art, it would

be invalid for lack of enablement); and (3) Twitter does not infringe the '309 patent.

Each of these issues turns on questions of law that the Court can and should decide on summary judgment, and any one of them supports judgment in Twitter's favor.

**A.    The '309 patent is invalid as a matter of law because its subject matter is not patentable under 35 U.S.C. § 101**

Section 101 of the Patent Act defines the subject matter that may be patented.[12] Patentable subject matter is a threshold requirement that all claims must meet; thus, any claim that fails the requirements of § 101 "must be rejected even if it meets all of the other legal requirements of patentability." *In re Bilski*, 545 F.3d at 950 (en banc); *see also In re Comiskey*, 554 F.3d 967, 975 (Fed. Cir. 2009) (raising sua sponte whether claims on appeal were drawn to patent-eligible subject matter). Because patentability under § 101 is a question of law, it is particularly appropriate for resolution on summary judgment. *See, e.g.*, *Ultramercial, LLC v. Hulu, LLC*, No. CV 09-06918, 2010 U.S. Dist. LEXIS 93453, at *6 (C.D. Cal. Aug. 13, 2010) (invalidating patent on summary judgment for failure to comply with § 101); *Fuzzysharp Techs. Inc. v. 3D Labs Inc.*, No. C07-5948 SBA, 2009 U.S. Dist. LEXIS 115493 (N.D. Cal. Dec. 11, 2009) (same); *Every Penny Counts, Inc. v. Bank of Am. Corp.*, No. 2:07-cv-042, 2009 U.S. Dist LEXIS 53626 (M.D. Fla. May 27, 2009) (same); *Fort Props., Inc. v. Am. Master Lease, LLC*, 609 F. Supp. 2d 1052 (C.D. Cal. 2009) (same).

As demonstrated below, the '309 patent fails the requirements of § 101 by a wide margin. Accordingly the Court should hold that the asserted claims of the '309 patent are invalid and grant summary judgment in favor of Twitter.

**1.    The '309 patent fails the machine-or-transformation test because the claimed method is not tied to any particular machine**

In *Bilski*, the Supreme Court explained that the word "process" in § 101 does not encompass all processes. In particular, the Court's precedents carve out three broad areas that are ineligible for patents: "laws of nature, physical phenomena, and abstract ideas." *Bilski*, 130 S.Ct. at 3221 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). As to methods of

---

[11] *See Id.*, *http://support.twitter.com/articles/102036-about-twitter-suggestions*.

[12] Section 101 provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

doing business, four Justices opined in *Bilski* that they are never patentable. *See Bilski*, 130 S.Ct. at 3256 (Stevens, J., concurring). The majority, however, held that business methods may be eligible for patents in some circumstances, and embraced the machine-or-transformation test as a "useful and important clue" for determining whether a claimed method is a patentable "process" under Section 101. *Id.* at 3221; *see also id.* at 3231-2 and 3225 (Stevens, J., concurring) ("[T]he entire Court agrees" that "the machine-or-transformation test is reliable in most cases," and "[f]ew, if any, processes cannot effectively be evaluated using these criteria."). Since the Supreme Court decided *Bilski*, no court has upheld the validity of any patent claim that fails this test.

To satisfy the "machine" prong of the test, a claim must be "tied to a *particular* machine[.]"[13] *In re Bilski*, 545 F.3d at 961-62 (emphasis added). Further, that machine "must impose meaningful limits on the claim's scope," and "not merely be insignificant extra-solution activity." *Id.* Thus, in *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010), the Federal Circuit upheld the patentability of claims drawn to an improved GPS process where the claims required calculating an "absolute position" and using "[p]seudoranges, which are distances or estimated distances between satellites and a GPS receiver[.]" *Id.* at 1332. As the Court explained, "[i]t is clear that the methods at issue could not be performed without the use of a GPS receiver." *Id.* at 1332. The claims therefore required using a particular device—a GPS receiver—in a previously unknown way.

In contrast, where claims merely recite using "a machine readable medium"—as the '309 patent does—or "a computer," "a microprocessor," "the Internet," or some similarly general reference to computer technology, courts have uniformly held that those claims do *not* satisfy the "machine" prong of the test, because they are not tied to any *particular* machine. *See, e.g., CLS*

---

[13] The "transformation" prong is satisfied when the claimed process transforms a particular article into a different state or thing. *See, e.g., Diamond v. Diehr*, 450 U.S. 175 (1981) (upholding the patentability of a process for curing rubber in molded products, where the process transformed rubber into a different state). "The mere manipulation or reorganization of data, however, does not satisfy the transformation prong." *Cybersource Corp. v. Retail Decisions, Inc.*, No. 04-CV-03268, slip op. at 18 (Fed. Cir. Aug. 16, 2011). Thus, VS Technologies does not appear to contend—and could not reasonably contend—that the method of the '309 patent satisfies the "transformation" prong.

*Bank Int'l v. Alice Corp. Pty. Ltd.*, 768 F. Supp. 2d 221, 237 (D.D.C. 2011) ("[D]istrict courts have determined that a method claim that is directed to a general purpose computer is not tied to a particular machine under the [machine or transformation test] test."); *Bancorp*, 771 F. Supp. 2d at 1065 ("[M]erely reciting data or instructions on a stored machine readable medium does not make a claim statutory under § 101."); *Ultramercial*, 2010 U.S. Dist. LEXIS 93453, at *13 ("One cannot circumvent the patentability test merely by limiting the use of the invention to a computer."); *Fuzzysharp*, 2009 U.S. Dist. LEXIS 115493, at *12 ("Courts applying *Bilski* have concluded that the mere recitation of 'computer' or reference to using a computer in a patent claim [is] insufficient to tie a patent claim *to a particular machine*.") (emphasis in original); *DealerTrack, Inc. v. Huber*, 657 F. Supp. 2d 1152, 1156 (CD. Cal. Jul. 7, 2009) ("Under *Bilski* and the recent decisions interpreting it, the central processor in this case cannot constitute a 'particular machine.'").

In *Ultramercial*, for example, the patent at issue claimed a method for distributing copyrighted material over the Internet, including the steps of "offering media products on the Internet," "restricting general public access to the media," "facilitating the display of [an] ad," "allowing the Internet user access to the media," and allowing the media to be "downloaded to a memory of a personal computer of the consumer." *Ultramercial,* 2010 U.S. Dist. LEXIS 93453, at *2-3 and 9-10. Applying the Supreme Court's decision in *Bilski*, the district court held that these claims were not tied to any particular machine or apparatus. In so holding, the court rejected the patentee's argument that the method was tied to a computer or computer network because distributing media over a computer network was essential to the invention. As the court explained, "that the disclosed invention is only used on computers or computer networks cannot alone satisfy the machine test without rendering the test completely toothless." *Id.* at 5. Further, while some of the claims required downloading content onto a personal computer, "the mere act of storing media on computer memory does not tie the . . . invention to a machine in any meaningful way"—indeed, any argument that it did would be "farfetched" and "futile." *Id.* at 4. Thus, the court held that the patent was invalid under § 101 and granted summary judgment

for the defendant.[14]

As these authorities make clear, the asserted claims of the '309 patent fail the "machine" prong of the machine-or-transformation test because they are not tied to any particular machine or apparatus. The claims recite a series of abstract steps for producing an abstract result: "an interactive virtual community of famous people." *See* Sherringham Decl. Ex. 1. Those steps include selecting a field of endeavor, compiling a list of members in the field, selecting members from the list, obtaining biographical information about them, creating personal profiles, publishing the profiles on a machine-readable medium, and allowing the profiled people to interact with their profiles and with each other or members of the public. *Id.* at 6:25-7:6. Computers may be used to implement the method, but in the claims asserted against Twitter (claims 1 and 5-10), computers are not required.[15] Thus, the claims at issue in this case could be

---

[14] Similarly, in *DealerTrack,* the claims were directed to a "'computer aided method' of managing a credit application" that placed the process "in an environment with graphical user interfaces." *DealerTrack,* 657 F. Supp. 2d at 1153. The patentee argued that the claims satisfied the machine-or-transformation test because they were tied to a central processor "consisting of a specially programmed computer hardware and database," a "remote application entry and display device," and a "remote funding source terminal device." *Id.* at 1155. But the court rejected these arguments. It observed that the patent "does not specify precisely how the computer hardware and database are 'specially programmed,' and the claimed central processor is nothing more than a general purpose computer that has been programmed in some unspecified manner." *Id.* at 1156. Thus, the court held that the claims were invalid under § 101. Likewise, in *Fuzzysharp,* the court invalidated claims under § 101 notwithstanding claim limitations that required "computer storage" and "a computer screen," because "[t]he salient question is not whether the claims are tied to *a* computer. Rather, as *Bilski* makes clear, the question is whether the claims are tied to *a particular machine.*" *Fuzzysharp,* 2009 U.S. Dist. LEXIS 115493 at *12 (emphasis in original). Most recently, in *Cybersource Corp. v. Retail Decisions, Inc.,* No. 04-CV-03268, slip op. (Fed. Cir. Aug. 16, 2011), the Federal Circuit affirmed the district court's order invalidating a patent directed to a "method and system for detecting fraud in a credit card transaction between [a] consumer and a merchant over the Internet." *Id.* at 2. In holding that the claims failed to satisfy the machine-or-transformation test, the Federal Circuit was "not persuaded by the [patentee's] argument that the claimed method is tied to a particular machine because it 'would not be necessary or possible without the Internet.'" *Id.* at 9. Further, the Court invalidated a claim that specifically recited "a computer readable medium" containing instructions for carrying out the claimed method. *Id.* at 14.

[15] Paper was a machine-readable medium by 2000. *See, e.g.,* Sherringham Decl., Ex. 11, U.S. Patent No. 5,381,489, entitled "Optical Character Recognition Method and Apparatus," issued January 10, 1995. By comparison, claims 2 and 3 of the '309 patent, which are not asserted against Twitter, specifically require publication of profiles "on a network of computers." *See* Sherringham Decl. Ex. 1 at 6:42-48.

practiced without using computers at all.

Even if computers are used in the claimed method, however, none of the steps is tied to any *particular* machine or apparatus. Indeed, when Twitter asked VS Technologies in discovery whether any step in the asserted claims was tied to a particular machine or apparatus, VS Technologies was unable to identify any such step, or any such machine or apparatus. Twitter's Interrogatory No. 4 posed the following question:

> If you contend that any step of the method claimed in any of the claims in the '309 patent is tied to a particular machine or apparatus, or that it transforms a particular article into a different state or thing, please set forth each such step of the claimed method and the machine, apparatus, or transformation that it involves.

Sherringham Decl. Ex. 2 (Interrogatories). Twitter served this Interrogatory to determine how VS Technologies could contend that the '309 patent remains valid after *Bilski*. VS Technologies' response, however, consisted of nothing but boilerplate objections and a general reference to VS Technologies' *infringement* contentions, which have nothing to do with whether the claimed method is eligible for a patent under § 101. *See* Sherringham Decl. Exs. 3 (Resps. to Interrogs.) at 3 and 4 (Obj. to Interrogs.) at 5. Thus, the '309 patent's failure to satisfy the machine-or-transformation test is undisputed, and summary judgment should be granted on that basis alone.

Moreover, even leaving aside VS Technologies' failure to contest this issue in its interrogatory responses, VS Technologies could not identify any basis for validity under *Bilski*, because the sole tangible thing even mentioned in the claims is "a machine readable media," which the specification states could be any number of general-purpose storage media, such as a "diskette, compact-disk, etc." Sherringham Decl. Ex. 1 at 5:17-18. The patent discloses no specialized programming or structures that might be required to practice the claimed method. To the contrary, to the extent it even mentions programming or tangible objects, it generally alludes to "appropriate software," and suggests that any machine-readable medium will suffice. *Id.* at 5:14-23. At the very most, therefore, the claims recite the use of general-purpose computer

14

equipment that may have "been programmed in some unspecified manner." *See DealerTrack*, 657 F. Supp. 2d at 1156. Under the authorities cited above, that is insufficient to tie the method to any *particular* machine or apparatus.

Moreover, even if the "machine readable media" recited in the asserted claims were a particular machine or apparatus—which it is not—the claims would still fail the "machine" prong of the test, because the recitation of machine-readable media does not "impose meaningful limits on the [claims'] scope[.]" *In re Bilski*, 545 F.3d at 961-62. The alleged invention of the '309 patent is to create a "virtual community of famous people," where profiles may be updated and community members may interact with each other or with others. The use of computers unquestionably facilitates the method, dramatically improving its potency and efficiency, but that is merely insignificant, post-solution activity, since the heart of the method is to create something abstract (a "virtual community of famous people"). *See, e.g., Ultramercial*, 2010 U.S. Dist. LEXIS 93453  at 14 (holding that the need for computers did not impose meaningful limits on claims directed to distributing copyrighted material over the Internet). Thus, the asserted claims of the '309 patent fail the "machine" prong of the test for this independent reason as well.

Thus, VS Technologies has failed to identify any way in which the '309 patent claims are tied to a particular machine or apparatus, making this issue undisputed, and for the reasons stated above, it could not do so if it tried. The Court should therefore find that the asserted claims fail the machine-or-transformation test, and grant summary judgment in favor of Twitter.

### 2.     The '309 patent claims an unpatentable abstract idea

The '309 patent's failure to satisfy the machine-or-transformation test alone warrants summary judgment of invalidity. *See Bilski*, 130 S.Ct. at 3235 (Stevens, J., joined by three other Justices, concurring, ) ("Few, if any, processes cannot effectively be evaluated using [the machine-or-transformation test].") and 3259 (Breyer, J., joined by Justice Scalia, concurring) ("[I]n reemphasizing that the 'machine-or-transformation' test is not necessarily the *sole* test of patentability, the Court intends neither to de-emphasize the test's usefulness nor to suggest that many patentable processes lie beyond its reach.") (emphasis in original). As noted, since *Bilski*, no court has upheld the validity of any patent that fails the test. Nevertheless, here, the '309

patent is invalid under § 101 for the additional reason that it claims an abstract idea consisting of mental processes.

In *Cybersource*, the Federal Circuit made clear that it "refused to find processes patentable when they merely claimed a mental process standing alone and untied to another category of statutory matter, even when a practical application was claimed." *Cybersource,* slip op. at 11. Thus, the Federal Circuit held that a patent directed to a method and system for detecting fraud in credit-card transactions over the Internet claimed an unpatentable abstract idea, notwithstanding the patentee's assertion that the invention "would not be necessary or possible without the Internet." *Id.* at 9. Similarly, in *Bancorp*, the court held that the patent at issue claimed an unpatentable abstract idea because, "[r]ather than improving the functioning of computers, . . . the claimed invention uses computers to improve the administration of separate-account life insurance policies." *Bancorp*, 771 F. Supp. 2d at 1067. And in *Ultramercial*, the court held that a patent directed to distributing copyrighted material over the Internet claimed an unpatentable abstract idea because "[a]t the core of the . . . patent is the basic idea that one can use advertisement as an exchange or currency." *Ultramercial*, 2010 U.S. Dist. LEXIS 93453 at *17.

The '309 patent is also directed to an unpatentable abstract idea: "an interactive virtual community of famous people." It recites broad and abstract steps, including selecting fields of endeavor, identifying and selecting one or more members of those fields, obtaining biographical information about the selected members, creating personal profiles, publishing those profiles on a machine-readable medium, and allowing the profiled individuals to interact with their profiles, each other, and members of the public. *See* Sherringham Decl. Ex. 1 at 6:25-7:6. Like the patent in *Bancorp*, the '309 patent may be implemented using computers, but it does not "improve[e] the functioning of computers"; rather, it uses computers to improve collections of well-known people's biographies, such as the familiar "Who's Who" references. *See Bancorp*, 771 F. Supp. 2d at 1067. And like the patent in *Cybersource*, all of its steps could in principle be performed in someone's mind and with a pen and paper (although doing so would certainly be slower and less efficient than using a computer). *See Cybersource*, slip op. at 15 ("[T]he basic character of a

process claim drawn to an abstract idea is not changed by claiming only its performance by computers[.]"). Thus, the '309 patent claims nothing more than an abstract idea that—like many, many ideas—is advantageously implemented using computers. That is not patentable under § 101.

Accordingly, the '309 patent, which was conceived, drafted, and issued under the old *State Street* standard, falls far short of the requirements for patentability under *Bilski*. Its subject matter is ineligible for a patent under § 101 because it fails the machine-or-transformation test *and* because it is an unpatentable abstract idea. The Court should therefore hold that the asserted claims of the '309 patent are invalid, and grant summary judgment in favor of Twitter.

**B.      The '309 patent is anticipated and obvious as a matter of law**

In addition to claiming subject matter that is not patentable, the '309 patent is invalid under 35 U.S.C. §§ 102 and 103 because the method it claims was already known, and was obvious as a matter of law.

**1.      Prior-art computerized "Who's Who" services anticipate all of the asserted claims**

A claim is anticipated if a single prior-art reference disclosed, expressly or inherently, all of the claim's elements. *Finnigan Corp. v. U.S. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999). Here, each of the computerized "Who's Who" services anticipated the asserted claims of the '309 patent, because they practiced every step of those claims. *See* Sherringham Decl. Exs. 6-8.

The PTO was unaware of computerized "Who's Who" services when it awarded the '309 patent, but had it been aware of them, it certainly would have rejected the patent. Those services published biographies of selected individuals in various fields of endeavor (as "Who's Who" services had done for over 100 years), and used the Internet and computer technology to allow frequent updating and to facilitate interaction among profiled people and between them and the general public. *See* Sherringham Decl. Exs. 6-8.

Indeed, VS Technologies' own expert witness, Dr. Mark Joseph, could identify only three claim elements among all seven of the asserted claims that he contends the computerized "Who's

Who" directories did not disclose, and in all three cases, he is wrong as a matter of law.  First, he contends they did not disclose element (g) of Claim 1, which provides that users are allowed to "interact with the profile."  *See id.* at Ex. 9 (Joseph Report).  Specifically, Dr. Joseph argues that members profiled by the computerized "Who's Who" services could not update biographical data in "real time."  *Id.*  This opinion ignores two critical facts.  First, as set forth in Twitter's Claim Construction brief (ECF no. 51), the '309 patent does not require interaction "in real time"—and if it did, it would be invalid for lack of enablement on that ground alone, since Mr. Agarwal admits that the '309 patent does not enable "real time" interaction with profiles published on CD-ROM.  *See* Sherringham Decl. Ex. 5 at 66:6-20.  And second, even if real-time interaction with profiles were required, the prior-art computerized "Who's Who" services *did* allow people to interact with their profiles in real time.  *See, e.g.,* Sherringham Decl. Ex. 8 (noting that people profiled in Who's Who Online could enhance their profiles with "supplementary sections *generated from data entered into online forms*," and suggesting information to add that is strikingly similar to the items listed in Tables 1-3 of the '309 patent) (emphasis added).

Next, Dr. Joseph contends that the computerized Who's Who services did not allow profiled people to interact with each other or with people who were not profiled, as described in dependent claims 9 and 10.  *See* Sherringham Decl. Ex. 9.  But he simply ignores the communication means that those services offered.  *See* Sherringham Decl. Ex. 7 (showing how, when a Leadership Directories subscriber presses the hyperlinked email address in Senator Tom Daschle's profile, Leadership Directories generates an email message addressed to Senator Daschle) and Ex. 8 (describing email and other telecommunications services offered to people profiled in "Who's Who" registries and other selected people of achievement, designed to "facilitate global collaboration" in "a variety of fields, including science, education, the arts, business, ministry, government, etc.").  Indeed, Dr. Joseph cannot deny that these services allowed the type of interaction claimed in the '309 patent, because VS Technologies has admitted that they did.  Testifying as a corporate representative, Mr. Agarwal admitted in deposition that publishing people's email addresses constitutes allowing interaction as

18

contemplated by the '309 patent. *See id.* Ex. 5 (Agarwal depo., excerpts) at 235:8-23. Thus, VS Technologies and its expert cannot now dispute this point.

The PTO issued the '309 patent with no knowledge whatsoever of the relevant prior art. Once that prior art is considered, it is apparent the '309 patent claims nothing new, and is invalid as anticipated.[16]

### 2.     Under *KSR* and the cases applying it, the asserted claims were obvious as a matter of law

Even if the method of the '309 patent had not been practiced in the prior art (which it was), Section 103 of the Patent Act forbids issuing a patent on that method if it would have been obvious to a person of ordinary skill in the art when Mr. Agarwal invented it. 35 U.S.C. § 103(a). In *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398 (2007)—which, like *Bilski*, was decided after the PTO awarded the '309 patent—the Supreme Court instructed courts to employ a flexible approach when deciding obviousness, noting that "[a] person of ordinary skill is . . . a person of ordinary creativity, not an automaton." *Id.* at 420-421. Under *KSR*, "when a patent simply arranges old elements with each performing the same function it had been known to perform, and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 417 (internal quotation marks omitted). Thus, to determine whether an invention is obvious, "a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions." *Id.*

Since *KSR*, the Federal Circuit has applied these rules with particular force when—as is the case with the '309 patent—the "invention" consists of nothing more than adapting existing processes to incorporate computers or the Internet. *See, e.g., Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008). In *Muniauction*, the patent was directed to a method for holding municipal-bond auctions over the Internet using a web browser. *Id.* at 1321-1322. The jury found the patent valid and infringed, and awarded substantial damages to the plaintiff. *Id.* at 1323. But the Federal Circuit reversed. It observed that, by 1998, "the use of web browsers was

---

[16] If for some reason any one of the computerized "Who's Who" services does not anticipate the asserted claims of the '309 patent, then the combination of those prior-art references renders the claims obvious.

well known," and incorporating web browsers into prior-art auction processes "represents a combination of two well known prior art elements to a person of ordinary skill in the art." *Id.* at 1326.  Further, the claimed benefits of using the Internet—which consisted of "communicating and displaying" information—were well known to persons of ordinary skill. *Id.* at 1327.  Thus, the "invention" amounted to implementing a process over the Internet to achieve known benefits of the Internet, and was therefore obvious as a matter of law. *Id.*

Similarly, in *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157 (Fed. Cir. 2007), the Federal Circuit affirmed a judgment of obviousness invalidating a patent that "[a]ppl[ied] modern electronics to older mechanical devices[.]" *Id.* at 1161.  The patent claimed an electronic system that helped children learn to read phonetically by allowing them to press buttons and hear how letters are pronounced. *See id.* at 1158.  In finding the invention obvious, the Federal Circuit explained that it was obvious to persons of skill in the art to adapt prior-art devices by "using modern electronic components in order to gain the commonly understood benefits of such adaptation, such as decreased size, increased reliability, simplified operation, and reduced cost." *Id.* at 1162.  Because that is all the patent in *Leapfrog* claimed, it was invalid under § 103.

The '309 patent is invalid as a matter of law under *KSR*, *Muniauction*, and *Leapfrog*. Those cases instruct that, by at least the late 1990s—several years before Mr. Agarwal applied for the '309 patent—it was obvious as a matter of law to adapt existing processes by incorporating computers or the Internet to achieve commonly understood benefits of doing so. Indeed, the PTO now instructs examiners considering patent applications that, "[b]ecause Internet and Web browser technologies had become commonplace for communicating and displaying information, it would have been obvious to adapt existing technologies to incorporate them for those functions." *See* PTO Examination Guidelines Update:  Developments in the Obviousness Inquiry After KSR v. Teleflex, 75 Fed. Reg. 53643, 53650 (Sept. 1, 2010).

This rule—which was not yet in place when the PTO issued the '309 patent, because *KSR*, *Muniauction*, and *Leapfrog* had not yet been decided—dictates that the '309 is invalid. Like in *Muniauction* and *Leapfrog*, the '309 patent's "invention" consists of adapting existing processes using modern technology to achieve known benefits of doing so.  Specifically, it is

directed to adapting compilations of distinguished people's biographical information (such as old hardbound "Who's Who" references) by publishing them, for example, over the Internet, allowing the profiled people to interact with their profiles and with other people.  The benefits it claims to achieve over the prior art are more frequent updating and interactivity.  *See* Sherringham Decl. Ex. 1 at 3:23-28 ("The virtual community of the present invention is unique in that the members of the virtual community can update, modify or revise their individual profile, and interact with other members of the virtual community, as well as the non-members of the virtual community.")  In other words, the claimed benefits consist of improved communication and display of information.  Under *KSR*, *Muniauction*, and *Leapfrog*, that idea was obvious as a matter of law, and is not worthy of a patent.

Indeed, Mr. Agarwal *could not* have conceived of anything other than "the predictable use of prior art elements according to their established functions," *see KSR*, 550 U.S. at 417, because, even to this day, he has never practiced his claimed invention.  *See* Sherringham Decl. Ex. 5 (Agarwal depo. excerpts) at 83:15-16.  Never having tried the method he patented, he described nothing but steps that were already known in the art, to achieve results that he already knew they would achieve.  Mr. Agarwal thus admits—as he must do—that the combination of steps that he claimed in the '309 patent did not achieve any unexpected results.  *Id.* at 83:12-14. That admission is fatal to his case, because it demonstrates that his claimed invention was obvious as a matter of law.  *See KSR*, 550 U.S. at 417 ("[W]hen a patent simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious.") (internal quotations and citation omitted).

### 3.   If the '309 patent claimed anything different from the prior art—which it does not—it would be invalid for lack of enablement

If the '309 patent were not anticipated and obvious, it would be invalid for a different reason:  lack of enablement under 35 U.S.C. § 112.  A patent is invalid for lack of enablement if, after reading the patent specification, a person of ordinary skill in the art could not practice the full scope of the claimed invention.  *See Alza Corp. v. Andrx Pharm., LLC*, 603 F.3d 935, 940

(Fed. Cir. 2010). The '309 patent provides no technical disclosure whatsoever about how to practice the invention it claims. Instead, it merely assumes that persons of ordinary skill in the art know how to perform every step, including the alleged points of novelty (allowing interaction with the profile, and interaction among profiled people and between them and others). The patent says repeatedly that such interactivity is "allowed," but it does not say the first thing about how the interactivity is to be accomplished. *See, e.g.,* Sherringham Decl. Ex. 1 at 2:12-20; 5:29-34; 6:10-14.

It is understandable why Mr. Agarwal assumed that no more explanation was needed. These steps merely claim entirely conventional uses of computers and the Internet to achieve their predictable results—making the claims obvious under *KSR*. But if that were not the case, the patent would be invalid for lack of enablement, because it does not teach a person of skill in the art how to do anything that he or she did not know how to do already. *See Muniauction*, 532 F.3d at 1327 fn 3 (suggesting that, if the patentee were correct that the patent's method of communicating and displaying information over the Internet was previously unknown, the patent would be invalid for lack of enablement instead of obviousness).

As set forth above, the '309 patent is invalid for anticipation and obviousness under 35 U.S.C. §§ 102 and 103. Given the patent's total absence of technical disclosure, however, if any of part of the method were more than the predictable use of prior art elements according to their established functions, then the patent would instead be invalid for lack of enablement under 35 U.S.C. § 112.

## C.   Twitter does not infringe the '309 patent

Even if the '309 patent were valid, Twitter does not infringe it as a matter of law. Summary judgment of non-infringement is appropriate when the patentee cannot carry its burden of proving that the accused system practices every element of the asserted claim. *Playtex Prods. v. P&G*, 400 F.3d 901, 905-06 (Fed. Cir. 2005); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). That is the case here because, among other things, Twitter does not practice the patent's steps of "obtaining biographical information about the selected

member," and "creat[ing] the personal profile of the selected member[.]"[17]

### 1. Twitter does not practice the step of "obtaining biographical information about [a] selected member"

The '309 patent claims an exclusive community comprised of members selected based on their celebrity or success in their chosen field.  Twitter's system operates in a fundamentally different way.  Anyone in the world may create a Twitter account, at which time they create a profile.  And merely featuring certain *already existing* accounts as ones that other Twitter users may wish to follow does not, and cannot, infringe the '309 patent.

In particular, Twitter never "obtains biographical information" about any "selected member" of a field of endeavor.  Instead, in the accused "Interests" feature, Twitter merely features certain existing Twitter account-holders who are already active Twitter users, and who had already created Twitter profiles.  Featuring existing content that may be of particular interest to users is an extremely basic concept; it is not what the '309 patent describes, nor is it anything that VS Technologies could claim to own.

Realizing that its case against Twitter suffers from this fatal flaw, VS Technologies attempts to salvage its case by contorting the term "obtaining biographical information" to include *transferring* information that Twitter *already possess* from one portion of computer memory to another in order to display a user's profile.  VS Technologies has inserted the word "retrieving" in its proposed construction of "obtaining," in the hope of stretching the term to cover this activity.  As set forth in Twitter's Claim Construction Brief (ECF no. 51), however, VS Technologies' attempt to construe "obtaining" information to mean manipulating information that Twitter *already* possesses defies that word's ordinary meaning and the '309 patent's teachings.

In particular, the '309 patent describes only one method of "obtaining" biographical information:  requesting that information *from the person who is being profiled.  See, e.g.*, Sherringham Decl. Ex. 1 at 4:17-20 ("In particular, the member's biographical profile *will* be created by *the selected member's responses* to the questions directed to the type of subject

---

[17] This motion highlights only some of the reasons that Twitter does not infringe.  If necessary,

matter shown below in Tables 1-3." (emphasis added).  Moreover, manipulating information within computer memory to display a profile falls, if anywhere, within an entirely different step of the patent, that of "publishing."  *See id.* at 5:17-23.  Because Twitter's system is designed in a different way and for a different purpose than the method claimed in the '309 patent, Twitter never practices the step of "obtaining biographical information about [a] selected member." Thus, Twitter does not infringe the '309 patent.

### 2.    Twitter does not practice the step of "creat[ing] a personal profile of [a] selected member"

Likewise, Twitter does not "create a personal profile" of any "selected member."  As noted above, the '309 patent specification describes a sequential process where, first, biographical information is obtained; then, that information is processed to create a profile; and finally, that profile may be stored and published, as well as updated, etc.  *See, e.g.,* Sherringham Decl. Ex. 1 at 4:31- 5:42 and Figs. 1 and 2.  For example, the patent explains that a profile is created, then stored and made available.  *See, e.g., id.* at 5:17-22 ("For example, the profile *so created* may be made accessible via the Internet") (emphasis added); *see also* Claim 1, element (f).  Thus, the patent clearly distinguishes *creating* a profile (which happens once) from *publishing* the profile, e.g, by making it accessible via the Internet.

Twitter's construction of "create"—which clarifies that "creating a profile" means producing the profile for the first time and does not include *displaying* a profile that the accused infringer has previously created and stored—accords with the ordinary meaning of "create" and with the patent's teachings.  VS Technologies' definition, however, does not.  VS Technologies contends that "creating a profile" occurs repeatedly, every time the accused infringer accesses the profile in computer memory and displays it to a user.  As set forth more fully in Twitter's Claim Construction Brief (ECF no. 51), VS Technologies' litigation-inspired construction is erroneous, while Twitter's construction is faithful to the term's ordinary meaning and the patent's disclosures.  Accordingly, Twitter does not infringe the '309 patent for this independent

---

Twitter will present additional grounds for non-infringement at trial.

reason as well.[18]

## IV.   CONCLUSION

The '309 patent was drafted and issued under standards that have now been overruled.  It is invalid for failure to claim patentable subject matter under *Bilski*, and anticipated and obvious as a matter of law under *KSR*.  Moreover, Twitter does not infringe the patent because its system operates in a fundamentally different way.  Accordingly, Twitter respectfully requests that the Court grant summary judgment in its favor.

/ /

/ /

/ /

/ /

---

[18] In its Claim Construction Brief, VS Technologies asserts that the steps recited in the '309 patent need not be performed in order.  *See* VS Technologies' Claim Construction Br. at 6-7, 11-12, 15.  In fact, the only plausible reading of the patent is that the steps of Claim 1 must be performed in the order recited, since the output of each step is the input for the next step, and the specification describes the steps as being performed in order.  *See Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.*, 152 F.3d 1368, 1375-76 (Fed.Cir.1998) (holding that the steps of a method claim had to be performed in their written order because each subsequent step referenced to something logically indicating the prior step had been performed).  Nevertheless, the Court need not decide that issue to conclude that Twitter does not infringe.  Simply construing the words "obtaining" or "create" in accordance with their ordinary meanings and their usage in the '309 patent will result in non-infringement.

Dated: September 6, 2011                    Respectfully submitted,

                                           TWITTER, INC.


                                           By:   /s/ Robert A. Angle
                                                    Of Counsel

                                           Robert A. Angle, VSB #37691
                                           Dabney J. Carr, IV, VSB #28679
                                           TROUTMAN SANDERS LLP
                                           Troutman Sanders Building
                                           1001 Haxall Point
                                           Richmond, Virginia  23219
                                           Telephone:  804-697-1200
                                           Facsimile:  804-697-1339
                                           Email:  robert.angle@troutmansanders.com
                                           Email:  dabney.carr@troutmansanders.com

                                           Robert A. Van Nest (*admitted pro hac vice*)
                                           David J. Silbert (*admitted pro hac vice*)
                                           Eugene M. Paige *(admitted pro hac vice)*
                                           Tia A. Sherringham *(admitted pro hac vice)*
                                           KEKER & VAN NEST LLP
                                           710 Sansome Street
                                           San Francisco, CA  94111-1704
                                           Telephone:  (415) 391-5400
                                           Facsimile:  (415) 397-7188

                                           Attorneys for Defendant Twitter, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of September, 2011, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send a notification of such electronic filing (NEF) to the following:

Amy Sanborn Owen
aowen@cochranowen.com
Ben Selan
bselan@cochranowen.com
Cochran & Owen LLC
8000 Towers Crescent Drive, Suite 160
Vienna, Virginia 22182

Jonathan T. Suder
Todd I. Blumenfeld
FRIEDMAN, SUDER & COOKE, P.C.
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
Ph: (817) 334-0400
Fx: (817) 334-0401
jts@fsclaw.com
blumenfeld@fsclaw.com

Edward W. Goldstein
Corby R. Vowell
GOLDSTEIN & VOWELL L.L.P
1177 West Loop South, Suite 400
Houston, Texas 77027
Ph: (713) 877-1515
Fx: (713) 877-1737 (fax)
egoldstein@gviplaw.com
cvowell@gviplaw.com

Counsel for Plaintiff VS Technologies, LLC


_____/s/   Robert A. Angle_____
Robert A. Angle, VSB #37691
robert.angle@troutmansanders.com
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia  23218-1122
Telephone:  804-697-1200
Facsimile:  804-697-1339

Attorney for Twitter, Inc.