IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

VS TECHNOLOGIES, LLC

    **Plaintiff,**

v.                                        Civil Action No. 2:11cv43

TWITTER, INC.,

    **Defendant.**

## ORDER AND OPINION

On September 15, 2011, the Court conducted a <u>Markman</u> hearing for the purpose of construing the following terms in Plaintiff's patent at issue: "field of endeavor," "obtaining biographical information," "create a personal profile," and "interact with the profile." After careful consideration of the parties' briefs and oral argument, the Court ruled from the bench and hereby issues this Order and Opinion detailing the Court's claim construction.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The United States Patent and Trademark Office issued Patent No. 6,408,309 (the "'309 patent"), entitled "Method and System for Creating an Interactive Virtual Community of Famous People," on June 18, 2002. The named inventor, Dinesh Agarwal, is the prosecuting attorney, founding member, and Manager of VS Technologies, Inc.

The abstract of the '309 patent describes the invention as follows:

---

[1] This section does not constitute the entire factual background and procedural history. Rather, it details only those aspects of the facts and procedural history relevant to the issues presently before the Court.

> A method and system for creating an interactive virtual community of famous people, or those people who wish to attain the status of a famous person, in a field of endeavor, such as arts, accounting, animal rights, business, education, engineering, entertainment, financing, government affairs, human rights, legal, medical, philanthropy, politics, religion, research, science, sports, etc. The virtual community of the present invention is unique in that the members of the virtual community can update, modify or revise their individual profile, and interact with other members of the virtual community, as well as the non-members of the virtual community.

According to Plaintiff VS Technologies, LLC ("VS Technologies" or "Plaintiff"), the system was "unlike anything available at that time . . . . In early 2000 when the application was filed, books, encyclopedias and the Internet allowed for access to general information, but techniques available to learn about, communicate directly with, or interact with others suffered from serious deficiencies." Doc. 52 at 2.

On January 18, 2011, Plaintiff filed its complaint alleging infringement of United States Patent No. 6,408,309 (the "'309 patent"). Doc. 1. Plaintiff served its patent infringement complaint on Defendant Twitter, Inc. ("Defendant" or "Twitter") on February 8, 2011. On March 17, 2011, Defendant filed its answer and affirmative defenses. Doc. 15.

On May 2, 2011, the Court ordered that the parties submit their joint claim construction statement on August 8, 2011, and that, if the Court determines that a <u>Markman</u> hearing is necessary, such a hearing would be held on September 15, 2011. Doc. 31. Pursuant to the Court's order, Plaintiff and Defendant filed a joint claim construction statement on August 8, 2011. Doc. 47. Upon consideration of the joint claim construction statement, the Court determined that a <u>Markman</u> hearing was desirable. In accordance with the briefing schedule mandated by the court (<u>See</u> Doc. 49), Plaintiff and Defendant filed their respective claim construction briefs on August 24, 2011. Docs. 51–52. The Court conducted a <u>Markman</u> hearing on September 15, 2011.

## II. LEGAL PRINCIPLES OF CLAIM CONSTRUCTION

The purpose of a Markman hearing is to assist the Court in construing the meaning of the patent(s) at issue. Markman v. Westview Instruments, Inc., 517 U.S. 370, 371 (1996); Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). Patents consist of "claims," and the construction of those claims "is a question of law, to be determined by the court." Markman, 517 U.S. at 371; Markman, 52 F.3d at 970–71. A court need only construe, however, claims "that are in controversy, and only to the extent necessary to resolve the controversy." Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999) (citations omitted). To be clear, "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy." NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1311 (Fed. Cir. 2005) (quoting U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997)).

Claim construction begins with the words of the claims. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("First, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention."). Words in a claim are generally given their ordinary meaning as understood by a person of ordinary skill in the art. Id. This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly

understood words." Id. at 1314. Often, however, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." Id. Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claims language to mean. Id.

Further, the claims themselves can provide substantial guidance as to the meaning of particular claim terms. First, "the context in which a term is used in the asserted claim can be highly instructive." Id. In addition, other claims of the patent in question, both asserted and unasserted, can also be useful because claim terms are "normally used consistently throughout the patent," and therefore, "can often illuminate the meaning of the same term in other claims." Id.

The claims should not be read alone, however, but rather should be considered within the context of the specification of which they are a part. Markman, 52 F.3d at 978. As the Federal Circuit stated in Vitronics and restated in Phillips, "the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" Phillips, 415 F.3d at 1315 (quoting Vitronics, 90 F.3d at 1582). In addition to consulting the specification, a court may also consider the patent's prosecution history, if in evidence, because it provides information regarding how the United States Patent and Trademark Office and the inventor understood the patent. See id. at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.").

In sum, these elements of the patent itself—the claims, the specification, and its prosecution history—constitute intrinsic evidence of claim construction. In addition to such intrinsic evidence, a court may also consider extrinsic evidence to determine the meaning of disputed claims. Id. Such extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Id. (quoting Markman, 52 F.3d at 980).

Such extrinsic evidence, however, is generally held as less reliable than the intrinsic evidence, and "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Id. at 1319. With respect to expert evidence, for example, "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court . . . [and] a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'" Id. at 1318 (quoting Key Pharms. v. Hercon Labs. Corp., 161 F.3d 709, 716 (Fed. Cir. 1998)).

With respect to general usage dictionaries, the Federal Circuit noted that "[d]ictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words and have been used . . . in claim interpretation," further noting that "[a] dictionary definition has the value of being an unbiased source 'accessible to the public in advance of litigation.'" Id. at 1322 (quoting Vitronics, 90 F.3d at 1585). However, the Federal Circuit cautions that "'a general-usage dictionary cannot overcome art-specific evidence of the meaning' of a claim term." Id. (quoting Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n, 366 F.3d 1311, 1321 (Fed. Cir. 2004)). Furthermore, "the use of the dictionary may extend patent protection beyond what should properly be afforded by the inventor's patent," and

thus, fails to "guarantee that a term is used in the same way in a treatise as it would be by the patentee." Id. Indeed, inasmuch as "different dictionaries may contain somewhat different sets of definitions for the same words[,] a claim should not rise or fall based upon the preferences of a particular dictionary editor, . . . uninformed by the specification, to rely on one dictionary rather than another." Id.

Therefore, with the aforementioned principles in mind, the Court will now examine the '309 patent and the disputed claim terms.

### III. THE '309 PATENT

All disputed claim terms are contained in Claim 1 of the '309 patent. Claim 1 is reproduced below, and the four disputed terms are underlined where they appear within the claim.

Claim 1:

A method of creating an interactive virtual community of people in a field of endeavor, comprising the steps of:

    (a) selecting a <u>field of endeavor</u>;

    (b) compiling a list of members in the selected field;

    (c) selecting a member from the compiled list of members based on a preselected factor;

    (d) <u>obtaining biographical information</u> about the selected member;

    (e) processing the biographical information in a preselected format to <u>create a personal profile</u> of the selected member;

    (f) publishing the profile of the selected member on a machine readable media; and

    (g) allowing the selected member to <u>interact with the profile</u>.

## IV. CLAIM CONSTRUCTION OF THE '309 PATENT

As explained in their respective Claim Construction Briefs, the parties are in agreement that all of the claims and their terms should be given their plain and ordinary meaning to one of ordinary skill in the art as of the filing of the '309 patent. The parties only disagree concerning the construction of the following terms: "field of endeavor," "obtaining biographical information," "create a personal profile," and "interact with the profile." With respect to these disputed terms, the parties' stances and the Court's claim construction are detailed below.

### A. "Field of Endeavor"

Plaintiff proposes that "field of endeavor" be construed as "occupation or other area of interest." Defendant, on the other hand, proposes that the term be construed as "a pursuit to which people devote time, energy, or skill."

Plaintiff asserts that specific examples of "fields of endeavor" provided in the patent cover a wide spectrum of both occupations and interests, demonstrating that "field of endeavor" meant to include areas of interest. Plaintiff points to the inclusion of "interests" in the '309 patent among the unique personal attributes to be included within a person's biographical information to support its construction. See '309 Patent fig. 4 (filed Feb. 23, 2000).

For its part, Defendant contends that Plaintiff's proposed construction of "field of endeavor" is too broad. According to Defendant, "endeavor" connotes something more exact than an area of interest. Specifically, Defendant requests that the Court construe the term as "a pursuit to which people devote time, energy, or skill." In the Joint Statement on Claim Construction, Defendant provides the following example to support its definition: "Someone may be interested in sports, for example, but that does not make him or her a member of any

7

field of endeavor involving sports. A competitive marathon runner, on the other hand, would be a member of such a field of endeavor." Doc. 47 at 2.

This Court agrees with Defendant that the term "endeavor" encompasses something more than an interest in a specified area. However, the Court is not convinced that either party's proposed definition adequately defines the term. Plaintiff's proffered definition must be rejected because "endeavor" implies more than simply an area of interest. Similarly, Defendant's proffered definition must be rejected because it places an unnecessary limitation upon the term, confining "endeavor" to a pursuit characterized by "time, energy, or skill."

At the hearing, the Court thus proferred an alternative definition. Defendant did not object to the Court's definition as modified, but Plaintiff maintained its position that "endeavor" should not be limited to exclude "an area of interest." The Court **FINDS**, however, that a construction that allows for the expression of "endeavor" as encompassing something to which a person devotes a degree of effort, and not merely an interest in a specified area, is appropriate. The Court therefore **ORDERS** that the proper construction of the term **"field of endeavor"** is an **"occupation or pursuit to which a person devotes a degree of effort."** This definition should assist the finder of fact without unduly limiting the meaning of the term.

### B. "Obtaining Biographical Information"

Plaintiff proposes that "obtaining biographical information" be construed as "acquiring or retrieving information about or relating to a person." Defendant, on the other hand, proposes that the term be construed as "acquiring biographical information," with the limitation that "obtaining biographical information does not include transferring information already possessed by the accused infringer from one portion of computer memory to another."

Plaintiff asserts that "[t]he ordinary meaning of 'obtaining' places no limitation on where, when, or how something is 'obtained.'" Doc. 52 at 11. Plaintiff argues that "obtaining biographic information" includes at least the following: "(1) when initial biographical information is obtained, (2) when new biographical information becomes available, and (3) when biographical information and profiles are sought to be interacted with within the virtual community." Id. at 12. Thus, Plaintiff contends that "obtaining" includes the transfer of biographical information from one portion of computer memory to another.

Defendant, on the other hand, requests that the Court adopt a narrower construction than that proposed by Plaintiff. For its part, Defendant argues that the '309 patent only describes "obtaining biographical information" as collecting information from the person being profiled. In support of its argument, Defendant highlights the following descriptions in the patent:

1. Once the list is completed, one or more members are selected (16) and then contacted to obtain their biographical information. '309 Patent at 4:5–7.

2. In particular, the member's biographical profile will be created by the selected member's responses to the questions directed to the type of subject matter shown below in Tables 1–3. Id. at 4:17–20.

3. By processing the information from the selected member (20) and using an appropriate software, a profile of the member would then be created[.] Id. at 5:14–16.

Defendant asserts that by including the word "retrieving" in its proposed construction, Plaintiff is attempting to cover the transfer of information from one portion of computer memory to another in order to display a user's profile. Under such a definition, "when Twitter performs the step of 'obtaining biographical information,' it is 'obtaining' information that it *already* possesses, and has already stored as part of someone's profile." Doc. 51 at 5. Thus, Defendant

9

contends that Plaintiff's use of the word "retrieving" does not fit within the ordinary meaning of "obtaining biographical information" and rather, is a "litigation-inspired definition." Id.

Defendant contends that the "most glaring error" in Plaintiff's proposed construction is that it ignores the two separate steps of "obtaining" information and then "publishing" that information as a profile. According to Defendant, the '309 patent specification describes "publishing" the profile as making the profile "available" or "accessible." Because Plaintiff includes the transfer of information that the accused infringer already possesses from one area of computer memory to another in its proposed construction, Defendant asserts that Plaintiff fails to distinguish the "obtaining" step from the separate "publishing" step. Thus, Defendant requests that this Court adopt its construction of "obtaining" as collecting information from the person being profiled, not transferring information already possessed from one portion of computer memory to another.

Defendant defines "obtaining" as "acquiring," while Plaintiff construes the term as "acquiring or retrieving." The Court **FINDS**, however, that "obtaining biographical information" does not require a further definition. Regardless of whether "obtaining" is defined to include the word "retrieving," Defendant's proffered definition must be rejected because it unnecessarily limits the term. This Court is of the opinion that "obtaining" cannot be confined to the mere acquisition of information from the selected member. Claim 1 specifically states that biographical information is obtained *about* the selected member. The fact that a person may already possess some information concerning an individual does not preclude the possibility that additional information may be obtained from another source. Thus, Defendant's proffered definition is inconsistent with the fact that obtaining information may mean securing information from multiple sources. Accordingly, this Court is of the opinion that any further definition of

10

"obtaining biographical information" is unnecessary. Plaintiff did not object to the Court's determination that "obtaining biographical information" does not require a further definition, as it would not provide any additional particularity or clarity to assist the finder of fact. The Court therefore **ORDERS** that the proper construction of the term is as written in the claim: **obtaining biographical information.**

### C. "Create a personal profile"

Plaintiff proposes that "creat[ing] a personal profile" be construed as "arranging biographical information in a certain format." Defendant, on the other hand, proposes that the term be construed as "producing a personal profile for the first time," with the limitation that "creating a personal profile does not include displaying a personal profile that the accused infringer has previously produced and stored in computer memory."

Plaintiff asserts that its proposed construction for "create a personal profile" should be read in light of the specification and invention's context: "the creation of a virtual community in which people are represented by their profiles which are created, displayed, and viewed on request of other virtual community members." Doc. 52 at 13–14. According to Plaintiff, Defendant's proposed construction ignores the invention's context and specifically, the recognition that "because of the ability to modify, update, and revise the biographical information in real time and interact with others through the use of profiles, a profile is virtually ever-changing and being re-created each time the information is changed." Id. at 15. Plaintiff argues that because its construction better aligns with the patent's description of the invention, Defendant's proposed limitation of the scope of this claim should be rejected.

Defendant, on the other hand, requests that the Court adopt a narrower construction than that proposed by Plaintiff. For its part, Defendant relies upon the following definition of

11

"create:" to bring into existence. Doc. 51 at 8. According to Defendant, the term is consistently used in the patent with its ordinary meaning, describing a "sequential process where, first, biographical information is obtained; then, that information is processed to *create* a profile; and finally, that profile may be stored and published via the Internet or other means, as well as updated, etc." Id. Defendant highlights the following language in the specification:

> By processing the information from the selected member . . . and using an appropriate software, a profile of the member would then be created . . . The profile would be made available in a machine readable media . . . For example, the profile so created may be made accessible via the Internet.

'309 Patent at 5:14–23. Defendant thus differentiates between "creating" a profile and "publishing" a profile.

Defendant defines "create" as producing a profile for the first time; however, "create" necessarily implies that what now exists did not exist prior to its inception. As such, the Court **FINDS** that "create a personal profile" does not require a further definition. Constructing a definition to specifically include "producing a profile for the first time" would only serve as an exercise in redundancy. Plaintiff did not object to the Court's determination that "create a personal profile" does not require a further definition, as it would not provide any additional particularity or clarity to assist the finder of fact. The Court therefore **ORDERS** that the proper construction of the term is as written in the claim: **create a personal profile.**

### D. "Interact with the profile"

Plaintiff proposes that "interact with the profile" be construed as "update, modify, or revise biographical information in a real time manner." Defendant, on the other hand, proposes that the term be construed as "update, modify, or revise the profile."

The dispute centers on whether or not the interaction with the profile is done "in a real time manner." According to Plaintiff, not only does the specification indicate that one can "update, modify, or revise biographical information in a real time manner," but also refers to the fact that one can update or modify his or her profile "as needed" or "as desired" in five (5) different places. See '309 Patent at 1:56–60; 2:17–20; 2:50–54; 3:3–6; 5:29–34. Plaintiff argues that within the context of an "interactive virtual community," where people instantaneously interact with one another, updating one's profile "clearly means the ability to do so in 'real time.'" Doc. 52 at 16. Plaintiff claims that references to "updat[ing], modify[ing] or revis[ing] the biographical information" have been qualified throughout the patent with the "real time manner" and "as needed" and "as desired" language. Because such language is used in the context of an interactive virtual community, Plaintiff asserts that its proposed construction should be adopted, as it "most naturally aligns with the patent's description of the invention." Id. at 18.

Defendant, on the other hand, asserts that the claims do not require interaction "in a real time manner." Defendant relies upon the fact that the specification mentions updating or modifying a profile at least eight (8) times but only mentions doing so "in a real time manner" once. See '309 Patent at Abstract; 1:53–60; 2:49–54; 3:3–6; 3:23–26; 5:27–42; fig. 2, step 26. Furthermore, Defendant emphasizes that the one reference to updating a profile in a "real time manner" relied upon by Plaintiff occurs in the "Field and Historical Background of the Invention" section rather than the section entitled "Detailed Description of the Invention." Because the specification omits reference to "real time" updating on at least seven (7) other occasions, Defendant asserts that this Court "must take care to avoid improperly importing

13

limitations into the claims based on descriptions of merely exemplary embodiments." Doc. 51 at 10.

Lastly, Defendant claims that VS Technologies' argument violates the doctrine of claim differentiation, which holds that "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005) (citing Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 910 (Fed. Cir. 2004)). Defendant contends that two other claims in the patent, Claims 2 and 3, are dependent claims that add certain limitations to suggest those limitations are not present in the independent claim, Claim 1.[1] According to Defendant, Claim 2 adds the limitation that the "publishing" step of Claim 1 is to occur "on a network of computers," while Claim 3 adds the limitation that the "publishing" step of Claim 2 is to occur "on a global computer information network." As such, Defendant claims that such additional limitations would be superfluous if Claim 1 already required publication over the Internet. Because of these additional limitations, Defendant asserts that Claim 1 cannot require that people be allowed to update their profiles in a "real time manner." As such, Defendant requests that this Court adopt Twitter's construction as faithful to the patent's teachings and the canons of claim construction.

Instead of attempting to define the term as it is used in the patent, both parties' proposed constructions are focused solely upon their respective views of what constitutes infringement of the '309 patent. The dispute centers on whether "interact[ing] with the profile" requires or merely permits use of the Internet to do so. Defendant suggests that interaction with the profile may be accomplished through means other than the Internet, while Plaintiff asserts that any

---

[1] Claims 2 and 3 are not asserted against Twitter.

14

interaction with the profile must occur in "real time." The Court **FINDS**, however, that any attempt to define the term at this stage of the proceedings would be premature. As demonstrated by the fact that the conflicting definitions focus on what constitutes infringement in the instant case, the construction of the term has a profound impact on the ultimate issue of infringement. This Court is of the opinion that there is insufficient information at this stage of the proceedings to enable it to define the term. Accordingly, the Court will reserve ruling upon the proper construction of "interact with the profile."

## V. CONCLUSION

For the reasons set forth above, the Court issues this Order and Opinion delineating the Court's claim construction of the following terms: "field of endeavor," "obtaining biographical information," "create a personal profile," and "interact with the profile."

The Clerk is **REQUESTED** to send a copy of this Order and Opinion to counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: September 23, 2011