

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

VS TECHNOLOGIES, LLC

       **Plaintiff,**

v.                                   **Civil Action No. 2:11cv43**

**TWITTER, INC.,**

       **Defendant.**

## ORDER AND OPINION

This matter is before the Court on Defendant Twitter Inc.'s ("Twitter" or "Defendant")

Motion for Summary Judgment, Doc. 55, and Plaintiff VS Technologies, Inc.'s ("VS

Technologies" or "Plaintiff") motion to strike evidence presented by Twitter in its reply

memorandum in support of its motion for summary judgment, Doc. 87. On September 30, 2011,

the Court conducted a hearing and ruled from the bench. The Court **DENIED** Twitter's Motion

for Summary Judgment in its entirety and **GRANTED** VS Technologies' Motion to Strike. This

Opinion and Order sets forth the reasons for the Court's ruling.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The United States Patent and Trademark Office issued Patent No. 6,408,309 (the "'309

patent"), entitled "Method and System for Creating an Interactive Virtual Community of Famous

People," on June 18, 2002. The named inventor, Dinesh Agarwal, is the prosecuting attorney,

founding member, and Manager of VS Technologies, Inc.

The abstract of the '309 patent describes the invention as follows:

---

[1] This section does not constitute the entire factual background and procedural history. Rather, it details only those aspects of the facts and procedural history relevant to the issues presently before the Court.

A method and system for creating an interactive virtual community of famous people, or those people who wish to attain the status of a famous person, in a field of endeavor, such as arts, accounting, animal rights, business, education, engineering, entertainment, financing, government affairs, human rights, legal, medical, philanthropy, politics, religion, research, science, sports, etc. The virtual community of the present invention is unique in that the members of the virtual community can update, modify or revise their individual profile, and interact with other members of the virtual community, as well as the non-members of the virtual community.

On January 18, 2011, Plaintiff filed its complaint alleging infringement of United States Patent No. 6,408,309 (the "'309 patent"). Doc. 1. Plaintiff served its patent infringement complaint on Defendant on February 8, 2011. On March 17, 2011, Defendant filed its answer and affirmative defenses. Doc. 15.

On May 2, 2011, the Court ordered that the parties submit their joint claim construction statement on August 8, 2011, and that, if the Court determines that a Markman hearing is necessary, such a hearing would be held on September 15, 2011. Doc. 31. Pursuant to the Court's order, Plaintiff and Defendant filed a joint claim construction statement on August 8, 2011. Doc. 47. Upon consideration of the joint claim construction statement, the Court determined that a Markman hearing was desirable. In accordance with the briefing schedule mandated by the court (See Doc. 49), Plaintiff and Defendant filed their respective claim construction briefs on August 24, 2011. Docs. 51–52. On September 15, 2011, the Court conducted a Markman hearing for the purpose of construing the claims in Plaintiff's patent at issue. After careful consideration of the parties' briefs and oral argument, the Court ruled from the bench and entered an order and opinion on September 23, 2011 detailing the claim constructions and reasons therewith. Doc. 86.

Defendant filed a motion for summary judgment on September 6, 2011 and memorandum in support thereof. Docs. 55–56. On September 19, 2011, Plaintiff filed a redacted

2

memorandum in opposition to the motion for summary judgment, Doc. 70, and a motion for leave to file its opposition to Twitter's motion for summary judgment and accompanying exhibits under seal, Doc. 71. Accordingly, Plaintiff's memorandum in opposition and accompanying exhibits were filed under seal on September 21, 2011. Docs. 74–79. After providing public notice of the motion to seal by posting an appropriate Notice on the public docket board, the Court ordered that Plaintiff's memorandum in opposition to the motion for summary judgment and accompanying exhibits be maintained under seal by the Clerk. Doc. 85. Defendant filed its reply on September 23, 2011. Doc. 83. The Court conducted a hearing on September 30, 2011.

A five-day jury trial in this case is scheduled to commence on October 24, 2011.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, the court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). The non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citing Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984)). Nevertheless, where the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991) (citing Matsushita Elec., 475

U.S. at 587, and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248−49 (1986)).

### III. MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON 35 U.S.C. § 101

### A. Legal Standard

Section 101 of the Patent Act delineates the scope of patentable subject matter:

"[w]hoever invents or discovers any new and useful process, machine, manufacture, or

composition of matter, or any new and useful improvement thereof, may obtain a patent therefor,

subject to the conditions and requirements [for patentability]." 35 U.S.C. § 101 (2008). Case

law has established three categories of subject matter outside the eligibility bounds of § 101:

laws of nature, physical phenomena, and abstract ideas. Ultramercial, LLC v. Hulu, LLC, No.

2010-1544, 2011 WL 4090761, at *3 (Fed. Cir. Sept. 15, 2011). As the Federal Circuit recently

noted, "[a]bstractness, however, has presented a different set of interpretive problems,

particularly for the § 101 'process' category." Id.

In order to deal with determining the subject matter eligibility of processes, the Federal

Circuit set forth the machine-or-transformation test. In Bilski, the Federal Circuit discussed the

difference between a claim drawn to a fundamental principle and a claim that seeks to foreclose

others from using a particular application of that fundamental principle. In Re Bilski, 545 F.3d

943, 952–53 (Fed. Cir. 2008). The Federal Circuit stated,

> [W]hether a claim is drawn only to a fundamental principle is essentially an
> inquiry into the scope of that exclusion; i.e., whether the effect of allowing the
> claim would be to allow the patentee to pre-empt substantially all uses of that
> fundamental principle. If so, the claim is not drawn to patent-eligible subject
> matter.

Id. at 953. The court further explained that a claimed process is "patent-eligible under § 101 if:

(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a

different state or thing." Id. at 954. The Federal Circuit noted, "[w]e leave to future cases the

4

elaboration of the precise contours of machine implementation, as well as the answers to particular questions, such as whether or when recitation of a computer suffices to tie a process claim to a particular machine." Id. at 962.

The Supreme Court rejected the machine-or-transformation test as the sole test for deciding patentability in Bilski. However, the Court acknowledged that the test remains "a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." Bilski, 130 S. Ct. at 3227. Furthermore, "following Bilski, courts have determined that the 'machine-or-transformation' test remains a key indicator of patentability." Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can., 771 F. Supp. 2d 1054, 1065 (E.D. Mo. 2011).[1] However, the Federal Circuit recently acknowledged that "[w]hile machine-or-transformation logic served well as a tool to evaluate the subject matter of Industrial Age processes, that test has far less application to the inventions of the Information Age." Ultramercial, 2011 WL 4090761, at *3. Thus, in Ultramercial, the Federal Circuit focused its inquiry on the abstractness of the patent at issue in order to determine whether the "process" fell within a § 101 category of patent-eligible subject matter.

The Federal Circuit acknowledged that "both members of the Supreme Court and this court have recognized the difficulty [in] providing a precise formula or definition for the judge-made ineligible category of abstractness." Id. at *4. Because of this difficulty, the Federal

---

[1] The Bancorp court cited the following cases to illustrate the fact that the machine-or-transformation test remains a key indicator of patentability: Prometheus Labs., Inc. v. Mayo Collaborative Servs., 628 F.3d 1347, 1355 (Fed. Cir. 2010) (discussing that the Supreme Court did not disavow the machine-or-transformation test); King Pharm., Inc. v. Eon Labs, Inc., 616 F.3d 1267, 1278 (Fed. Cir. 2010) ("We . . . understand the Supreme Court to have rejected the exclusive nature of our test, but not necessarily the wisdom behind it."); Ultramercial, LLC v. Hulu, LLC, 2010 WL 3360098, at *3 (C.D. Cal. Aug. 13, 2010) ("[E]ven after the Supreme Court's decision in Bilski, the machine or transformation test appears to have a major screening function—albeit not perfect—that separates unpatentable ideas from patentable ones."); Graff/Ross Holding LLP v. Fed. Home Loan Mortg. Corp., a/k/a Freddie Mac, Case No. 1:07–CV–796 (RJL)(AK), Report & Recommendation, at 13 (D.D.C. Aug. 27, 2010) (noting that failure to meet the machine prong of the machine-or-transformation test supports the conclusion that the claim attempts to patent an abstract idea).

Circuit did "not presume to define 'abstract' beyond the recognition that this disqualifying

characteristic should exhibit itself so manifestly as to override the broad statutory categories of

eligible subject matter and the statutory context that directs primary attention on the patentability

criteria of the rest of the Patent Act." Id. (quoting Research Corp. Techs., Inc. v. Microsoft

Corp., 627 F.3d 859, 868 (Fed. Cir. 2010)). Whereas abstract principles are plainly ineligible for

patent protection, abstract ideas may be eligible for patent protection if applied to a "new and

useful end." Id.

## B. Discussion

The '309 patent claims a method and system for creating an interactive virtual

community of famous people. Twitter asserts that the '309 patent is not patentable under 35

U.S.C. § 101 because it fails the machine-or-transformation test articulated by the Federal Circuit

in In Re Bilski, 545 F.3d 943 (Fed. Cir. 2008), and ultimately adopted by the Supreme Court.

According to Twitter, the fundamental flaw in the instant case is that the claimed method is not

tied to any particular machine. Twitter asserts that the use of a "computer" or "machine readable

medium" is not enough to satisfy the requirement that claims must be tied to a particular machine

or apparatus. Doc. 56 at 11–12. Furthermore, Twitter contends that the '309 patent claims an

unpatentable abstract idea: an interactive virtual community of famous people. According to

Twitter, the fact that the broad and abstract steps of the patent may be implemented using a

computer is not enough to render it patentable under § 101.[2] Because "all of its steps could in

principle be performed in someone's mind and with a pen and paper," Twitter argues that the

'309 patent claims an abstract idea consisting of mental processes and is thus invalid.

---

[2] Twitter asserts that computers may be used to implement the claims at issue (claims 1 and 5-10), but are not required. Twitter distinguishes between the claims at issue and claims 2 and 3 of the '309 patent, which are not asserted against Twitter. Claims 2 and 3 specifically require publication of profiles "on a network of computers." See Sherringham Decl. Ex. 1 at 6:42–48. Twitter thus contends that although "[t]he use of computers unquestionably facilitates the method," it is not enough to impose meaningful limits on the claims' scope. Doc. 56 at 15.

For its part, VS Technologies asserts that Twitter, in presenting its argument, fails to properly apply the machine-or-transformation test. Furthermore, VS Technologies contends that Twitter's argument fails to recognize that the machine-or-transformation test is not the sole test of patentability and thus, "grossly inflates the import of this test." Doc. 74 at 7. According to VS Technologies, the use of the machine-or-transformation test has a different role to play in the context of computer and Internet-based inventions.[3] As such, VS Technologies claims that this Court's analysis should instead focus on whether the claims are directed to an abstract idea.[4]

### 1. "Tied to a Particular Machine or Apparatus"

Under the first prong of the Bilski test, a claim covers patentable subject matter if it is tied to a particular machine or apparatus. Bilski, 545 F.3d at 954. Twitter asserts that the '309 patent does not satisfy this prong because it is not tied to a machine or apparatus. Instead, Twitter argues that the claimed process simply involves steps that can be performed in someone's mind or with a pen and paper and thus constitutes an unpatentable "mental process."

Twitter's argument that the '309 patent does not fall within a § 101 category of patent-eligible subject matter fails because the patent constitutes a practical application of an idea. The '309 patent does not simply claim the idea that one can use computers to improve collections of

---

[3] In support of this proposition, VS Technologies cites the recent decision in Ultramercial, LLC v. Hulu, LLC, No. 2010-1544, 2011 WL 4090761 (Fed. Cir. Sept. 15, 2011). In Ultramercial, the patent at issue claimed a method for distributing copyrighted products over the Internet where the consumer receives a copyrighted product for free in exchange for viewing an advertisement. The district court dismissed Plaintiff's claims for failure to claim statutory subject matter. However, the Federal Circuit reversed and remanded the district court's decision, finding that "the claims here require, among other things, controlled interaction with a consumer via an Internet website, something far removed from *purely* mental steps." Id. at *6.

[4] In Ultramercial, the Federal Circuit discussed the framework in which a court should determine subject matter eligibility. The court acknowledged that at one point, the machine-or-transformation test was set forth as the exclusive test for determining the subject matter eligibility of processes. The Supreme Court in Bilski, however, noted that the machine-or-transformation test is not "the sole test for deciding whether an invention is a patent-eligible 'process,' but rather, serves as "a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." Bilski, 130 S. Ct. at 3227. Thus, the Federal Circuit highlighted the fact that the machine-or-transformation test "has far less application to the inventions of the Information Age." Ever-changing technology has resulted in the increased recognition that "providing a precise formula or definition for the judge-made ineligible category of abstractness" presents difficulty for both members of the Supreme Court and the Federal Circuit. Accordingly, the Federal Circuit focused its inquiry on the abstractness of the subject matter claimed by the patent rather than mechanically applying the machine-or-transformation test.

well-known people's biographies. Rather, the '309 patent claims a particular method for the creation of a virtual community, consisting of the following steps: (1) selecting a field of endeavor; (2) compiling a list of members in the selected field; (3) selecting a member from the compiled list of members based on a preselected factor; (4) obtaining biographical information about the selected member; (5) processing the biographical information in a preselected format to create a personal profile of the selected member; (6) publishing the profile of the selected member on a machine readable media; and (7) allowing the selected member to interact with the profile. The patent requires that these steps be followed in order to accomplish the interactive communication it describes. Accordingly, the patent must be tied to a computer programmed to perform the necessary steps. Thus, the Court finds that there is sufficient evidence for a juror to reasonably conclude that the '309 patent claims squarely meet the "machine or apparatus" requirement of Bilski.

Twitter further contends that even if the '309 patent is tied to a particular machine, it still constitutes an unpatentable abstract idea. However, this argument fails for two reasons. First, the Federal Circuit established that "breadth and lack of specificity does not render [] claimed subject matter impermissibly abstract." Ultramercial, 2011 WL 4090761, at *6. The patent at issue in Ultramercial did "not specify a particular mechanism for delivering media content to the consumer (i.e., FTP downloads, email, or real-time streaming)." Id. However, the Federal Circuit still rejected the plaintiff's argument that the patent at issue did not claim eligible subject matter. The Federal Circuit explained, "the '545 patent does not simply claim the age-old idea that advertising can serve as currency. Instead the '545 patent discloses a practical application of this idea." Id. at *5. Because the steps articulated in the patent required "specific application to

8

the Internet and a cyber-market environment," the court found the computer-implemented method to be patent-eligible. Id.

Just as the patent at issue in <u>Ultramercial</u> disclosed a practical application of an idea, so does the '309 patent. Even if the steps articulated in the '309 patent are broad, this does not render the claimed subject matter impermissibly abstract. As the Federal Circuit explained, "[a]ssuming the patent provides sufficient disclosure to enable a person of ordinary skill in the art to practice the invention and to satisfy the written description requirement, the disclosure need not detail the particular instrumentalities for each step in the process." Id. at *6.

Second, Twitter's argument that the '309 patent is invalid because it consists of "broad and abstract steps" that in principle, could be performed solely in someone's mind, must fail because the instant claims require "something far removed from purely mental steps." Id. As the Federal Circuit has noted, "[t]he eligibility exclusion for *purely* mental steps is particularly narrow." Id. Rather than claiming a series of purely mental steps, the '309 patent claims a particular method for creating a virtual community. Because the steps of the '309 patent are combined with an interactive element, such steps cannot be accomplished without a computer, use of the Internet, and possession of the information necessary for the interaction described in the patent. It is plain that the steps of the '309 patent, and specifically, the ability to interact with people in a particular area in real time, constitutes "something far removed from *purely* mental steps." Id. at *6.

In light of all of the foregoing considerations, the Court finds that the evidence is sufficient for a reasonable juror to conclude that the '309 patent is linked to a particular machine or apparatus. Summary judgment under 35 U.S.C. § 101 is thus inappropriate.

## 2. "Transform a Particular Article into a Different State or Thing"

Foremost, the mere fact that the '309 patent involves the use of a machine or apparatus is sufficient, in and of itself for Plaintiff's claims to survive summary judgment under 35 U.S.C. § 101. See Bilski, 545 F.3d at 954 (indicating that satisfying either one of the prongs is sufficient). However, notwithstanding the Court's finding on the first prong, the Court will nonetheless consider the second prong.

Twitter argues that the '309 patent does not satisfy Bilski because none of the claims transform a particular article into a different state or thing. In particular, Twitter asserts that the mere collection and organization of data is not sufficient to satisfy the transformation prong.

Without question, physical objects and substances are articles that can be transformed. See Diamond v. Diehr, 450 U.S. 175, 184 (1981) (holding that the curing process of rubber was a patentable process). The extent to which data manipulation involves a "transformation," however, is less clear. In Bilski, however, the Federal Circuit provided some guidance by citing In re Abele, 684 F.2d 902 (C.C.P.A. 1982) as an exemplar of an instance where the manipulation of digital data becomes patent-eligible. The Federal Circuit stated that, in Abele, "the transformation of . . . raw data into a particular visual depiction of a physical object on a display was sufficient to render that more narrowly-claimed process patent-eligible" and that "the electronic transformation of the data itself into a visual depiction . . . was sufficient." Bilski, 545 F.3d at 963. In light of this language, the Court believes that the '309 patent involves a transformation in the sense that it creates the ability for people to interact in real time.

The evidence thus tends to show that a machine is involved in the process, and that process involves taking raw information and putting it into a format which enables people who are knowledgeable or skilled in a particular area to interact with others and discuss relevant

10

topics in their particular field.  Viewing the evidence in the light most favorable to the Plaintiff, a reasonable juror could therefore conclude that the '309 patent is (1) tied to a machine or apparatus; or (2) transforms a particular article into a different state or thing.  Accordingly, the Court **FINDS** that there are genuine issues of material fact and **DENIES** Twitter's motion for summary judgment of invalidity based upon 35 U.S.C. § 101.

## IV. MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON 35 U.S.C. §§ 102 AND 103

### A. Legal Standard

A patent claim is "anticipated," and therefore invalid as prior art, if the invention claimed was "described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention." 35 U.S.C. § 102.  Invalidity based on 35 U.S.C. § 102 is a question of fact that may be resolved on summary judgment. See Netscape Comm. Corp. v. Konrad, 295 F.3d 1315, 1320 (Fed. Cir. 2002).  Defendant bears the burden of proof, however, by clear and convincing evidence. See Atlas Powder Co. v. Ireco, Inc., 190 F.3d 1342, 1347 (Fed. Cir. 1999).  To invalidate a patent by anticipation, a prior art reference normally needs to disclose each and every limitation of the claim. See Standard Havens Prods., Inc. v. Gencor Indus., Inc., 953 F.2d 1360, 1369 (Fed. Cir. 1991).  Summary judgment is only proper if no reasonable juror could find that the patent is not anticipated. Zenith Elecs. Corp. v. PDI Comm. Sys., Inc., 522 F.3d 1348, 1357 (Fed. Cir. 2008).

"Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination." Unigene Labs., Inc. v. Apotex, Inc., --- F.3d ---, 2011 WL 3715557, at *6 (citing KSR, 550 U.S. at 418). "Rather,

obviousness requires the additional showing that a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention." Id. "Although the ultimate determination of obviousness under § 103 is a question of law, it is based on several underlying factual findings, including (1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; (3) the differences between the claimed invention and the prior art; and (4) evidence of secondary factors, such as commercial success, long-felt need, and the failure of others." Retractable Tech., Inc. v. Becton, Dickinson & Co., --- F.3d ---, 2011 WL 2652448, at *12 (Fed. Cir. July 8, 2011). Summary judgment on the issue of obviousness is appropriate "[w]hen 'the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors'". Stored Value Solutions, Inc. v. Card Activation Techs., Inc., --- F.Supp. 2d ---, 2011 WL 2610392, at *6 (D. Del. July 1, 2011). "A patent is invalid 'if the differences between the [claimed] subject matter . . . and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., --- F.3d ---, 2011 WL 3768983, at *8 (Fed. Cir. Aug. 26, 2011).

### 1. Anticipation

Twitter contends that prior art computerized "Who's Who" services anticipated the asserted claims of the '309 patent. Doc. 56 at 17. According to Twitter, VS Technologies' expert witness, Dr. Mark Joseph ("Dr. Joseph"), could only identify three claims that "Who's Who" directories did not disclose. Twitter asserts, however, that these three claims were in fact disclosed by prior art and thus, are invalid as anticipated.

Dr. Joseph contends that the following claim elements were not disclosed by prior art: (1) element (g), which provides that users are allowed to "interact with the profile," and (2) claims 9 and 10, which allow profiled people to interact with each other or with people who were not profiled. Id. at 18. Twitter asserts that Dr. Joseph is wrong as a matter of law concerning all three claims. First, Twitter argues that the '309 patent does not require interaction in "real time" and even if it did, the computerized "Who's Who" services did allow people to interact with their profiles in real time. Second, Twitter claims that services such as Leadership Directories and "Who's Who" allowed the type of interaction claimed in the '309 patent. Specifically, Twitter argues that individuals were able to communicate with a person whose profile they viewed through email or other telecommunications services. According to Twitter, "Mr. Agarwal admitted in deposition that publishing people's email addresses constitutes allowing interaction as contemplated by the '309 patent." Doc. 56 at 18–19; Doc. 83 at 10–11.

For its part, VS Technologies asserts that Twitter has failed to present any evidence in support of its position that the patent is invalid. According to VS Technologies, "the only evidence [Twitter] provides is a collection of archived web pages describing Who's Who along with attorney argument and conjecture about how the system worked."[5] Doc. 74 at 11. VS Technologies points to the lack of testimony from a representative of "Who's Who" and the lack of expert testimony on Twitter's behalf to show why the asserted claims are invalid. According to VS Technologies, Twitter's lack of evidence precludes a finding of summary judgment in its favor.

---

[5] VS Technologies asserts the following: (1) Twitter's submission of Dr. Grimshaw's expert reports along with its reply memorandum was improper because it constitutes evidence not submitted as part of its motion for summary judgment, and (2) the web pages submitted by Twitter describing the "Who's Who" Online Service are inadmissible hearsay. This Court agrees. Pursuant to the rules of this Court, a party is forbidden from attaching new affidavits or exhibits in its reply brief without leave of court. Accordingly, the Court declines to consider Dr. Grimshaw's expert reports in conjunction with Twitter's Motion for Summary Judgment. Furthermore, the Court will not accept the collection of archived web pages describing "Who's Who" as establishing for purposes of summary judgment the truth of what the web page says. Accordingly, the Court GRANTS VS Technologies' Motion to Strike, Doc. 87.

VS Technologies relies upon the expert testimony of Dr. Mark Joseph to explain the difference between the "Who's Who" service and the '309 patent. Dr. Joseph explains,

> [T]he Who's Who service to which Twitter cites is merely a computerized dictionary, similar to the printed version or an old yellow pages phone book, which was then placed on the Internet to make it easier for users to access the information. The entries for particular individuals are not interactive profiles representing people in a community because, simply put, there was no virtual community.

Id. at 12–13. According to VS Technologies, "Who's Who" is not a virtual community and did not allow interaction with the profile. Thus, VS Technologies asserts that there are genuine issues of material fact regarding the scope and content of the prior art and how it relates to the asserted claims.

Summary judgment is only appropriate where the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute. KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 427 (2007). VS Technologies' expert claims that "[t]he Who's Who Online reference was a website that made the information from the print versions of the Who's Who series of books available on the Internet," and thus, is not an interactive virtual community as Twitter asserts. Joseph Decl. Ex. B at 8–9. As VS Technologies points out, Twitter has failed to point to any evidence in the record that a person of ordinary skill in the art would consider "Who's Who" an online, virtual community.

There is a genuine issue of material fact regarding the scope and content of the prior art and specifically, whether a person of ordinary skill in the art would consider "Who's Who" an online, virtual community. While Twitter asserts that "Who's Who" allowed frequent updating and interaction among profiled individuals, VS Technologies contends that "Who's Who" merely made it easier for users to access an individual's information. VS Technologies characterizes the "Who's Who" service as "a computerized directory, similar to the printed

14

version or an old yellow pages phone book," while Twitter characterizes the prior art as a virtual community. Doc. 74 at 12.

In light of the summary judgment standard, which dictates that the record as a whole must be viewed in the light most favorable to the Plaintiff and that summary judgment is proper only if no reasonable juror could find in favor of the nonmoving party, summary judgment is not appropriate. Indeed, the Court cannot find as a matter of law that the '309 patent is anticipated under 35 U.S.C. § 102. Twitter has failed to present evidence that someone of ordinary skill in the art is of the opinion that the patent is anticipated. Although Twitter asserts that "Who's Who" disclosed every element of the '309 patent, the only evidence Twitter puts forth are print-outs of the website. However, as previously discussed, this Court declines to accept the collection of archived web pages describing "Who's Who" as establishing for purposes of summary judgment the truth of what the web page says. Twitter has failed to demonstrate by clear and convincing evidence that each limitation of the claim is found in a printed publication prior to the filing date of the '309 patent. Despite Twitter's assertions, a genuine factual question remains as to whether the patent is anticipated. The patent's capability for "allowing the selected member to interact with the profile" may constitute enough differentiation for a reasonable juror to find that the patent is not anticipated. Therefore, Plaintiff has offered sufficient evidence for a reasonable juror to conclude that the '309 patent is not anticipated. Accordingly, the Court thus **FINDS** that there are genuine issues of material fact and **DENIES** Defendant's motion for summary judgment of invalidity based on 35 U.S.C. § 102.

### 2. Obviousness

Even if the claims were not anticipated by prior art, Twitter asserts that such claims were obvious as a matter of law. Twitter contends that the '309 patent was obvious to a person of

15

ordinary skill in the art when Mr. Agarwal invented it. According to Twitter, the patent simply

adapts existing processes using modern technology. Twitter argues that the claimed benefits

provided by the '309 patent are limited to "more frequent updating and interactivity." Doc. 56 at

21. Twitter contends that "improved communication and display of information" is obvious as a

matter of law and thus, is not patent-eligible subject matter. Id.

In support of the argument that the asserted claims were obvious as a matter of law,

Twitter relies upon KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398 (2007) and two Federal Circuit

cases applying KSR.[6] In KSR, the patent at issue "disclose[d] an adjustable electronic pedal

described in the specification as a 'simplified vehicle control pedal assembly that is less

expensive, and which uses fewer parts and is easier to package within the vehicle." Id. at 410.

The district court had granted summary judgment in KSR's favor, finding that prior art "taught

---

[6]       Twitter also discusses two Federal Circuit cases in which the court determined the respective patents at issue were obvious as a matter of law. In Miniauction, Inc. v. Thomson Corp., 532 F.3d 1318 (Fed. Cir. 2008), the patent disclosed a method for holding municipal-bond auctions over the Internet using a web browser. Specifically, the patent provided an "integrated system on a single server," allowing "issuers to run the auction and bidders to prepare and submit bids using a conventional web browser, without the use of other separate software." Id. at 1322. The Federal Circuit noted that Miniauction's expert conceded that bid submission using the prior art system performed every limitation of the asserted claims, other than using a web browser. Id. As a result, the court concluded that no reasonable juror could find to the contrary, and the patent was therefore obvious as a matter of law.

         Twitter also cites another Federal Circuit decision, Leapfrog Enterprises, Inc. v. Fisher-Price, Inc., 485 F.3d 1157 (Fed. Cir. 2007), in support of its argument that the '309 patent is obvious as a matter of law.

         In Leapfrog, the court ruled that "[a]ccomodating a prior art mechanical device that accomplishes [the goal of teaching a child to read phonetically] to modern electronics would have been reasonably obvious to one of ordinary skill in designing children's learning devices." Leapfrog, 485 F.3d at 1161. The court reached this result based in part on its reasoning that "[a]pplying modern electronics to older mechanical devices has been commonplace in recent years." Id. The record in this case demonstrates that adapting existing electronic processes to incorporate modern internet and web browser technology was similarly commonplace at the time the '099 patent application was filed.

Id.

         Miniauction and Leapfrog do not automatically lead to the conclusion that summary judgment should be granted on the issue of obviousness. There are disputed facts relating to the validity of the asserted claims based upon the scope and content of prior art. Whereas Twitter asserts that the "Who's Who" services allowed profiled people to update and modify their profiles as claimed in the '309 patent, VS Technologies contends that Who's Who did not allow profiled individuals to update their entries in real time. At this stage of the proceedings, because of factual disputes concerning the scope and content of prior art, this Court cannot conclude as a matter of law that the patent at issue merely incorporates the use of technology to an existing process.

everything contained in [the asserted claim] except the use of a sensor to detect the pedal's position and transmit it to the computer controlling the throttle." Id. at 413. The Court of Appeals reversed the district court's decision to grant summary judgment, relying upon "proffered statements from one expert that [the asserted claim] 'was a simple, elegant, and novel combination of features' . . . and from another expert that [the asserted claim] was nonobvious because . . . the sensor was mounted on the support bracket rather than the pedal itself." Id. at 415. Ultimately, the Supreme Court reversed the Court of Appeals' decision, finding that the court erred in concluding "that a patent claim cannot be proved obvious merely by showing that the combination of elements was '[o]bvious to try.'" Id. at 421. The Court explained,

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103.

Id. Twitter relies upon KSR in support of the contention that the '309 patent is invalid because it was obvious at the time of the filing of the patent that the elements of the asserted claims were combined in such a way as to yield an expected result.

Twitter has failed to meet its burden of identifying the portions of the record that demonstrate the absence of a genuine issue of material fact as to the issue of obviousness. Specifically, Twitter has failed to point to any evidence regarding how one of ordinary skill in the art "would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention." Unigene Labs., Inc. v. Apotex, Inc., --- F.3d ---, 2011 WL 3715557, at *6 (citing KSR, 550 U.S. at 418). Furthermore, the parties dispute whether "Who's Who" served as a virtual community as contemplated by the '309 patent and whether it allowed members to interact with their profile. Because of the factual disputes

17

concerning the scope and content of prior art, and relatedly, the difference between the claimed

invention and the prior art, summary judgment is inappropriate. Accordingly, the Court thus

**FINDS** that there are genuine issues of material fact and **DENIES** Defendant's motion for

summary judgment of invalidity based on 35 U.S.C. § 103.

### 3. Lack of Enablement

"Enablement is a question of law based on underlying factual determinations." <u>Volterra</u>

<u>Semiconductor Corp. v. Primarion, Inc.</u>, --- F. Supp. 2d ---, 2011 WL 2559612, at *28 (quoting

<u>Sitrick v. Dreamworks, LLC</u>, 516 F.3d 993, 999 (Fed. Cir. 2008)). The relevant inquiry for

enablement is "whether a person 'skilled in the art, after reading the specification, could practice

the claimed invention without undue experimentation.'" <u>Id.</u> In making such a determination, the

following factors may be considered: (1) the quantity of experimentation necessary, (2) the

amount of direction or guidance presented, (3) the presence or absence of working examples, (4)

the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art,

(7) the predictability or unpredictability of the art, and (8) the breadth of the claims. <u>Id.</u> Each of

these factors need not be considered by the Court; rather, such factors "are illustrative, not

mandatory." <u>MagSil Corp. v. Seagate Tech.</u>, 764 F. Supp. 2d 674, 678 ( D. Del. 2011) (quoting

<u>Amgen, Inc. v. Chugai Pharm. Co., Inc.</u>, 927 F.2d 1200, 1213 (Fed. Cir. 1992)).

Twitter asserts,

The '309 patent provides no technical disclosure whatsoever about how to practice the invention it claims. Instead, it merely assumes that persons of ordinary skill in the art know how to perform every step, including the alleged points of novelty (allowing interaction with the profile, and interaction among profiled people and between them and others). The patent says repeatedly that such interactivity is 'allowed,' but it does not say the first thing about how the interactivity is to be accomplished.

Doc. 56 at 22. According to Twitter, because the patent "does not teach a person of skill in the art how to do anything that he or she did not know how to do already," the patent is invalid for lack of enablement. Id.

For its part, VS Technologies maintains that the patent "provides extensive detail about how the steps of the claimed method are performed and how they create an interactive virtual community." Doc. 74 at 20. According to VS Technologies, because the specification teaches how a list of members in a particular field of endeavor may be selected, discloses how biographical information may be obtained, and explains how the personal profiles of the members are published on the Internet, "the written description and the Figures of the '309 patent teach one of ordinary skill how to make and use the invention."[7] Id. VS Technologies relies upon the expert testimony of Dr. Joseph in support of its contention that "the '309 patent provides extensive detail about how the steps of the claimed method are performed and how they create an interactive virtual community." Id.

As the movant, Twitter bears the burden of producing evidence to demonstrate that the specification of the '309 patent does not enable one skilled in the art to practice the invention. However, Twitter offers no expert testimony as to whether a person skilled in the art could practice the claimed invention without undue experimentation. In fact, Twitter advances no evidence whatsoever concerning the understanding of a person skilled in the art. Thus, Twitter has not established the absence of factual questions concerning whether one skilled in the art would "understand the bounds of the claim when read in light of the specification." Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1348 (Fed. Cir. 2002). Accordingly, the Court

---

[7] Dr. Joseph provides the following opinion: "As one of skill in the art, I can practice the invention of the '309 patent. From the disclosure in the specification, I am able to design and implement a virtual community on the Internet that provides the features set forth in the Asserted Claims without undue experimentation." Joseph Decl. at ¶ 12.

19

**FINDS** that there are genuine issues of material fact and **DENIES** Defendant's motion for summary judgment on the basis of the patent's invalidity for lack of enablement under 35 U.S.C. § 112.

## V. MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF NON-INFRINGEMENT

### A. Legal Standard

An infringement analysis involves the following two steps: (1) "determin[e] the meaning and scope of the patent claims asserted to be infringed," and (2) "compar[e] the properly construed claims to the device accused of infringing." Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995). "To prove infringement, a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device." Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., --- F.3d ---, 2011 WL 3768983, at *12 (Fed. Cir. Aug. 26, 2011).

### B. Discussion

According to Twitter, VS Technologies cannot carry its burden of proving that Twitter practices the following steps of the '309 patent: obtaining biographical information about the selected member and creat[ing] the personal profile of the selected member. First, Twitter contends that "merely featuring certain *already existing* accounts as ones that other Twitter users may wish to follow does not, and cannot, infringe the '309 patent." Doc. 56 at 23. Second, Twitter asserts that it does not practice the step of "creat[ing] a personal profile of [a] selected member." According to Twitter, "creating a profile" means producing a profile for the first time. Twitter contends that it does not infringe the '309 Patent because "creating a profile" cannot include displaying a profile that the accused infringer has previously created and stored.

For its part, VS Technologies asserts that Twitter's "arguments are based on a flawed claim construction position which has now been rejected by this Court." Doc. 74 at 21. According to VS Technologies, Twitter's arguments must fail because it "has not set forth any non-infringement argument based on the plain meaning of the disputed limitations." Id.

In response to Twitter's first argument concerning "obtaining biographical information," VS Technologies asserts that the claims of the '309 patent are not limited to obtaining the information from a particular source or at a particular time.  According to VS Technologies, because the plain and ordinary meaning of the term imposes no limitation, Twitter practices this step in the following two ways:  (1) obtaining biographical information directly from the user when the user first signs up, and (2) obtaining biographical information about the user when it retrieves the stored information from the Users Masters DB database.

In response to Twitter's second argument concerning "creat[ing] a personal profile," VS Technologies claims that Twitter practices this step in multiple ways.  First, VS Technologies asserts that Twitter practices the step of "creating a profile" when it initially acquires an individual's biographical information, keeps such information in a database, and then "arranges it in a preselected format such that profiles for its users have a uniform 'look at feel.'" Doc. 74 at 22.  Second, VS Technologies claims that Twitter also practices this step "during the course of the accused 'browse interests' feature." Id.  VS Technologies explains,

> Twitter first generates a list of users specific to an interest category.  Then it retrieves stored biographical information about those users from its database to generate an abbreviated version of that user's profile. Joseph Decl. Ex. A at 18–19.  Twitter utilizes three different profile formats, including a full profile showing all of the user's biographical information, a mini profile showing some of the user's biographical information, and a further abbreviated version of a profile during the "browse interests" feature.

Id. VS Technologies asserts that Twitter practices the step of "creating a profile" in yet a

third way. According to VS Technologies, a profile is also created when the user updates, modifies or revises his or her biographical information.

In light of the summary judgment standard, which dictates that the record as a whole must be viewed in the light most favorable to the Plaintiff and that summary judgment is proper only if no reasonable juror could find in favor of the nonmoving party, summary judgment is not appropriate. Indeed, the Court cannot find as a matter of law that Twitter does not infringe the '309 patent. Twitter's first argument is based upon the belief that the patent only describes one method of obtaining biographical information: requesting that information from the person who is being profiled. However, as the Court noted in its Claim Construction Order, "obtaining" cannot be confined to the mere acquisition of information from the selected member. Such a definition is inconsistent with the fact that obtaining information about an individual may mean securing that information from multiple sources. Furthermore, Twitter's second argument relies upon its proposed construction of the term "create," which was recently rejected by this Court. For example, taking information and using that information for another purpose could constitute the step of "creating" as described in the '309 patent.

Viewing the evidence in the light most favorable to the Plaintiff, a reasonable juror could therefore conclude that Twitter infringes the '309 patent by (1) obtaining biographical information, and (2) creating a personal profile. Accordingly, the Court **FINDS** that there are genuine issues of material fact and **DENIES** Defendant's motion for summary judgment on the issue of non-infringement.

## VI. CONCLUSION

For the reasons explained herein, the Court declines to consider Dr. Grimshaw's expert reports in conjunction with Twitter's Motion for Summary Judgment and will not accept the

collection of archived web pages describing "Who's Who" as establishing for purposes of summary judgment the truth of what the web page says.  Accordingly, VS Technologies' Motion to Strike, Doc. 87, is **GRANTED**.  Furthermore, viewing the evidence in the light most favorable to the Plaintiff, a reasonable juror could conclude that the '309 patent is (1) tied to a machine or apparatus, or (2) transforms a particular article into a different state or thing. Plaintiff has also offered sufficient evidence for a reasonable juror to conclude that the '309 patent is not anticipated, obvious, or invalid for lack of enablement.  Lastly, there are genuine issues of material fact as to whether Twitter infringes the '309 patent by (1) obtaining biographical information, and (2) creating a personal profile.  Accordingly, Defendant's Motion for Summary Judgment, Doc. 55, is **DENIED** in its entirety.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

_____/s/_____
Henry Coke Morgan, Jr.
Senior United States District Judge

_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: October ___, 2011

23