

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**VS TECHNOLOGIES, LLC**

        **Plaintiff,**

v.                                             **Civil Action No. 2:11cv43**

**TWITTER, INC.,**

        **Defendant.**

## ORDER AND OPINION

This matter comes before the Court on various post-trial motions submitted by Plaintiff VS Technologies, LLC ("Plaintiff"). Plaintiff has filed a Motion for Judgment as a Matter of Law, Doc. 157; Motion for a New Trial, Doc. 159; and Motion to Amend Judgment, Doc. 161. For the reasons stated herein, the Court **DENIES** Plaintiff's Motion for Judgment as a Matter of Law and Motion for a New Trial. Further, the Court **GRANTS IN PART** Plaintiff's Motion to Amend Judgment.

### I. PROCEDURAL HISTORY

On January 18, 2011, Plaintiff filed its complaint alleging infringement of United States Patent No. 6,408,309 (the "'309 patent"). Doc. 1. Plaintiff served its patent infringement complaint on Defendant Twitter, Inc. ("Defendant") on February 8, 2011. On March 17, 2011, Defendant filed its answer and affirmative defenses. Doc. 15.

On September 15, 2011, the Court conducted a Markman hearing for the purpose of construing the claims in Plaintiff's patent at issue. After careful consideration of the parties' briefs and oral argument, the Court ruled from the bench and entered an order and opinion on

September 23, 2011, detailing the claim constructions and reasons therewith. Doc. 86. On

September 6, 2011, Twitter filed a motion for summary judgment. Doc. 55. After hearing oral

arguments on the motion on September 30, 2011, the Court denied Twitter's motion for

summary judgment in its entirety. Doc. 99.

A six-day jury trial began on October 24, 2011. At the conclusion of the trial, the jury

found that Twitter had not infringed any of the asserted claims of the '309 patent and that the

claims of the '309 patent were invalid as anticipated, obvious and abstract. Doc. 153.

Following the trial, Plaintiff filed a timely motion for judgment as a matter of law,

motion for a new trial, and motion to amend judgment. Docs. 157, 159, 161. Defendant filed its

response in opposition to Plaintiff's motions on December 5, 2011. Doc. 163. A hearing on

Plaintiff's various post-trial motions was held on April 3, 2012.

## II. FACTUAL BACKGROUND

The United States Patent and Trademark Office issued Patent No. 6,408,309 (the "'309

patent"), entitled "Method and System for Creating an Interactive Virtual Community of Famous

People," on June 18, 2002. At trial, Plaintiff asserted that Twitter's Browse Interests feature

infringed claims 1 and 5-10 (the "Asserted Claims") of the '309 Patent. For its part, Defendant

maintained that its Browse Interests feature did not infringe the '309 Patent and that the Asserted

Claims were invalid due to anticipation, obviousness, and abstractness. Specifically, Defendant

claimed that the following four prior art references rendered the '309 Patent invalid as

anticipated and obvious: (1) Who's Who Online, (2) Martindale-Hubbell, (3) the University of

Virginia website, and (4) Geocities.

At the close of Defendant's case, Plaintiff moved for a directed verdict, pursuant to

Federal Rule of Civil Procedure 50(a), on the issues of abstractness, anticipation, and

2

obviousness. Trial Transcript ("Trial Tr.") at 838-40. The Court denied the motion as it related to anticipation and obviousness, and reserved ruling on the issue of abstractness until the time at which the Court dealt with jury instructions. Id. at 841. Ultimately, the Court denied Plaintiff's pre-verdict motion for judgment as a matter of law on the issue of abstractness and submitted the question to the jury.

After several hours of deliberation, the jury returned a verdict on October 31, 2011, in Defendant's favor. Specifically, the jury concluded that the Asserted Claims were not infringed by Twitter, and the Asserted Claims were invalid as anticipated, obvious, and abstract. On November 7, 2011, the Court entered the judgment of non-infringement and invalidity, which states that "Twitter, Inc., has not infringed any of the asserted claims of the '309 Patent," and "the claims of the '309 patent are invalid as anticipated, obvious and abstract." Doc. 153.

### III. LEGAL STANDARDS

#### A. Motion for Judgment as a Matter of Law

Rule 50(b) of the Federal Rules of Civil Procedure allows a party to renew, within twenty-eight (28) days after the entry of judgment, a motion for judgment as a matter of law made pursuant to Rule 50(a) that was not granted by the Court. Fed. R. Civ. P. 50(b). Rule 50(a) explains that such a motion "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). The Court may grant such a motion if it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [the relevant] issue." Fed. R. Civ. P. 50(a)(1). The Court may not, however, "disturb the verdict where there was sufficient evidence for a reasonable jury to find in the non-movant's favor." Dotson v. Pfizer, Inc., 558 F.3d 284, 292 (4th Cir. 2009). In deciding

whether to grant a motion for judgment as a matter of law, the Court must view the evidence "in the light most favorable to the prevailing party." Id.

### B. Motion for a New Trial

Plaintiff alternatively seeks a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure ("Rule 59"). Rule 59(a)(1)(A) allows the Court, on motion, to grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A "decision on a motion for a new trial rests within the sound discretion of the trial court." City of Richmond v. Atlantic Co., 273 F.2d 902, 916 (4th Cir. 1960).

In the Fourth Circuit, on a motion for a new trial, it is the duty of the trial court to set aside the verdict and grant a new trial, if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996). The first and second prongs are factual determinations. Fairshter v. American Nat'l Red Cross, 322 F. Supp. 2d 646, 650 (E.D. Va. 2004) (citing Atlas Food Sys. Servs., Inc., 99 F.3d at 594). "The third prong requires a policy analysis under which the 'judge's unique vantage point and day-to-day experience with such matters lend expertise.'" Id. (quoting Atlas Food Sys. Servs., Inc., 99 F.3d at 594). On a Rule 59 motion, the Court "may make credibility judgments in determining the clear weight of the evidence." Lovell v. BBNT Solutions, LLC, 295 F. Supp. 2d 611, 618 (E.D. Va. 2003) (citing Knussman v. Maryland, 272 F.3d 625, 647 (4th Cir. 2001)).

## IV. DISCUSSION

Plaintiff asserts that the record does not contain legally sufficient evidence to support a finding that the '309 Patent is (1) invalid for lack of patentable subject matter, (2) anticipated by a proffered piece of prior art, and (3) obvious in view of the proffered prior art. Doc. 158 at 3-12. Plaintiff further contends that no reasonable jury could find Twitter does not infringe the '309 Patent. As such, Plaintiff requests judgment as a matter of law on these four issues. In the alternative, Plaintiff moves for a new trial because of the following assertions: (1) an improper jury instruction on abstractness created prejudicial error, (2) the jury's verdict is against the clear weight of the evidence, and (3) improper closing argument created prejudicial error. Id. at 15-18. Lastly, Plaintiff requests that the judgment be amended to reflect that only the Asserted Claims – claims 1 and 5-10 – are invalid as anticipated, obvious, and abstract. Id. at 19.

Plaintiff's arguments are analyzed separately below.

### (1) The Question of Patentable Subject Matter is a Legal One and Should Never Have Been Put Before the Jury

Plaintiff's first argument concerns an instruction given to the jury regarding patentable subject matter under Section 101. The Court provided the following instruction to the jury:

> The law establishes that abstract ideas are not eligible for patents. Twitter contends that the asserted claims of the '309 patent claim an unpatentable abstract idea. Twitter must prove this contention by clear and convincing evidence, that is, that it is highly probable that the '309 patent is an unpatentable abstract idea. Methods which can be performed mentally or which are the equivalent of human mental work are abstract ideas which cannot be patented. An abstract idea is unpatentable even if the patent claim limit[s] the ideas used of a particular technological environment or adds insignificant post-solution activity. Systems that depend for their operation on human intelligence alone cannot be patented. A useful and important clue for determining whether a patent becomes unpatentable subject matter is whether the claim is tied to a particular machine or apparatus or transforms a particular article into a different state or thing. This is called the machine or transformation test. To satisfy the machine prong of this test, the use of the machine must also impose meaningful limits on the claimed scope. If the claim does not satisfy the machine or transformation test, this is a factor the jury

5

> may consider in determining whether the claim may be invalid because it claims
> unpatentable subject matter.

Trial Tr. at 951:5-952:6. Plaintiff argues that the determination of whether the '309 Patent

consists of patentable subject matter is a legal determination to be made by the Court and thus,

was improperly submitted to the jury. Doc. 158 at 3. Plaintiff also claims that Defendant failed

to provide any actual evidence in support of its assertions regarding abstractness. Id. at 5.

Specifically, Plaintiff asserts that neither of Defendant's experts, Dr. Grimshaw and Dr. Weaver,

testified about or applied the "machine or transformation" or the "purely mental steps" tests.[1] Id.

In response, Defendant maintains that the question of patentable subject matter was

properly submitted to the jury because such an inquiry, although a question of law, may turn on

factual findings that are dispute. Doc. 164 at 19. Defendant argues that the jury decided the

issue "in light of . . . Dr. Grimshaw's testimony that the asserted claims of the '309 patent, read

literally, do not even require the use of a computer." Id.

The disagreement between the parties centers on Plaintiff's argument that Section 101 is

a question of law and thus, not a triable issue of fact for a jury. However, Plaintiff has failed to

point to any Court of Appeals' decision saying that the judge *must* decide Section 101 issues.

In support of its argument, Plaintiff cites two Federal Circuit cases for the proposition

that "whether a patent claim is directed to statutory subject matter is a question of law."

Prometheus Labs. Inc. v. Mayo Collaborative Servs., 628 F.3d 1347, 1353 (Fed. Cir. 2010); see

also In re Comiskey, 554 F.3d 967, 975 (Fed. Cir. 2009) ("It is well-established that 'whether the

asserted claims . . . are invalid for failure to claim statutory subject matter under 35 U.S.C. § 101,

---

[1] Initially, Plaintiff asserted in its motion for judgment as a matter of law that Defendant failed to provide the jury with any instruction as to the proper legal tests to be applied in deciding whether the patent is abstract. However, at the April 3, 2012 hearing, Plaintiff conceded that the relevant instruction was in fact legally correct. Plaintiff thus only argued at the hearing that the issue of abstractness was improperly submitted to the jury and that Defendant failed to provide any actual evidence in support of its assertion that the '309 Patent was not directed to patentable subject matter.

is a question of law which we review without deference."). The language cited by Plaintiff merely articulates that the ultimate question of the validity of a patent is considered to be a question of law. However, Plaintiff ignores the fact that there may be underlying factual questions that the jury must answer in order to reach a conclusion on validity. See Arrhythmia Research Tech., Inc. v. Corazonix Corp., 958 F.2d 1053, 1055-56 (Fed. Cir. 1992) ("Whether a claim is directed to statutory subject matter is a question of law. Although determination of this question may require findings of underlying facts specific to the particular subject matter and its mode of claiming, in this case there were no disputed facts material to the issue."). Thus, where the issue of validity depends upon the resolution of a factual dispute, a jury is permitted to decide the issue. Once the underlying questions of fact are answered by the jury, the validity issue is resolved.

Further, the language of the cases cited by Plaintiff merely reaffirms the fact that the issue of validity is reviewable on appeal de novo, like any other question of law. It does not, however, stand for Plaintiff's assertion that the jury should not have been asked to decide this issue. The issue of validity is no different than any other question of law that is answered by the jury because of the issue's dependence upon the resolution of a factual dispute. For example, the ultimate determination of obviousness is also a question of law but is "based on several underlying factual findings, including (1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; (3) the differences between the claimed invention and the prior art; and (4) evidence of secondary factors, such as commercial success, long-felt need, and the failure of others." Retractable Techs., Inc. v. Becton, Dickinson & Co., 653 F.3d 1296, 1310 (Fed. Cir. 2011). The issue of validity is no different. As the Court acknowledged in its October 5, 2011 Order, it could not conclude as a matter of law that the patent was not abstract because of

a factual dispute over whether a machine is involved in the process, that process being the "taking [of] raw information and putting it into a format which enables people who are knowledgeable or skilled in a particular area to interact with others and discuss relevant topics in their particular field." Doc. 99 at 10-11. As the issue of validity depended upon the resolution of this factual dispute, the question properly fell within the province of the jury.

Plaintiff next argues that Defendant failed to provide any actual evidence in support of its assertions regarding abstractness. Plaintiff focuses on the fact that there was no expert testimony explicitly stating that the '309 Patent is abstract. However, the test is not whether there was any expert testimony that the '309 Patent claimed an abstract idea. Rather, the test is whether there was enough evidence to provide the support necessary for a reasonable jury to conclude that the method claimed by the '309 Patent could be performed mentally. Defendant's invalidity expert, Dr. Andrew Grimshaw ("Grimshaw"), testified that the claims of the '309 Patent could be performed without the use of a computer.[2] Dr. Grimshaw explained that he made such a

---

[2] Plaintiff asked Dr. Grimshaw the following:

> Q: Sir, according to you, you don't even need a computer to practice Mr. Agarwal's invention, correct?
>
> A: It depends on how one interprets some of the words in his – in the patent, words like interact, for example. I'd also like to distinguish between a computer and a terminal.
>
> Q: Sir, did you make the statement in your report that the claims of Mr. Agarwal's patent do not even require the use of a computer? Did you make that statement?
>
> A: I did, because it depends on how one defines interact.
>
> Q: You made that statement not only in your first report but in your second report, that you don't even need a computer for Mr. Agarwal's invention, correct? Yes or no.
>
> A: Yes.
>
> Q: So, sir, if you don't need a computer to practice Mr. Agarwal's invention, then you – can you e-mail without a computer?
>
> A: I don't believe you need e-mail to practice the invention.

Trial Tr. at 805:20-806:12.

statement in his report because "it depends on how one defines interact." Trial Tr. at 806:3. Here, the issue of validity focused on a central dispute between the parties regarding whether the '309 Patent created the ability for people to interact in real time and thus, whether a machine is necessarily involved in the process. One of Plaintiff's experts, Dr. Mark Joseph ("Joseph"), defined an interactive virtual community as "a place where people go to meet other people, to share and exchange information. It's not just a listing of people." Trial Tr. at 846:12-14. The dispute over whether the '309 Patent provides individuals with the opportunity to interact with one another formed the basis of the parties' arguments concerning whether the patent could be performed solely in one's mind.

Both parties' experts testified concerning their respective positions of what constitutes an interactive virtual community. Plaintiff's expert, Dr. Joseph, characterized the alleged pieces of prior art as online directories rather than interactive virtual communities in an attempt to distinguish them from the '309 Patent. See Trial Tr. at 847:10-14 (discussing Martindale-Hubbell); Trial Tr. at 848:20-22, 851:20-25 (discussing Who's Who Online); Trial Tr. at 852:14-17 (discussing the UVA system). He explained that the alleged pieces of prior art did not provide the ability for individuals to interact in real time. See Trial Tr. at 848:8-10 (discussing Martindale-Hubbell); Trial Tr. 850:24-851:3 (discussing Who's Who Online); Trial Tr. at 854:23-25 (discussing the UVA system). Defendant's expert, on the other hand, maintained that the alleged pieces of prior art did provide the ability for interaction between members. See Trial Tr. at 739:19-24 (discussing Who's Who Online); Trial Tr. at 749:21-24 (discussing Martindale-Hubbell).

Based upon the experts' disparate characterizations of which systems provided individuals with the opportunity to interact with other individuals, a reasonable jury could

9

conclude from the evidence presented at trial that the method claimed by the '309 Patent was not an interactive virtual community, as defined by the experts. As Dr. Grimshaw stated during trial, whether the '309 Patent requires the use of a computer depends on how one defines interact. Trial Tr. at 805. Based upon conflicting evidence at trial regarding whether the '309 Patent discloses the idea of allowing individuals to interact in real time, any reasonable jury could have reached the same verdict based upon the evidence presented regarding interactive virtual communities in order to determine whether a machine was involved in the process claimed by the '309 Patent. Further, Dr. Grimshaw specifically testified that a computer was not required to practice the invention. See Trial Tr. at 805:20-806:12. Thus, the evidence as a whole was sufficient to support a finding that the asserted claims of the '309 Patent are not directed to patentable subject matter.

        (2) <u>The Evidentiary Record Does Not Contain Sufficient Evidence to Support a Finding of Invalidity Due to Anticipation</u>

Plaintiff asserts that it is entitled to judgment as matter of law that the '309 Patent is not anticipated by any of the four prior art references because (1) Defendant's prior art constitutes inadmissible hearsay, (2) Defendant's prior art does not constitute single publications as required by 35 U.S.C. § 102 because the collections of web pages were not all available on the same date,[3] and (3) Dr. Grimshaw failed to provide an element-by-element analysis to show the jury that at least one of the prior art references teaches every element of the asserted claims. Doc. 158 at 7-9.

As to the issue of whether Defendant's prior art constitutes inadmissible hearsay, the Court again rejects Plaintiff's argument. The issue at trial was whether the web pages disclosed

---

[3] See 35 U.S.C. § 102 ("A person shall be entitled to a patent unless the claimed invention was . . . described in a printed publication . . . or otherwise available to the public before the effective filing date of the claimed invention.").

the elements of the patent for purposes of anticipation. The web pages were introduced not for the purpose of explaining how each system worked, but rather for the purpose of establishing the existence of the necessary elements in order to prove anticipation.[4] Thus, the proffered pieces of prior art did not constitute inadmissible hearsay and were properly admitted.

Further, Plaintiff's argument that each of the four pieces of proffered prior art does not constitute a single publication as required by 35 U.S.C. § 102 must also be rejected. Plaintiff's objection during trial to the admissibility of the prior art on this basis focused on the assertion that Defendant could not prove that the '309 Patent was anticipated through use of the archived web pages because of varying dates of publication. Counsel did not object to the documents' admissibility as it related to the obviousness inquiry, which involves a determination of whether one of ordinary skill in the art would have selected and combined the prior art elements in the normal course of research and development to yield the claimed invention. Thus, Plaintiff's objection was solely related to the anticipation analysis. Counsel was free to make the argument to the jury that Defendant failed to meet its burden to prove anticipation and specifically, that a single reference teaches all of the elements of any asserted claim, because of the varying dates of publication. As the archived web pages all came from a single website, and Plaintiff was free to argue that the prior art web pages were not available on the same date, the Court did not err in admitting the web pages for the purpose of the anticipation analysis.

Plaintiff's last argument with respect to invalidity based on anticipation is that Dr. Grimshaw failed to complete an element-by-element analysis of the prior art references and that as a result, Defendant did not meet its burden of clear and convincing evidence to prove

---

[4] See Abbott Labs. V. Diamedix Corp., 969 F. Supp. 1064, 1067 n.1 (N.D. Ill. 1997) (explaining that a patent application was "being offered as a verbal act and not to prove the truth of the matter asserted"). The district court continued, "[t]he relevance of the document is its very existence and the effect its existence had on the knowledge base of those in the field of art. As such, it is not hearsay." Id.

11

anticipation. Doc. 158 at 9. In response, Defendant uses Dr. Grimshaw's testimony with respect to Martindale-Hubbell as an example to show that he did, in fact, perform such an element-by-element analysis. Doc. 164 at 11-12.

In reviewing Dr. Grimshaw's testimony and specifically, the example provided by Defendant in its brief, it is clear that Dr. Grimshaw walked through each element of the asserted claims and explained at length how, in his opinion, each of the four pieces of prior art disclosed an interactive virtual community. See Trial Tr. at 752:9-23 (discussing that Martindale-Hubbell provided an e-mail system that individuals could use to interact with one another); Trial Tr. at 746:10-20 (explaining that Martindale-Hubbell permits individuals to search by firm, practice, or area of expertise, thus disclosing the element of "selecting a field of endeavor"); Trial Tr. at 747:4-20 (discussing that Martindale-Hubbell includes listings for more than 900,000 lawyers and law firms and that such listings could be on several different media, thus disclosing the element of "compiling a list of members in the selected field"); Trial Tr. at 747:21-748:11 (explaining that Martindale-Hubbell consists of something called the bar register of preeminent lawyers and that it only lists those selected lawyers and law firms that have earned the highest rating, thus disclosing the element of "selecting a member from the compiled list of members based on a preselected factor"); Trial Tr. at 748:17-749:8 (discussing that because Martindale-Hubbell has placed extensive law firm profiles and attorney biographies online, Martindale-Hubbell must have first acquired such biographical information, thus disclosing the element of "obtaining biographical information about the selected member"); Trial Tr. at 749:9-20 (explaining that Martindale-Hubbell places its extensive law firm profiles and attorney biographies online and gives such profiles a publication address, thus disclosing the elements of "processing the biographical information in a preselected format to create a personal profile of

12

the selected member" and "publishing the profile of the selected member on a machine readable medium"); Trial Tr. at 749:21-750:12 (discussing that Martindale-Hubbell includes an "add and update listing" feature, which brings up the web page to permit any necessary modification, thus disclosing the element of "allowing the selected member to interact with the profile"); Trial Tr. at 750:13-25 (explaining that Martindale-Hubbell allows individuals to search through the listings of different communities or specialty areas, thus disclosing the idea of "selecting a plurality of members from the compiled list of people based on one or more preselected factors"); Trial Tr. at 751:1-6 (concluding that Martindale-Hubbell's features demonstrate that it discloses the idea of "creating an individual personal profile of each of the selected members"); Trial Tr. at 751:7-13 (concluding that Martindale-Hubbell discloses the idea of "creating a virtual community of people by publishing the profiles of the selected members" because of the fact that the directory is available on the Internet); Trial Tr. at 751:14-23 (discussing that Martindale-Hubbell's "add and update listing" feature provides the opportunity for users to do so from home or any other location, thus disclosing the idea of "allowing the members of the virtual community to interact with their respective profiles from a remote location"); Trial Tr. at 751:24-752:18 (concluding that Martindale-Hubbell discloses the idea of "allowing the members of the virtual community to interact with each other from a remote location" because of the existence of an e-mail system that listed people could use to interact with each other); Trial Tr. at 753:12-17 (concluding that Martindale-Hubbell discloses the idea of "allowing the members of the virtual community to interact with non-members of the virtual community" for the same reasons users can interact with one another).

     This cited testimony demonstrates that Dr. Grimshaw walked through each element of the asserted claims: claims 1 and 5-10. Further, Dr. Grimshaw performed a similarly detailed

analysis with respect to the other three pieces of prior art.  <u>See</u> Trial Tr. at 733-745 (discussing

Who's Who Online); Trial Tr. at 753-757 (discussing Geocities); Trial Tr. at 758-760 (discussing

the University of Virginia website).  Accordingly, the evidence was sufficient to support the

jury's verdict that prior art disclosed each of the elements of the '309 Patent.

### (3) The Evidentiary Record Does Not Contain Sufficient Evidence to Support a Finding of Invalidity Due to Obviousness

With respect to obviousness, Plaintiff asserts that "sparse expert testimony" demonstrates

that there is insufficient evidence from which a reasonable jury could conclude that the four

pieces of prior art render the asserted claims of the '309 Patent obvious.  Doc. 158 at 10.  In

response, Defendant contends that because the jury found that the prior art references disclosed

every element of the asserted claims, no combination was required to support a finding of

obviousness.  Doc. 164 at 16.

As Dr. Grimshaw performed an element-by-element analysis of each of the four prior art

references, this Court cannot conclude, as Plaintiff asserts, that Dr. Grimshaw's "lackluster

analysis and conclusory statements are a far cry from that required of an obviousness

determination."  Doc. 158 at 11.  Dr. Grimshaw discussed each element during the course of his

direct examination and after doing so, further explained that he did not believe there was any

step disclosed in the patent that was not already used in an interactive virtual community by the

year 2000.  Trial Tr. at 760:19-22.  By the time Dr. Grimshaw offered this opinion, he had

already performed a step-by-step analysis of each asserted claim.  Thus, Plaintiff cannot

successfully argue that "Dr. Grimshaw provided no testimony about any reference specific to an

obviousness analysis."  Doc. 158 at 11.  Dr. Grimshaw had already provided his analysis in

reference to each element and then provided his opinion regarding what a person of skill in the

art knew by the year 2000 with respect to interactive virtual communities.  Accordingly, the

evidence was sufficient to support the verdict that was reached by the jury regarding

obviousness, and any reasonable jury could have reached the same verdict.

(4) <u>Plaintiff Has Proven Infringement by a Preponderance of the Evidence</u>

Plaintiff asserts that no reasonable jury could find Defendant does not infringe the '309

Patent because (1) Dr. Joseph demonstrated that Defendant practices all elements of the asserted

claims both in order and out of the order in which they appear in the '309 Patent and (2) Dr.

Weaver's rebuttal testimony relied upon claim constructions that this Court specifically declined

to adopt. Doc. 158 at 12-13.

As a preliminary matter, Defendant argues that Plaintiff has waived its right to challenge

the jury's verdict of non-infringement because it never moved for judgment as a matter of law

under Rule 50(a) on the issue of infringement. Doc. 164 at 3. Rather, Plaintiff moved for

judgment as a matter of law only as to Defendant's invalidity defenses: anticipation,

obviousness, and abstract idea. Defendant asserts that Plaintiff's failure to do so has resulted in a

waiver of the right to challenge the jury's verdict on this issue. <u>See i4i Ltd. Partnership v.

Microsoft Corp.</u>, 598 F.3d 831, 845 (Fed. Cir. 2010) (finding that "Microsoft has waived its right

to challenge the factual findings underlying the jury's implicit obviousness verdict because it did

not file a pre-verdict JMOL on obviousness" as to the specific prior art references on which it

based its post-verdict challenge).

For its part, Plaintiff acknowledges that it did not formally include infringement in its

initial motion for judgment as a matter of law at the close of Defendant's case. However,

Plaintiff contends that the "comments to recent amendments to Rule 50 make clear that

technicalities can be put aside when the spirit of the rule – to put the non-moving party on notice

of the moving [party's] claimed discrepancies in the evidentiary record and avoid surprise to the

non-moving party – is still met." Doc. 165 at 7.  Yet, Plaintiff's argument misses the mark, ignoring the fact that the Committee Notes to the Federal Rules of Civil Procedure state that "[b]ecause the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion."  Committee Notes, 2006 Amendments. The comments to the 2006 Amendments merely state that Rule 50(b) was amended to "permit renewal of *any* Rule 50(a) motion for judgment as a matter of law, deleting the requirement that a motion be made at the close of all the evidence."  Id. (emphasis added).  The fact that the amendments delete the specific requirement that a motion be made at the close of all the evidence does not eliminate that requirement that such a motion must be made before the judge submits the case to the jury.  Thus, Plaintiff was still required to make a Rule 50(a) motion for judgment as a matter of law on the issue of infringement before the case was submitted to the jury to be able to now raise the issue under Rule 50(b).  Plaintiff's failure to do so now forecloses the possibility of considering a Rule 50(b) motion on this issue.

Even if Plaintiff did not waive its right to challenge the jury's verdict of non-infringement, Plaintiff has still failed to meet the high standard for obtaining judgment as a matter of law on this issue.  See Mentor H/S, Inc. v. Med. Device Alliance, Inc., 244 F.3d 1365, 1375 (Fed. Cir. 1998) ("Courts grant JMOL for the party bearing the burden of proof only in extreme cases, when the party bearing the burden of proof has established its case by evidence that the jury would not be at liberty to disbelieve and the only reasonable conclusion is in its favor.").

Plaintiff's first argument focuses on the assertion that the claims of the patent need not be performed in any specific order.  Plaintiff argues that Dr. Alfred Weaver's[5] ("Weaver") testimony centered on the argument that Defendant did not infringe the patent because the

---

[5] Dr. Alfred Weaver's testimony provided the basis for Defendant's primary non-infringement arguments at trial.

"Browse Interests" feature does not perform the steps of the asserted claims in the order the steps are written. Id. at 15. Thus, Plaintiff maintains that Dr. Weaver's testimony is insufficient to contradict Dr. Joseph's testimony that the "Browse Interests" feature does in fact infringe the asserted claims because there is no requirement that the asserted claims be performed in the same order as they appear in the patent. Id.

For its part, Defendant points out that Dr. Weaver's testimony was not limited to the conclusion that Defendant's feature did not infringe the patent because it did not perform the steps of Claim 1 in order. Doc. 164 at 6. For example, Dr. Weaver also testified that the "Browse Interests" feature "does not create a personal profile of the 'selected member' because it is undisputed that [Defendant's] users are not 'selected members' of the Browse Interests feature when they open their accounts and their profiles are created." Id. Specifically, Dr. Weaver admitted that Defendant obtains biographical information, processes it, and puts it in a preselected format as a profile. However, Dr. Weaver's position was that although Defendant's feature performed these functions, it did not process the biographical information to create a profile for a "selected member," as that term is defined in the '309 Patent. Trial Tr. at 550:1-551:8. Thus, regardless of the order in which the steps are performed, it was still Dr. Weaver's opinion that Defendant did not infringe because in his opinion, there are no selected members. Even if Plaintiff is correct in asserting that there is no requirement that the asserted claims be performed in the same order as they appear in the patent, there would still be sufficient evidence to rebut Plaintiff's prima facie case of infringement.

Plaintiff's second argument with respect to infringement centers on the assertion that Dr. Weaver's rebuttal testimony relied upon claim constructions that this Court specifically declined to adopt at the Markman hearing. Doc. 158 at 13. Specifically, Plaintiff asserts that the

17

following testimony elicited from Dr. Weaver was inconsistent with the Court's claim construction: the '309 Patent requires "(1) biographical information to be **'obtained'** directly from a member of the interactive virtual community at a certain time and not from computer memory at all; and (2) a personal profile in the virtual community had to be **'created'** for the first time within the context of the claims and did not include displaying a profile that had previously been displayed on another computer." Doc. 158 at 14 (emphasis added).

With respect to "obtaining," Defendant argues that Dr. Weaver's testimony was consistent with the Court's rejection of Defendant's proffered definition.[6]  Defendant's argument with respect to "obtaining biographical information" was that "Twitter simply moves the biographical information it already has from one location to another in computer memory" and thus, does not "obtain 'additional information' from 'another source.'" Doc. 164 at 8. Defendant maintains that its position, and Dr. Weaver's testimony in support of that position, is completely consistent with the Court's Markman Order.

With respect to "create," Defendant asserts that Dr. Weaver's testimony was consistent with the Court's determination that "create" should be given its common, ordinary meaning. Plaintiff's main contention with respect to "create" is that Dr. Weaver's testimony conflicted with this Court's rejection of the narrow definition, "producing a personal profile for the first time." However, Dr. Weaver never testified that this was the meaning of "create," as found in

---

[6] The Court explained in its Markman Order,

> Regardless of whether "obtaining" is defined to include the word "retrieving," Defendant's proffered definition must be rejected because it unnecessarily limits the term. The Court is of the opinion that "obtaining" cannot be confined to the mere acquisition of information from the selected member. Claim 1 specifically states that biographical information is obtained about the selected member. The fact that a person may already possess some information concerning an individual does not preclude the possibility that additional information may be obtained from another source. Thus, Defendant's proffered definition is inconsistent with the fact that obtaining information may mean securing information from multiple sources.

Doc. 86 at 12.

the '309 Patent. In fact, when asked if he believed create to mean "only create for the first time," Dr. Weaver responded, "Well, no, that is probably too strict. But what I think it does not mean, copying information from one piece of computer memory to another, which is what Dr. Joseph had to do in order to meet the creation step." Trial Tr. at 562:4-7.

In this instance, Dr. Weaver did attempt to use a definition rejected by the Court, specifically that obtaining biographical information does not include transferring information already possessed by the accused infringer from one portion of computer memory to another. As a result, the Court held a sidebar conference and allowed Plaintiff to cross-examine Dr. Weaver on the fact that one of his reasons supporting non-infringement was based on a specific definition rejected by the Court. Trial Tr. at 586. However, Dr. Weaver's testimony did not violate this Court's claim construction order in any other respect and thus, as a whole, was not misleading to the degree necessary to support judgment as a matter of law.

The Court ruled in its claim construction order that both "create" and "obtaining" should be given their plain, ordinary meaning. The test is not how Plaintiff would interpret the plain and ordinary meaning of these terms. Rather, the test is whether there is sufficient evidence to support the jury's finding that Twitter does not "obtain biographical information" or "create a personal profile" of a selected member, "given the plain and ordinary meaning of that phrase in the context of the disputed claim." Edwards Lifesciences AG v. CoreValve, Inc., C.A. No. 08-91-GMS, 2011 WL 446203, at *4 (D. Del. Feb. 7, 2011). Dr. Weaver's testimony at trial provided a reasonable basis for the jury to conclude that Twitter does not infringe the '309 Patent. As such, the jury was entitled to credit Dr. Weaver's testimony over Dr. Joseph's testimony regarding the issue of infringement.

19

In conclusion, Plaintiff's motion for judgment as a matter of law on infringement is **DENIED** on the basis that Plaintiff waived its right to challenge the jury's conclusion regarding infringement due to its failure to make a pre-verdict JMOL motion on the issue. Even if Plaintiff did not waive its right to challenge the jury's verdict of non-infringement, Plaintiff has still failed to demonstrate that is entitled to judgment as a matter of law on this issue.

### (5) Plaintiff is Entitled to a New Trial

Plaintiff argues that it is entitled to a new trial because (1) the improper instruction on abstractness created prejudicial error, (2) the entire jury's verdict is against the weight of the evidence, and (3) improper closing argument created prejudicial error. Doc. 158 at 15-19. As to the issues of whether the instruction on abstractness created prejudicial error and whether the verdict is against the clear weight of the evidence, the above analysis regarding Plaintiff's motion for judgment as a matter of law is informative here. In short, the evidence as a whole was sufficient to support a finding of non-infringement and invalidity by abstractness, anticipation, and obviousness, and a reasonable jury could have reached its verdict based on the evidence presented. Thus, the jury's verdict was not against the clear weight of the evidence.

Plaintiff's last argument centers on defense counsel's statements during closing argument, which Plaintiff asserts were improper and highly prejudicial. Doc. 158 at 18. Specifically, Plaintiff contends that "Twitter's repeated unsupported accusations against Mr. Agarwal, telling the jury he was a liar, thief, and extortionist without any basis, and culminating with its baseless remarks at closing argument goes well beyond the bounds of allowable aggressive advocacy and crosses the line into the creation of unduly prejudicial error that warrants a new trial." Id.

In response, Defendant asserts that Plaintiff waived its right to a new trial on this basis because of its failure to make any objections during closing argument. Defendant cites a Fourth Circuit case, in which the court explained,

> It is the universal rule that during closing argument counsel "cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial." A motion for a new trial should not be granted, therefore, where the moving party has failed to timely object to the alleged impropriety giving rise to the motion. The failure to object at the proper time will be overlooked on appeal only if exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired.

Dennis v. General Elec. Corp., 762 F.2d 365, 366-67 (4th Cir. 1985) (internal citations omitted). Defendant further argues that it never called Mr. Agarwar "a liar, a thief, and an extortionist," as Plaintiff claims. Doc. 164 at 23-24. Rather, Defendant claims that Plaintiff is the one who used these exact words by telling the jury that Defendant asserted "[Mr. Agarwal's] an extorter. He's a liar, he's a thief and now he's an extorter. That is what [Twitter is] calling him." Trial Tr. at 1024:12-14.

First, Plaintiff had sufficient opportunity to raise any objections or request a curative instruction and did not do so. Second, the statements made by Plaintiff were not so "highly prejudicial" as to require a new trial. The one case cited by Plaintiff in support of its argument that defense counsel's comments "infected the trial with such unfairness" is inapposite to the facts of the instant case. See Rabon v. Great Sw. Fire Ins. Co., 818 F.2d 306 (4th Cir. 1987). In Rabon, the Fourth Circuit held that a new trial was necessary where counsel, in closing argument, referred to the fact that prosecutors dropped arson charges against the insured.[7] The Court found that the trial court committed reversible error when it permitted "the plaintiff in a

---

[7] Specifically, counsel asserted that the insurer's "refusal to pay on the policy was part of a vendetta against [Plaintiff], and that the state's prior dismissal of criminal arson charged proved that [the insurer's] position was unreasonable." Rabon, 818 F.2d at 308.

suit for fire insurance proceeds to present evidence of his nonprosecution or acquittal on related criminal arson charges." Id. at 309.  Because a prosecutor's decision not to prosecute a criminal case is irrelevant to a civil action, the Fourth Circuit found that such an argument was both irrelevant and highly prejudicial.

Any comments made by defense counsel during closing argument in this case do not rise to the same level as those in Rabon.  Defense counsel talked about the "duty of candor to the patent office" and the requirement that an individual seeking a patent must submit any relevant prior art.  Defense counsel continued,

> And then he says, he testified that he's shocked when he gets the patent.  As soon as the patent is issued, Mr. Agarwal, the lawyer, does a complete about-face.  He begins writing vaguely threatening letters to companies.  Suddenly this man who had no idea about the existence of any prior art, knows quite a lot about prior art.

Trial Tr. at 1001:24-1002:4.  Defense counsel never actually called Mr. Agarwal a liar or thief. Rather, the statements made during Defendant's closing argument reflected its characterization of Mr. Agarwal's testimony as it related to his knowledge concerning the existence of any relevant prior art at the time the '309 Patent was filed.  It is plain that defense counsel's statements do not rise to the level of infecting the trial with such unfairness as to warrant a new trial.

As Plaintiff failed to timely object to comments made to the jury during closing argument, Plaintiff's motion for a new trial should not be granted.  Further, any failure to object to such comments cannot be overlooked because they do not constitute errors "so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired." Dennis, 762 F.2d at 367.

In conclusion, all of the reasons put forth by Plaintiff in support of its motion do not justify a new trial. Accordingly, Plaintiff's motion for a new trial is **DENIED** in its entirety.

### (6) Motion to Amend Judgment

Plaintiff argues that the judgment entered by this Court contains a correctable error. Doc. 158 at 19. The Court's judgment states, "ORDERED AND ADJUGED that the claims of the '309 Patent are invalid as anticipated, obvious and abstract." Plaintiff requests that the judgment be amended to the following: "ORDERED AND ADJUDGED that claims 1 and 5-10 of the '309 patent are invalid as anticipated, obvious, and abstract." Id. At the April 3, 2012 hearing, Plaintiff further requested that the judgment of non-infringement be limited to claims 1 and 5-10, the asserted claims of the '309 Patent.

For its part, Defendant does not object to altering the judgment to state that it is the asserted claims of the '309 patent, not all claims in the patent, that are held invalid. However, Defendant maintains that the judgment of non-infringement must apply to the '309 Patent as a whole. Doc. 164 at 24.

Defendant is correct that the judgment can only be altered with respect to invalidity. Plaintiff could not sue Defendant again for infringement but could claim in some other proceeding that claims not covered by the judgment are valid. Thus, Plaintiff's motion to amend judgment is **GRANTED IN PART**. The judgment will be amended to state that claims 1 and 5-10 of the '309 patent are invalid as anticipated, obvious and abstract, but will remain the same in all other respects.

## V. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion for

Judgment as a Matter of Law, doc. 157, and Motion for a New Trial, doc. 159.  The Court

**GRANTS IN PART** Plaintiff's Motion to Amend Judgment.  Doc. 161.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

/s/

Henry Coke Morgan, Jr.
Senior United States District Judge

*HENRY COKE MORGAN, JR.*
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: April ___, 2012

24